## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW T. SHAFER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | |
| MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John/Jane Does 1-20, | CLASS ACTION |
| Defendants. | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Matthew T. Shafer, on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC ("MSSB") (together, "Morgan Stanley"), the Morgan Stanley Compensation Management Development and Succession Committee (the "Compensation Committee"), and John/Jane Does 1 thru 20, the individual committee members.

## INTRODUCTION

1.      This is a class action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover the deferred compensation that financial advisors ("FAs") forfeited in violation of ERISA § 203(a), 29 U.S.C. § 1053(a), when they left Morgan Stanley.

2.      FAs' compensation is based on the revenue generated by their clients' investment activities, with Morgan Stanley automatically designating a portion of the very first dollar they earn as "deferred compensation" (the "FA Deferred Compensation Program").  Morgan Stanley

1

allocates 75% of an FAs' deferred compensation to the Morgan Stanley Compensation Incentive

Plan (the "MSCIP"), which vests in six years (and previously vested in eight years), and 25% of

their deferred compensation to the Morgan Stanley Equity Incentive Compensation Plan ("EICP"),

which vests in four years.  Morgan Stanley causes FAs to forfeit their deferred compensation if

they leave Morgan Stanley before these vesting dates (the "Cancellation Rule").

3.      The FA Deferred Compensation Program is an "employee benefit pension plan"

under ERISA because it "results in a deferral of income by employees for periods extending to the

termination of covered employment or beyond."  ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii).

4.      Specifically, the FA Deferred Compensation Program "results in a deferral of

income" because FAs are paid for work (i.e., the revenue they generate) years after they perform

the work.  The program also "results in" income being deferred "for periods extending to the

termination of covered employment or beyond" because FAs receive their deferred compensation

after their employment ends if they retire, become disabled, or go work for the government.

5.      Plaintiff worked as an FA at Morgan Stanley for nine years from 2009–2018.  When

he left Morgan Stanley, Defendants invoked the Cancellation Rule to deny him over $500,000 in

deferred compensation that he earned under the FA Deferred Compensation Program.

6.      Plaintiff seeks an Order from the Court under ERISA § 502(a)(3) declaring that the

FA Deferred Compensation Program is subject to ERISA and that the Cancellation Rule violates

ERISA's vesting and anti-forfeiture requirements. He seeks the payment of his and the other class

members' deferred compensation that was wrongfully forfeited. He also asserts a claim against the

Compensation Committee for breach of fiduciary duty under ERISA § 502(a)(2) and (a)(3) for

applying the Cancellation Rule in violation of ERISA.  Alternatively, Plaintiff seeks an Order

reforming the FA Deferred Compensation Program so that it complies with ERISA's vesting and

anti-forfeiture requirements by, among other things, eliminating the Cancellation Rule.  Plaintiff also asserts a claim under ERISA 502(a)(1)(B) to recover the benefits due to him and the other class members under the FA Deferred Compensation Program, as reformed.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and under 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

8.      This Court has personal jurisdiction over Defendants because they are headquartered, transact business, or reside in or have significant contacts with this District, and because ERISA provides for nationwide service of process.

9.      Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all the violations of ERISA occurred in this District, and Defendants may be found in this District.  Venue is also proper in this District under 28 U.S.C. § 1391 because Defendants do business in this District, and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred within this District.

10.     Venue is also proper in this District because the MSCIP provides that any dispute arising in connection with the MSCIP shall be brought in the courts of New York.

## PARTIES

### Plaintiff

11.     Plaintiff Matthew T. Shafer resides in the State of Florida.  He is a Certified Investment Management Analyst and a Certified Exit Planning Advisor, with more than 20 years of experience as a financial advisor.  Shafer worked at MSSB from 2009–2018.  When he left

Morgan Stanley, he forfeited over $500,000 in deferred compensation as a result of the Cancellation Rule.

**Defendants**

12.     Defendant Morgan Stanley is a Delaware corporation with a principal place of business in New York, New York.  Morgan Stanley is a global financial services firm that, through its subsidiaries and affiliates, including MSSB, provides financial advisory services to clients.

13.     Defendant Compensation Committee is a committee of Morgan Stanley's Board of Directors formed to discharge the Board's responsibilities related to compensation and to "oversee plans for management development and succession."[1]   The Compensation Committee is an unincorporated association with its principal place of busines in New York.

14.     John and Jane Does 1-20 are the individual members of the Compensation Committee during the Class Period.

15.     Defendant Morgan Stanley Smith Barney LLC ("MSSB") is a Delaware limited liability company with its principal place of business in New York, New York.

## SUBSTANTIVE ALLEGATIONS

A.     **Morgan Stanley's Deferred Compensation Program for FAs.**

1.     **The FA Compensation System.**

16.     The FA compensation structure is explained in a document titled "Financial Advisor/Private Wealth Advisor Compensation Plan" (the "FA Compensation Plan"), which Morgan Stanley publishes each year.  FAs receive a combination of salary and commissions on the revenue generated through their clients' investment activities.

---

[1]     Compensation Committee Charter as of October 13 2020, *available at* www.morganstanley.com/about-us-governance/comchart.

17.     To calculate commissions, MSSB applies a specified percentage to the amount of revenue an FA generated. *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 2:11-cv-3121, 2013 WL 6255697, at *1 (D.N.J. Dec. 4, 2013).  Specifically, the FA's revenue is multiplied by a percentage, called a "Credit Rate," which is in a fixed schedule, called a "Grid," to determine how many "Total Credits" the FA earns as commissions each month.[2]  2018 FA Compensation Plan at 2-3.

18.     "Total Credits" consist of "Deferred Credits" and "Cash Credits."  Deferred Credits are the FAs' deferred compensation.   Under the FA Compensation Plan, Morgan Stanley automatically designates a percentage of an FA's Total Credits each month—the "Deferral Ratio"—as Deferred Credits.  *Id*. at 4.

19.     The Deferral Ratio that Morgan Stanley applies is in a fixed schedule in the FA Compensation Plan, and depends on how much revenue FAs generated over the previous twelve-month period (e.g., the revenue generated between June 1, 2017, and May 31, 2018, dictates the ratio applied in June 2018).  The Deferral Ratio requires FAs to defer a portion of their Total Credits—i.e., commissions—starting with the first dollar of revenue generated each month. The Deferral Ratios that applied in 2018 are shown below:

---

[2]     The applicable Credit Rate increases as FAs generate more revenue. The thresholds separating each Credit Rate are commonly referred to as "Hurdles" and are widely reported in the financial industry. *See*, *e.g.*, "2020 Comp: Morgan Stanley Raises Pay Hurdles, Intensifies Financial Plan Push," discussing how Morgan Stanley increased the Hurdle for FAs to receive a Credit Rate of 41% from $485,000 to $535,000 in 2020, *available at* https://advisorhub.com/2020-comp-morgan-stanley-raises-pay-hurdles-intensifies-financial-plan-push.

| Deferral Ratio Schedule | |
| --- | --- |
| **Trailing 12-month Gross Revenue ($)** | **Deferral Ratio (%)** |
| 5,000,000+ | 15.5 |
| 3,300,000–4,999,999 | 14.0 |
| 2,750,000–3,299,999 | 13.0 |
| 2,400,000–2,749,999 | 12.5 |
| 1,800,000–2,399,999 | 11.5 |
| 1,200,000–1,799,999 | 10.0 |
| 975,000–1,199,999 | 8.5 |
| 900,000–974,999 | 7.5 |
| 725,000–899,999 | 6.5 |
| 600,000–724,999 | 5.5 |
| 485,000–599,999 | 5.0 |
| 425,000–484,999 | 4.0 |
| 360,000–424,999 | 3.5 |
| 300,000–359,999 | 2.5 |
| 240,000–299,999 | 1.5 |
| 0–239,999 | 1.5 |

*Id.*

20.     Each January, the total of an FA's monthly Deferred Credits from the previous calendar year are granted to the FA "in the form of a deferred compensation award."  Morgan Stanley automatically allocates 75% of the award to the MSCIP as a "cash-based deferred compensation award scheduled to be paid approximately six years after the grant date."  The other 25% is automatically allocated to the EICP "in the form of a restricted stock unit ("RSU") award that is scheduled to convert to shares of Morgan Stanley common stock approximately four years after the grant date . . ."  *Id.* at 5.

21.     "The remaining terms and conditions of the deferred compensation awards, including termination of employment and [the Cancellation Rule]," are determined by the Compensation Committee and "set forth in the applicable award documentation."  *Id.*

22.     The other part of an FA's Total Credits are called "Cash Credits," a reference to the cash component of the commissions they receive each month.  Cash Credits equal the Total Credits that remain after Morgan Stanley deducts an FA's Deferred Credits.  The formula is simple:

$$\textbf{Cash Credits} = \text{Total Credits} - \text{Deferred Credits}$$

23.     Unlike Deferred Credits, FAs receive Cash Credits only if the amount of their Cash Credits exceeds their salary for that month.  *Id.*

**2.     The MSCIP and EICP.**

**a.     The MSCIP.**

24.     Morgan Stanley sponsors the MSCIP.  MSCIP Plan Document at § 2(a)(i).  The MSCIP consists of several compensation programs for the employees of Morgan Stanley and its subsidiaries, including MSSB.  MSCIP Document at Preamble.  The deferred compensation that FAs earn through the FA Compensation Plan is one of the MSCIP's programs.

25.     The terms that apply to FAs are in the FA Compensation Plan, the MSCIP Plan document, and the Award Certificates that Morgan Stanley issues to FAs when they are granted deferred compensation awards.  FA Compensation Plan at 5; MSCIP Plan Document at §§ 1, 5.

26.     The Compensation Committee administers the MSCIP.  It has the authority to "create, terminate, expand or limit programs" under the MSCIP, and to determine the eligibility criteria for each program's awards.  MSCIP Plan Document at Preamble and §§ 3, 8(a) and (b).

27.     FAs have individual, notional accounts in the MSCIP for each award they receive, i.e., they have an account for each year's deferred compensation.  FAs can invest their accounts in notional investments, like in a 401(k) plan, with the value of their accounts tracking the performance of the selected investments.  2017 Award Certificate at § 1.

28.     FAs' awards are subject to a "cliff vesting" date—called the "Scheduled Vesting Date"—chosen by the Compensation Committee.  2016 MSCIP Document at § 5.  The Scheduled Vesting Date for awards granted in January 2016 (based on Deferred Credits earned in 2015) was January 22, 2024, i.e., an 8-year vesting schedule.  MSCIP 2015 Award Certificate at §§ 2(a), 17(s).  Awards in subsequent years vested in six years.  *See*, *e.g.*, *id*.

29.     According to the MSCIP Plan Document, Morgan Stanley pays FAs their deferred compensation that is in the MSCIP.  MSCIP Plan Document at § 9 ("Amounts payable under the [MSCIP] shall be satisfied solely out of the general assets of Morgan Stanley . . . ."); MSSB Consolidated Statement of Financial Condition as of June 30, 2020, at 4 (listing FAs' deferred compensation in the MSCIP as a liability of MSSB).  Morgan Stanley makes the payment on the applicable Scheduled Distribution Date, which is typically the same day as the Scheduled Vesting Date, subject to certain exceptions described below.  2016 Award Certificate at §§ 17(s) and (t).  FAs pay the taxes due on their deferred compensation on the Scheduled Distribution Date, with Morgan Stanley withholding the requisite amounts.  MSCIP Plan Document at § 11; 2017 Award Certificate at § 2(b).

30.     An FA must be employed by Morgan Stanley on the Scheduled Vesting Date to receive an award.  If an FA's employment ends before that date, Defendants invoke the Cancellation Rule, "cancel[ing] immediately" all of the FA's MSCIP accounts so that the FA never receives his or her deferred compensation.  2017 Award Certificate at § 7.

31.     The MSCIP and the FA Deferred Compensation Program's Award Certificates contain several exceptions to the Cancellation Rule.  *Id*. at § 7(a).  The Cancellation Rule does not apply if an FA's employment ends because of a physical or mental incapacity (a "Disability").  If this occurs, the FA's accounts vest when the FA's employment with Morgan Stanley ends (i.e.,

before the Scheduled Vesting Date) and the FA still receives his or her deferred compensation on the Scheduled Distribution Date.  *Id*. at § 16(g).

32.    The Cancellation Rule also does not apply to an FA whose employment ends because of a lay off (an "Involuntary Termination").  If this occurs, the FA's accounts vest on the date of Involuntary Termination and the FA still receives her or his deferred compensation on the Scheduled Distribution Date.  *Id*. at § 4(c).

33.    FAs who end their employment with Morgan Stanley to work for a governmental department or agency (a "Governmental Service Termination") are also exempt the Cancellation Rule.  Their accounts vest and they receive their deferred compensation on the date of their Governmental Service Termination.  *Id*. at § 5.

34.    The Cancellation Rule also does not apply to FAs who retire from Morgan Stanley after reaching a specified age, attaining a certain number of years of service, or holding certain positions.  FAs who leave Morgan Stanley after reaching age 65 or age 55 with five years of service qualify for "Retirement."   *Id*. at § 3.  FAs who work in Morgan Stanley's Private Wealth Management division with more than twenty years of service or after age 50 that held certain jobs for a specified number of years can also qualify for "Full Career Retirement." *Id*. at § 13.  FAs whose employment ends because of Retirement or Full Career Retirement automatically vest in their accounts, and they receive their deferred compensation on the Scheduled Distribution Date. *Id*. at §§ 3(d), 16(j) and (r).

35.    FAs who end their employment to work for another brokerage firm or change careers do not receive their deferred compensation in the MSCIP because of the Cancellation Rule. MSCIP Plan Document at Preamble and §§ 16(d) and (p)(3), (4),

### b.      The EICP

36.      Morgan Stanley sponsors the EICP.   The EICP provides employees with compensation in the form of stock options, stock appreciation rights, and RSUs in Morgan Stanley common stock.   EICP Plan Document at § 2.

37.      FAs receive RSUs in the EICP in January of each year through their accumulation of Deferred Credits in the previous calendar year under the FA Deferred Compensation Program. Each RSU equals one share of Morgan Stanley common stock.   *Id*. at § 8.

38.      The Compensation Committee administers the EICP and has the authority to determine, among other things, when FAs' RSUs vest.   *Id*. at § 5.   FAs' RSUs vest in four years (e.g., RSUs granted in January 2020 vest in January 2024).

39.      On the Scheduled Vesting Date, an FA's RSUs are converted to shares of Morgan Stanley common stock (the "Scheduled Conversion Date").   FAs can receive their awards as shares of Morgan Stanley common stock or in cash based on the stock's fair market value on the Scheduled Conversion Date.   *Id*. at § 8.   FAs pay taxes on their deferred compensation in the EICP on the Scheduled Vesting Date by having Morgan Stanley withhold the amount of shares or cash necessary to satisfy the tax obligation.   *Id*. at § 16(a); RSU Award Certificate for RSUs at § 11.

40.      The EICP has the same Cancellation Rule as the MSCIP.   EICP Award Certificate for RSUs at §§ 2(a), 10.   If an FA leaves Morgan Stanley before the Scheduled Vesting Date, Defendants cancel the FA's RSUs.   EICP Plan Document at § 2.

41.      The EICP has exceptions to the Cancellation Rule for FAs whose employment ends because of Disability, Involuntary Termination, Governmental Service Termination, or Full Career Retirement.   *Id*. at §§ 5, 6, 7, and 8.   FAs who qualify for Disability, Involuntary Termination, or Full Career Retirement receive their shares of Morgan Stanley common stock on the Scheduled

Conversion Date, after their employment with Morgan Stanley has ended.  RSU Award Certificate

at §§ 5(c), 6 and 8.  FAs who qualify for a Government Service Termination receive their shares

of Morgan Stanley common stock when their employment ends.  RSU Award Certificate at 7(a).

**B.    The FA Deferred Compensation Program is an "Employee Benefit Pension Plan"
         Governed by ERISA.**

42.    ERISA covers any "employee benefit plan," ERISA § 4(a), 29 U.S.C. § 1003(a), a

term that includes "employee pension benefit plans."  ERISA § 3(3), 29 U.S.C. § 1002(3).  An

"employee benefit pension plan" is:

> any plan, fund, or program which . . . by its express terms or as a result of
> surrounding circumstances such plan, fund, or program—
>
> > (i)    provides retirement income to employees, ***or***
> >
> > (ii)   results in a deferral of income by employees for periods
> >        extending to the termination of covered employment or
> >        beyond,
>
> regardless of the method of calculating the contributions made to the plan,
> the method of calculating the benefits under the plan or the method of
> distributing benefits from the plan.

ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) (emphasis added).

43.    As described below, the FA Deferred Compensation Program is an "employee

benefit pension plan" under ERISA.

**1.    The FA Deferred Compensation Program is a "Plan, Fund or Program."**

44.    The phrase "plan, fund or program" under ERISA "means nothing more than a

'scheme decided upon in advance.'"  *Feifer v. Prudential Ins. Co.*, 306 F.3d 1202, 1209 (2d Cir.

2002) (citing *Pegram v. Hedrich*, 530 U.S. 211, 223 (2000)).  A "plan, fund or program" is

"established if from the surrounding circumstances a reasonable person can ascertain the intended

benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."

*Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994).  A "plan, fund or program" does not be a formal written document and can be comprised of multiple documents.  *Id*. at 151; *Feifer*, 306 F.3d at 1209 ("However slap-dash, the Program Summary and the accompanying memorandum" established a plan that was governed by ERISA).

47. 45.   The FA Deferred Compensation Program—which consists of the FA Compensation Plan, the MSCIP, the EICP, and the Award Certificates—is a "plan, fund or program" under ERISA.  The FA Compensation Plan identifies the intended benefits—deferred compensation—using a detailed, objective formula that determines how FAs earn benefits.  2018 FA Compensation Plan at 5.

46.   The FA Deferred Compensation Program also has an ascertainable class of beneficiaries.  Only FAs are eligible to participate in the program, and the Award Certificates that are issued to them about their deferred compensation are specific to FAs.  *Id*. at 4; 2017 Award Summary Description at 1-2.

47.   The FA Deferred Compensation Plan also has an identifiable source of financing.  FAs' deferred compensation in the MSCIP is paid "out of the general assets of Morgan Stanley" on the Scheduled Distribution Date.  MSCIP Plan Document at § 9.  FAs' RSUs in the EICP are converted to shares of Morgan Stanley common stock out of the 373,00,000 shares that Morgan Stanley specifically designated to pay these benefits.  EICP Plan Document at § 4(a).

**2.      The FA Deferred Compensation Program "Results in a Deferral of Income."**

48.   Subsections (i) and (ii) in Section 3(2)(A) of ERISA "set out independent tests" for whether a "plan, fund or program" is an "employee benefit pension plan."  *Pasternack v. Schrader*, 863 F.3d 162, 168 (2d Cir. 2017); *see also Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 624 (5th Cir. 2014) ("The plain language of the statute makes clear that subsection (ii) is separate

and distinct from subsection (i).").  The second of these two independent tests—whether a "plan, fund or program" "results in a deferral of income" under ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii)—is "an effects-based inquiry rather than one based on purpose." *Pasternack*, 863 F.3d at 170, n.5.

49.     The FA Deferred Compensation Program results in a deferral of FAs' income.  The first portion of an FA's Total Credits are designated as Deferred Credits, which the FA receives years later through either the MSCIP or EICP.  FAs receive their remaining Total Credits, i.e., their Cash Credits, at the end of the next month as cash compensation.  In other words, FAs defer the first portion of their compensation, instead of receiving it right away in cash.

50.     The terms of the FA Compensation Plan demonstrate that FAs defer part of their income.  The Plan section titled "Deferred Compensation" describes how FAs earn "deferred compensation awards" by generating revenue.  FA Compensation Plan at § 1.2.2.  While ERISA does not define the phrase "deferral of income," it has the same meaning as "deferred compensation."  *See*, *e.g.*, *Tolbert*, 758 F.3d at 625.  Accordingly, "by its express terms," Morgan Stanley's compensation program for FAs "results in a deferral of income." *See*, *e.g.*, *id.* at 625-26 (plan covered by ERISA because it "contain[ed] provisions for both Voluntary Deferred Compensation and Mandatory Deferred Compensation, terms that plainly refer to income that is deferred."); *Wilson v. Safelite Group, Inc.*, 930 F.3d 429, 434 (6th Cir. 2019) (ERISA applied "when a deferral of income by employees . . . arises as an effect, issue, or outcome from' the provisions of that plan.").

51.     In addition, Morgan Stanley describes the MSCIP and EICP as "Deferred Compensation Plans" in its audited financial statements.  Morgan Stanley Form 10-K for YE Dec. 31, 2019, at 137-38.  Likewise, MSSB describes the MSCIP and EICP as "Deferred

Compensation Plans" in its financial statements.  MSSB Consolidated Statement of Financial Condition as of June 30, 2020, at 4-5.

52.     These descriptions are consistent with the dictionary definition of "deferred compensation" as (1) "[p]ayment for work performed, to be paid in the future or when some future event occurs," and (2) "an employee's earnings that are taxed when received or distributed rather than when earned . . . ." BLACK'S LAW DICTIONARY (11th ed. 2019).  Here, FAs defer part of their compensation for work performed (by generating revenue) until a later date and do not pay taxes on this compensation until it is distributed.  FA Compensation Plan at 4; MSCIP Plan Document at § 11; EICP Plan Document at § 16(a).

### 3.     The Plans Result in a Deferral of Income "For Periods Extending to the Termination of Covered Employment or Beyond."

53.     The FA Deferred Compensation Program results in FAs deferring income "for periods extending to the end of covered employment or beyond."  ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii).  The phrase "end of covered employment" refers to when an employee stops working for a company.  *Wilson*, 930 F.3d at 435.

54.     A plan need ***not*** require employees to defer income until "the end of covered employment or beyond" in order to be governed by ERISA.  *Wilson*, 930 F.3d at 434.  ERISA "covers plans containing terms that have as an effect, issue, or outcome—even if not a requirement—deferral of income by employees extending to the termination of covered employment or beyond."  *Id*. at 435.  As the court explained in *Wilson*,

> Subsection (ii) does not specify deferral of income "until termination" or "to termination;" rather it says "for periods extending to the termination." Thus, deferrals may occur for various periods, and those periods may last up to and/or beyond termination. Subsection (ii) covers a wide array of plans and does not exclude plans that give participants the option to receive in service distributions.

14

*Id*.

55.     The FA Deferred Compensation Program contains several provisions that contemplate FAs receiving their deferred compensation at or after the end of their employment with Morgan Stanley.

56.     FAs whose employment ends because of a Disability, Involuntary Termination, Retirement, or Full Career Retirement ***still receive their deferred compensation*** on the Scheduled Distribution Date under the MSCIP and on the Scheduled Vesting Date under the EICP—both of which occur after their employment with Morgan Stanley has ended.  Meanwhile, FAs who qualify for a Government Service Termination receive their deferred compensation when they leave Morgan Stanley.  Thus, "by design," *Tolbert*, 758 F.3d at 625, and "as an effect, issue or outcome from the provisions of the plan," *Wilson*, 930 F.3d at 434, Morgan Stanley pays FAs their deferred compensation on or after their termination of employment.

**D.     The Cancellation Rule Violates ERISA's Vesting Requirements.**

57.     ERISA has strict vesting rules that apply to "individual account plans" like the FA Deferred Compensation Program. Contributions to the FA Deferred Compensation Program are employee contributions and, therefore, 100% vested when made under ERISA § 203.

58.     Even if contributions to the FA Deferred Compensation Program were to be considered employer contributions under ERISA § 203(a)(2)(B), employees must be fully vested in their accounts plans after they have three years of service or, alternatively, gradually vested in their accounts under the following schedule:

| Years of Service | Nonforfeitable Percentage |
|------------------|---------------------------|
| 3                | 20                        |
| 4                | 40                        |
| 5                | 60                        |
| 6                | 80                        |
| 7 or more        | 100                       |

15

59.     The FA Deferred Compensation Program violates ERISA's vesting requirements because FAs vest in their deferred compensation in either six or eight years under the MSCIP and in four years under the EICP, with none of these vesting schedules impacted by the FA's years of service.

60.     Plaintiff, who worked for Morgan Stanley for nine years, should have been fully vested in his deferred compensation under ERISA.

**E.     The FA Deferred Compensation Program is Not a "Bonus Program."**

61.     The Department of Labor has promulgated regulations that "clarify the limits" of the term "employee pension benefit plan" under ERISA.  29 C.F.R. § 2510.3-2(a).  Employee pension benefit plans do not include "bonus programs," which are "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."  29 C.F.R. § 2510.3-2(c).

62.     FAs' deferred compensation in the FA Deferred Compensation Program is not a "bonus."

63.     A bonus is a "premium paid in addition to what is expected; esp., a payment by way of a division of a business's profits, given over and above normal compensation (year-end bonus.)." BLACK'S LAW DICTIONARY (11th ed. 2019).

64.     FAs do not have to do anything "in addition to what is expected" of them in order to earn Deferred Credits.  For example, they do not have to generate a specified amount of Total Credits or improve their previous year's production in order to earn Deferred Credits.  Indeed, FAs automatically earn Deferred Credits with the *very first dollar of revenue* they generate as part of their compensation structure.  Given that FAs are expected to generate revenue, their compensation

for performing this core function—at the absolute minimum level—is not, and cannot, be a "bonus."

65.     Rather, FAs' compensation—including their deferred compensation—is a "commission."

66.     "A commission is a 'fee or percentage allowed to a sales representative or an agent for services rendered.'" *Wolfe v. Advance Ins. Co. of Kansas*, No. 07-1406-DWB, 2009 WL 2106138, at *8 (D. Kan. July 16, 2009) (quoting The American Heritage Dictionary (3d ed. 1992)). A "'commission' is commonly understood to refer to those in the business of selling goods, services or real estate set typically as a percentage of the sales price." *Israel v. Voya Institutional Plan Servs. LLC*, No. 15-cv-11914-ADB, 2017 WL 1026416, at *4 (D. Mass. Mar. 16, 2017).

67.     FAs automatically earn "Total Credits," as a fixed percentage (i.e., the Credit Rate) of the revenue they generate under Morgan Stanley's "Grid."  FAs' Total Credits are "commissions."  *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, at Docket No. 42-1 at 6 (Morgan Stanley describing the FA Compensation Plan by stating "MSSB determined an FA's qualifying revenue each month, and multiplied it by the assigned Grid Rate percentage to determine the amount of a monthly commission. . . ."); *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, 2013 WL 6255697, at *1 (finding that the FA Compensation Plan provided that FAs would receive "commissions" calculated by "apply[ing] a particular commission percentage to the amount of revenue [FAs] generated for MSSB.").  Because Deferred Credits are a part of, and not in addition to, Total Credits, an FA's Deferred Credits are "commissions," a term that is distinct from a "bonus."  *Israel*, 2017 WL 1026416, at *4.

68.     Indeed, the FA Compensation Plan distinguishes between FAs' "deferred compensation," which is a part of their commissions, and "bonuses," which are in addition to their

commissions. FAs earn deferred compensation under a non-discretionary, uniformly applied "Grid" starting at the first dollar of revenue they generate. In contrast, FAs earn "year-end bonuses" by achieving individualized, performance-based goals such as increasing their prior year's revenue by specified percentages or cross-selling products to clients. FA Compensation Plan at 5. "Achieving individualized, performance-based goals is "in addition to what is expected," and, therefore, a classic bonus. *Israel*, 2017 WL 1026416, at *6.

**F.      The FA Deferred Compensation Program Is Not A "Top Hat" Plan.**

69.      The FA Deferred Compensation Program is not a "top hat" plan. A "top hat" plan is a "employee benefit plan" that "is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." ERISA § 201(2), 29 U.S.C. § 1051(2). "Top hat" plans are exempt from ERISA's vesting requirements. *Id.*

70.      To qualify as a "top hat" plan, a plan's participants must be part of a "select group of management or highly compensated employees." *Id.* This test that has quantitative and qualitative factors. *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287-88 (2d Cir. 2000).

71.      First, the plan must cover relatively few employees, a test often expressed as a percentage of the employer's workforce that participate.

72.      The relevant workforce would be that of MSSB, the entity that employs the FAs. Morgan Stanley's other subsidiaries—including Morgan Stanley & Co., LLC, Morgan Stanley & Co., International plc, Morgan Stanley India Primary Dealer Pvt. Ltd., Morgan Stanley Menkul Degerler A.S., and Bank Morgan Stanley AG—do not pay FAs' benefits or sponsor the FA

Deferred Compensation Plan and thus are not an FA's "employer" under ERISA § 3(5), 29 U.S.C. § 1002(5).

73.     MSSB employs approximately 15,000 FAs.  All or almost all of them participate in the FA Deferred Compensation Program because participation is mandatory and begins with the first dollar of revenue generated.

74.     Upon information and belief, the FAs who participate in the FA Deferred Compensation Program represent a significant percentage of the relevant workforce, which far exceeds the percentage allowed under ERISA. *Demery*, 216 F.3d at 289.

75.     Second, participation in the FA Deferred Compensation Program is not limited to "highly compensated" FAs or managers.

76.     To determine whether participants are "highly compensated," courts compare participants' compensation to that of non-participants. *Alexander v. Brigham & Women's Phys. Org., Inc.*, 513 F.3d 37, 46 (1st Cir. 2008). As explained in ¶¶ 16-20 above, FAs earn Deferred Credits, and thus deferred compensation awards, from the first dollar of revenue they generate. The FA Deferred Compensation Program includes FAs who generate minimal amounts of revenue and are not highly compensated compared to other employees. Indeed, the FA Deferred Compensation Program includes the lowest compensated FAs.

77.     Participants in the FA Deferred Compensation Program are also not members of a "select group of management." The FAs who participate are not executives and most have no supervisory responsibility.

78.     Since the FA Deferred Compensation Program is not limited to "a select group of management or highly compensated employees," it is not a "top hat" plan under ERISA.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this case as a class action under Rule 23 of the Federal Rules of

Civil Procedure on behalf of himself and a class (the "Class") defined as follows:

> All former Morgan Stanley FAs who forfeited deferred
> compensation in the MSCIP or EICP from December 30, 2014, until
> the date of judgement because of the Cancellation Rule.  Excluded
> from the Class are Defendants and any individuals who are
> subsequently determined to be fiduciaries of the MSCIP or EICP.

80.     The members of the Class are so numerous that joinder of all members is

impractical. Upon information and belief, the Class includes thousands of persons.

81.     Plaintiff's claims are typical of the claims of the members of the Class because

Plaintiff's claims and the claims of all Class members arise out of the same policies and practices

of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants'

wrongful conduct.

82.     There are questions of law and fact common to the Class, and these questions

predominate over questions affecting only individual Class Members. Common legal and factual

questions include:

      (a)     Whether ERISA applies to the FA Deferred Compensation Program;

      (b)     Whether the Cancellation Rule is invalid under ERISA;

      (c)     Whether Class Members are entitled to equitable relief under ERISA

§ 502(a)(3);

      (d)     Whether the Compensation Committee violated its fiduciary duties under

ERISA § 502(a)(2) in selecting and enforcing a vesting schedule that violated ERISA; and

      (e)     Whether Class Members should receive additional benefits under the FA

Deferred Compensation Program.

83.     Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in managing this litigation as a class action.

84.     This action may be properly certified under Rule 23(b)(1). Certification is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Certification is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

85.     Alternatively, certification is warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or other equitable relief appropriate to the Class as a whole.

86.     Alternatively, certification is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

87.     Plaintiff re-alleges all prior allegations in the Complaint.

88.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

89.     Under this section of ERISA, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks a declaration that the FA Deferred Compensation Program is an "employee benefit pension plan" under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

90.     Plaintiff also seeks orders from the Court providing a full range of equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including:

(a)     A declaration that the FA Deferred Compensation Program and its Cancellation Rule violate ERISA's vesting and anti-forfeiture rules;

(b)     An injunction requiring Defendants to remedy their past violations of EISA's vesting rules, including reversing all past forfeitures caused by the application of the Cancellation Rule;

(c)     Surcharge;

(d)     An "accounting" of all deferred compensation wrongfully withheld from FAs because of the Cancellation Rule;

(e)     Disgorgement of all amounts wrongfully withheld;

(f)     Disgorgement of all profits Defendants earned on the amounts they wrongfully withheld;

(g)     A declaration that the amounts wrongfully withheld are in a constructive trust for the benefit of Plaintiff and the Class;

(h)     An order granting Plaintiff and the Class an equitable lien on Defendants'
assets equal to the amount that Defendants' wrongfully withheld; and

(i)     All other relief the Court determines is just and proper under its equitable
powers.

**SECOND CLAIM**
**Reformation of the FA Deferred Compensation Plan**
**and to Recover Benefits Under the Reformed Plan**
**(ERISA §§ 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3))**

91.     Plaintiff re-alleges all prior allegations in the Complaint.

92.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary
to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title
or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such
violations or (ii) to enforce any provisions of this title or the terms of the plan."

93.     Defendants improperly denied Plaintiff and the members of the Class their deferred
compensation that should have been vested and not forfeited under ERISA.  By denying Plaintiff
and the members of the Class their deferred compensation, Defendants violated ERISA § 203(a),
29 U.S.C. § 1053(a).

94.     Plaintiff and the Class are entitled to reformation of the FA Deferred Compensation
Program to require Defendants to comply with the vesting and anti-forfeiture requirements in
ERISA § 203(a), 29 U.S.C. § 1053(a).

95.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or
beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the
terms of the plan."

96.     Plaintiff and the Class are entitled to recover their vested benefits, enforce their rights to the payment of their past vested benefits, and clarify their rights to vested benefits under the FA Deferred Compensation Program after reformation.

**THIRD CLAIM**
**Breach of Fiduciary Duty Against the Compensation Committee Regarding the**
**MSCIP and the EICP**
**(ERISA §§ 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3))**

97.     Plaintiff re-alleges all prior allegations in the Complaint.

98.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other person who in fact performs fiduciary functions.   Thus, a person is a fiduciary if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."   ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).   This is a functional test.   Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override a finding of fiduciary status when the statutory test is met.

99.     The Compensation Committee is a fiduciary under the FA Deferred Compensation Program because it is the administrator of the MSCIP and EICP and is responsible for, among other things, reviewing and establishing the rules and procedures of the FA Deferred Compensation Program, including the ability to determine that it is governed by ERISA.

100.     ERISA requires that fiduciaries discharge their duties to a plan solely in the interest of the participants and their beneficiaries. ERISA § 1104, 29 U.S.C. § 1104(a). Further, fiduciaries

must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," and must discharge their duties to a plan in accordance with the documents and instruments governing the plan insofar as the plan is consistent with ERISA. *Id.*

101.    ERISA's fiduciary provision mandates that fiduciaries discharge their duties "in accordance with the documents and instruments governing the plan," but ***only if*** the plan's terms "are consistent" with ERISA's substantive requirements.   ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

102.    The Compensation Committee breached its fiduciary duty by selecting Scheduled Vesting Dates for the FA Deferred Compensation Program that violated ERISA's vesting requirements and then applying the Cancellation Rule to deny the FAs who left Morgan Stanley their deferred compensation that should have been vested under ERISA.

103.    Section 409 of ERISA provides that any person who is a fiduciary of a plan and who breaches any responsibility, obligation, or duty imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from any breach, and to restore to the plan any profits the fiduciary made using the plan's assets. 29 U.S.C. § 1109.  Section 409 of ERISA also provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate. *Id.*

104.    Section 502(a)(2) of ERISA permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under Section 409 of ERISA. 29 U.S.C. § 1132(a)(2).

105.    Section 502(a)(3) of ERISA permits a plan participant, beneficiary, or fiduciary to (A) enjoin any act or practice that violates any provision of Title I of ERISA or the terms of a plan;

or (B) obtain other appropriate equitable relief to (i) redress such violations, or (ii) enforce any provisions of Title I of ERISA or the terms of a plan. 29 U.S.C. § 1132(a)(3).

106.   Plaintiff and the class seek the restoration of all deferred compensation that was illegally deemed forfeited by Defendants.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays that judgment be entered against Defendants and requests that the Court award the following relief:

A.   Certification of this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.   A declaration that the FA Deferred Compensation Program and the Cancellation Rule violates ERISA's vesting and anti-forfeiture rules;

C.   An injunction requiring Defendants to remedy their past violations of ERISA's vesting rules, including reversing all past forfeitures caused by the application of the Cancellation Rule;

D.   Surcharge;

E.   An "accounting" of all deferred compensation wrongfully withheld from Plaintiff and the Class;

F.   Disgorgement of the amounts that have been wrongfully withheld from Plaintiff and the Class;

G.   Disgorgement of the profits Defendants earned on the amounts wrongfully withheld from Plaintiff and the Class;

H.   A declaration that the amounts wrongfully withheld are in a constructive trust for the benefit of Plaintiff and the Class;

I.      An order granting Plaintiff and the Class an equitable lien on Defendants' assets equal to the amount that has been wrongfully withheld;

J.      Reformation of the FA Deferred Compensation Program;

K.      An Order directing Defendants to remedy their past violations of ERISA, including the re-instatement and payment of forfeited amounts and benefits of Plaintiff and the Class;

L.      An Order directing Defendants to pay all benefits improperly withheld under the FA Deferred Compensation Program as reformed;

M.      Compensatory damages;

N.      Awarding, declaring, or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law that the Court deems proper;

O.      Attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), or other applicable doctrine;

P.      Prejudgment and post-judgment interest; and

Q.      Any other relief the Court determines is just and proper.

Dated: December 30, 2020                              Respectfully submitted,


                                           _s/ William H. Narwold_____
                                           William H. Narwold
                                           Mathew P. Jasinski
                                           MOTLEY RICE LLC
                                           27 Church Street, 17th Floor
                                           Hartford, CT  06103
                                           Telephone: (860) 882-1681
                                           Facsimile: (860) 882-1682
                                           bnarwold@motleyrice.com
                                           mjasinski@motleyrice.com

                                           *New York Office*:
                                           777 Third Avenue, 27th Floor
                                           New York, New York 10017

Thomas R. Ajamie (application pending)
AJAMIE LLP
460 Park Avenue, 21st Floor
New York, NY  10022
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com

David S. Siegel (to be admitted *pro hac vice*)
John S. "Jack" Edwards, Jr. (to be admitted
*pro hac vice*)
Dona Szak (to be admitted *pro hac vice*)
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX  77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
dsiegel@ajamie.com
jedwards@ajamie.com
dszak@ajamie.com

Robert A. Izard (to be admitted *pro hac vice*)
Mark P. Kindall (to be admitted *pro hac vice*)
Douglas P. Needham
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT  06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
mkindall@ikrlaw.com
dneedham@ikrlaw.com