# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW T. SHAFER, SHERI HAUGABOOK, PETER HEIDT, JEFFREY SHOVER, MACE TAMSE, GEORGE LIVANOS, MARK LOFTUS, JEFFREY SAMSEN, JEFFREY SHERESKY, STEVE SHERESKY, STEVE NADLER, AND SANDY JUKEL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. 1:20-cv-11047-PGG |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John/Jane Does 1-20, | |
| Defendants. | June 8, 2022 |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 1

      A.     The Deferred Compensation Program .................................................... 1

      B.     The Bonus Agreements (Shafer, Tamse, and Loftus)............................. 3

      C.     The Employment Agreement (Nadler) ................................................... 4

      D.     The CARE Program (Haugabook, Heidt, Livanos, Shover, Samsen, J. Sheresky, S. Sheresky, and Jukel)...................................................... 5

III.    LEGAL STANDARD.................................................................................... 5

IV.    ARGUMENT.................................................................................................. 6

      A.     The parties never agreed to arbitrate Plaintiffs' claims. ........................ 6

            1.     Plaintiffs' claims are not "Covered Claims" under the arbitration agreements................................................................ 6

                  a.     Plaintiffs' claims do not "arise from or relate to their employment" because they do not involve facts particular to them. ....................................................................... 7

                  b.     The parties did not agree to arbitrate claims brought in Plaintiffs' representative capacity................................. 10

                  c.     The ERISA plan did not agree to arbitrate Plaintiffs' claims. ....................................................................... 13

            2.     Even if Plaintiffs' claims are "Covered Claims" under the arbitration agreements, those agreements were superseded by the MSCIP. .............. 13

      B.     Even if the parties agreed to arbitrate Plaintiffs' claims in individual arbitrations, those arbitration agreements are unenforceable as "prospective waiver[s] of a party's right to pursue statutory remedies" under ERISA § 502............................................................................................................ 16

      C.     The Court should not grant a partial stay for the same reasons it should not compel arbitration. ....................................................................... 21

V.     CONCLUSION............................................................................................. 22

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alday v. Raytheon Co.*,
   619 F. Supp. 2d 726 (D. Ariz. 2008) ........................................................................... 21

*Alghanim v. Alghanim*,
   828 F. Supp. 2d 636 (S.D.N.Y. 2011) ........................................................................... 9

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................. 5, 16

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*,
   645 F.3d 522 (2d Cir. 2011) .................................................................................. 14, 15

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
   935 F.3d 274 (5th Cir. 2019) ....................................................................................... 11

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................................... 11

*Baker & Taylor, Inc. v. AlphaCraze.com Corp.*,
   602 F.3d 486 (2d Cir. 2010) ........................................................................................ 14

*Banyai v. Mazur*, No. 00-cv-9806,
   2007 WL 959066 (S.D.N.Y. Mar. 29, 2007) .............................................................. 12

*Berry v. Wells Fargo & Co.*, No. 3:17-cv-304,
   2018 WL 9989754 (D.S.C. Oct. 9, 2018) .............................................................. 20, 21

*Bird v. Shearson Lehman/Am. Express, Inc.*,
   926 F.2d 116 (2d Cir. 1991) ........................................................................................ 18

*Browe v. CTC Corp.*,
   15 F.4th 175 (2d Cir. 2021) ........................................................................ 12, 13, 16, 20

*Cedeno v. Argent Trust Co.*, No. 20-cv-9987,
   2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) ............................................................... 16

*Citigroup Global Mkts. Inc. v. All Children's Hosp. Inc.*,
   5 F. Supp. 3d 537 (S.D.N.Y. 2014) ............................................................................. 15

*Coan v. Kaufman*,
   457 F.3d 250 (2d Cir. 2006) .............................................................................. 11, 13, 17

*Conkright v. Frommert*,
   559 U.S. 506 (2010) ........................................................................................ 18, 19, 20

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ..................................................... 5, 7, 8, 9, 10, 11, 17, 18

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
241 F.3d 123 (2d Cir. 2001) ..................................................................................... 9

*Credit Suisse Sec. (USA) LLC v. Tracy*,
812 F.3d 249 (2d Cir. 2016) ................................................................................... 18

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001) ................................................................................................ 19

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-6685,
2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021) ........................................... 11, 13, 17

*Goldman Sachs & Co. v. Golden Emp. Schools Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014) ............................................................................. 14, 15

*Hawkins v. Cintas Corp.*,
32 F.4th 625 (6th Cir. 2022) ............................................................................. 13, 21

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) ................................................................................... 14

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009) ................................................................................................ 18

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) ................................................................................................ 16

*Laurent v. Pricewaterhouse Coopers LLP*,
945 F.3d 739 (2d Cir. 2019) ................................................................................... 12

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ................................................................................................ 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ................................................................................................ 16

*Moore v. Interacciones Glob., Inc.*, No. 94-cv-4789,
1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) ............................................................. 22

*Munro v. Univ. of S. Cal.*,
896 F.3d 1088 (9th Cir. 2018) .......................................................................... 11, 21

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) .......................................................................... 10, 11

*Ruiz v. New Avon LLC*, No. 18-cv-9033,
   2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) ........................................................ 15

*Sec'y U.S. Dep't of Labor v. Koresko*,
   646 F. App'x 230 (3d Cir. 2016) ............................................................................ 20

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) .................................................................................. 16

*Winter Invs., LLC v. Panzer*, No. 14-cv-6852,
   2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015) ........................................................ 21

*Z.D. v. Group Health Coop.*, No. 11-cv-1119,
   2012 WL 1977962 (W.D. Wash. June 1, 2012) ...................................................... 19

## **Statutes**

9 U.S.C. § 3 ..................................................................................................................... 21

ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B) ........................................................... 2

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ................................................................... 18

ERISA § 402(b)(4), 29 U.S.C. § 1102(b)(4) ................................................................... 18

ERISA § 409(a), 29 U.S.C. § 1109(a) ............................................................................. 16

ERISA § 409, 29 U.S.C. § 1109 .............................................................. 11, 12, 16, 20

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ..................................... 7, 8, 11, 12, 13, 16

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .............................. 8, 11, 12, 16, 17, 19

## **Rules**

29 C.F.R. § 2560.503-1(b)(5) ................................................................................. 19, 21

Plaintiffs submit this Memorandum of Law in opposition to Morgan Stanley's Motion to Compel Arbitration and to Stay Proceedings, dated May 9, 2022.[1]

## I.  INTRODUCTION

Plaintiffs are former Morgan Stanley Financial Advisors ("FAs") who seek to remedy a feature of Morgan Stanley's deferred compensation plan—the "Cancellation Rule"—that violates ERISA's vesting and anti-forfeiture requirements and, in turn, to recover deferred compensation that Morgan Stanley wrongfully caused them and other FAs to forfeit when they left Morgan Stanley. As their claims are inherently representative in nature, Plaintiffs brought this case as a class action. Morgan Stanley seeks to compel individual arbitrations under employment arbitration agreements. The motion should be denied for four reasons. First, Plaintiffs' claims are not "Covered Claims" under the arbitration agreements; therefore, the arbitration provisions do not apply. Second, Plaintiffs' claims are governed by the forum selection clause in the plan document. Third, the ERISA plan at issue did not agree to arbitrate Plaintiffs' claims. Finally, even if the parties agreed to arbitrate Plaintiffs' claims in individual arbitrations, the arbitration agreements would be unenforceable as "prospective waiver[s] of a party's right to pursue statutory remedies."

## II.  BACKGROUND

### A.  The Deferred Compensation Program

Plaintiffs received compensation in multiple components under Morgan Stanley's "Financial Advisor/Private Wealth Advisor Compensation Plan" (the "FA Compensation Plan").[2] ECF No. 58, Amended Class Action Complaint ("Compl."), ¶ 27. The component at issue here is

---

[1] Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, Morgan Stanley Compensation Management Development Succession Committee, and John/Jane Does 1-20 are referred to collectively herein as "Morgan Stanley."

[2] The 2015 version of the FA Compensation Plan, dated January 12, 2015, is attached as Exhibit A to the Declaration of Keith Porco that accompanies Defendants' Memorandum of Law.

deferred compensation. Morgan Stanley provides FAs deferred compensation as a percentage of the revenue generated by their clients' investment activities (the "FA Deferred Compensation Program"). Compl., ¶ 2. Awards are credited each year to a combination of the Morgan Stanley Compensation Incentive Plan ("MSCIP") and the Morgan Stanley Equity Incentive Compensation Plan ("EICP"). Compl., ¶ 23. The terms—but not the percentage or amount—of deferred compensation are "set forth in the applicable award documentation." FA Compensation Plan § 1.2.2. This documentation includes Award Certificates and the MSCIP and the EICP plan documents.[3] Compl., ¶¶ 32, 56.

Subject to certain exceptions, Morgan Stanley cancels certain awards of deferred compensation when an FA leaves Morgan Stanley (the "Cancellation Rule"). *See* Compl., ¶¶ 2, 41-46, 51-52. When Plaintiffs left Morgan Stanley, Morgan Stanley invoked the Cancellation Rule, which caused Plaintiffs to forfeit previously awarded deferred compensation benefits. The FA Deferred Compensation Program—which includes the MSCIP and the EICP—is an ERISA plan. The Cancellation Rule violates ERISA by cancelling awards that were fully vested under ERISA, based upon Plaintiffs' years of service. Compl., ¶¶ 53-71; *see also* ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B).

Section 17 of the MSCIP plan document states that the "courts of New York shall have exclusive jurisdiction over the Plan and any dispute arising in connection with the Plan, a

---

[3] As examples, a copy of the Award Certificate from January 2016 is attached as **Exhibit 1** to the accompanying Declaration of Mathew P. Jasinski. A copy of the MSCIP plan document then in effect is attached as **Exhibit 2**.

Participant's participation in the Plan or rights under the Plan." Jasinski Decl. Ex. 2, § 17.[4] Accordingly, Plaintiffs filed in the correct venue.

### B.     The Bonus Agreements (Shafer, Tamse, and Loftus)

A bonus program is another component of the FA Compensation Plan, but it's not at issue here. The bonus program is covered in § 2.1 of the 2015 Compensation Plan, entitled "Growth Award." FA Compensation Plan § 2.1. It is separate from the "Deferred Compensation" in § 1.2.2 of FA Compensation Plan. For Plaintiffs Shafer, Tamse, and Loftus, Morgan Stanley bases its motion on identical arbitration clauses in their Bonus Agreements.[5]

The Bonus Agreements provide that "Covered Claims" should be arbitrated. Covered Claims under the 2015 Bonus Agreement include claims arising out of or relating to an FA's "employment, compensation, and terms and conditions of employment with Morgan Stanley," or the FA's "recruitment or application for employment and hiring." 2015 Bonus Agreement § 7(a). The 2015 Bonus Agreement specifically lists seven statutes subject to arbitration: (1) the Fair Labor Standards Act; (2) Title VII of the Civil Rights Act of 1964; (3) the Age Discrimination in Employment Act; (4) the Worker Adjustment and Retraining Notification Act; (5) the Equal Pay Act; (6) the Americans with Disabilities Act; and (7) the Family and Medical Leave Act. *Id*. It does not mention ERISA, which is the only statute relevant to this case. The 2015 Bonus Agreement also provides that Covered Claims may not be "initiated, maintained, heard or determined on a class action, collective action, or representative basis . . . ." *Id*. § 7(d). And if "any

---

[4] The plan documents for the EICP, to which approximately 25% of the deferred compensation was allocated, do not appear to include either a forum selection clause or an arbitration clause.

[5] Plaintiff Shafer signed a bonus agreement in 2015 ("2015 Bonus Agreement"), while Plaintiffs Tamse and Loftus signed bonus agreements in 2014 ("2014 Bonus Agreement"). Porco Decl., ¶¶ 8-11. The 2015 Bonus Agreement is attached as Exhibit B to the Porco Declaration; the 2014 Bonus Agreement is attached as Exhibits C and D to the Porco Declaration.

claim is permitted to proceed on a class action, collective action, or representative action basis, it must do so in a court of competent jurisdiction and not in arbitration." *Id.*

Similarly, "Covered Claims" under the 2014 Bonus Agreement include claims arising out of or relating to the FA's "employment." 2014 Bonus Agreement § 7(a). It further provides that "any Covered Claim that arises in connection with an employee benefit plan subject to [ERISA] will be subject to the dispute resolution procedures set forth in the applicable ERISA plan document[6] and paragraph 7(c) through 7(e) below." *Id.* (footnote added). The 2014 Bonus Agreement also waives class actions, collective actions, and representative actions, and provides that if such waiver is unenforceable, any class action, collective action, or representative action shall be heard in court. *Id.* §§ 7(c)-(d).

### C.      The Employment Agreement (Nadler)

For Plaintiff Nadler, Morgan Stanley bases its motion on an arbitration clause in his employment agreement ("Nadler Agreement"). The Nadler Agreement, dated April 24, 2008, is attached as Exhibit A to the Declaration of Jessica Krentzman that accompanies Defendants' Memorandum of Law. It applies to "[a]ny controversy or claim arising out of or relating to" Nadler's "employment by Morgan Stanley," but expressly excludes claims that are covered under Morgan Stanley's CARE program.[7] *See* Nadler Agreement §§ 7.1-7.2. Nadler, however, opted out of the CARE program. Krentzman Decl. ¶ 31.

---

[6] As noted above, the MSCIP plan document states that the "courts of New York shall have exclusive jurisdiction over the Plan and any dispute arising in connection with the Plan, a Participant's participation in the Plan or rights under the Plan." Jasinski Decl. Ex. 2, § 17.

[7] "CARE" stands for "Convenient Access to Resolution for Employees." Krentzman Decl. ¶ 20.

### D.   The CARE Program (Haugabook, Heidt, Livanos, Shover, Samsen, J. Sheresky, S. Sheresky, and Jukel)

For Plaintiffs Haugabook, Heidt, Livanos, Shover, Samsen, J. Sheresky, S. Sheresky, and Jukel, Morgan Stanley bases its motion on the CARE program's arbitration agreement (the "CARE Agreement").[8] The CARE Agreement covers claims "arising out of, or which . . . relate to" an FA's "employment, compensation, and terms and conditions of employment with Morgan Stanley," or the FA's "recruitment or application for employment and hiring." CARE Agreement § 2. It lists the same seven statutes as the 2015 Bonus Agreement: (1) the Fair Labor Standards Act; (2) Title VII of the Civil Rights Act of 1964; (3) the Age Discrimination in Employment Act; (4) the Worker Adjustment and Retraining Notification Act; (5) the Equal Pay Act; (6) the Americans with Disabilities Act; and (7) the Family and Medical Leave Act. *Id.* It does not mention ERISA. Like the Bonus Agreements, the CARE Agreement provides that Covered Claims may not be "initiated, maintained, heard or determined on a class action, collective action, or representative action basis . . . ." *Id.* § 4. And if "any Covered Claim is permitted to proceed on a class action, collective action, or representative action basis, it must do so in a court of competent jurisdiction and not in arbitration." *Id.*

## III.   LEGAL STANDARD

There is a two-part inquiry for determining the arbitrability of a dispute: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (internal quotation marks omitted). An arbitration agreement, however, is invalid and unenforceable if it operates "as a prospective waiver of a party's right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013).

---

[8] The CARE Agreement is attached as Exhibit E to the Krentzman Declaration.

## IV.    ARGUMENT

The Court should deny Morgan Stanley's motion to compel arbitration because: (1) Plaintiffs' claims are not "Covered Claims" under the arbitration agreements; (2) even if Plaintiffs' claims were "Covered Claims," the arbitration agreements were superseded by the MSCIP plan document, which provides that "the courts of New York shall have exclusive jurisdiction" over Plaintiffs' claims; (3) the deferred compensation plan did not agree to arbitrate Plaintiffs' claims; and (4) the arbitration agreements are unenforceable because they operate as "a prospective waiver of a party's right to pursue statutory remedies" and, therefore, violate public policy. Even if individual, arbitrable issues do exist, the Court should deny Morgan Stanley's request for a discretionary stay, given that any arbitrable issues are necessarily derivative of common, plan-wide issues that must first be decided by the Court.

### A.    The parties never agreed to arbitrate Plaintiffs' claims.

#### 1.    Plaintiffs' claims are not "Covered Claims" under the arbitration agreements.

Morgan Stanley wrongly contends that Plaintiffs' claims are arbitrable because Plaintiffs agreed to arbitrate all claims arising out of or relating to their "employment," language common to each arbitration agreement.[9] *See* Defs.' Mem. at 12. But Plaintiffs' claims are not "Covered Claims" for three reasons. First, they do not arise from or relate to Plaintiffs' employment under

---

[9] The 2015 Bonus Agreement and CARE Agreement elaborate by referencing "employment, compensation, and terms and conditions of employment with Morgan Stanley . . . or the termination thereof." 2015 Bonus Agreement § 7(a); CARE Agreement § 2. Morgan Stanley seems to suggest that 2014 Arbitration Agreement also shares this language, Defs.' Mem. at 12, but it and the Nadler Agreement omit the words "compensation, and terms and conditions of employment." *Compare id.*, *with* Nadler Agreement § 7.1, 2014 Bonus Agreement § 7(a). Importantly, however, Morgan Stanley does not contend that this language expands the meaning of the 2015 Bonus and CARE Agreements beyond that of the 2014 Bonus Agreement and Nadler Agreement. *See* Defs.' Mem. at 12 (describing arbitration provisions as "materially indistinguishable").

the Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc*. Second, because Plaintiffs' claims are representative in nature, they must be litigated in court. Third, even if Plaintiffs agreed to arbitrate their claims, the plan did not.

> **a.    Plaintiffs' claims do not "arise from or relate to their employment" because they do not involve facts particular to them.**

In *Cooper*, the Second Circuit held that an arbitration agreement covering "all legal claims arising out of or relating to employment" did not encompass the plaintiff's claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), even though they involved a profit-sharing plan that was part of the plaintiff's compensation. 990 F.3d at 179. The plaintiff in *Cooper* alleged that the plan's fiduciary breached its fiduciary duties by not diversifying the plan's assets, resulting in catastrophic losses to the plan. *Id*. at 176-77. Although the Second Circuit noted that "compensation is, of course, a feature of his employment," *id*. at 180, the court held that, "in the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim ***involve facts particular to an individual plaintiff's own employment***." *Id*. at 184 (emphasis added).

The Second Circuit concluded that the claims in *Cooper*, which "hinge[d] entirely on the investment decisions made by [the defendant]," did not involve facts particular to the plaintiff's own employment, because these claims had "no connection to [the plaintiff's] own work performance, his evaluations, his treatment by supervisors, the amount of his compensation, the condition of his workplace, or any other fact particular to [the plaintiff's] individual experience at [his employer]." *Id*. at 183. Indeed, other employees could have brought the same claims for the losses to their plan accounts. *See id*. at 183-84.

Here, the arbitration provisions, like the arbitration agreement in *Cooper*, pertain to Plaintiffs' employment. But, as in *Cooper*, the merits of Plaintiffs' claims do not involve facts

particular to their employment. The claims do not concern Plaintiffs' work performance, evaluations, working conditions, amount of compensation, or any other fact particular to their individual experiences at Morgan Stanley. Rather, Plaintiffs' claims concern whether the MSCIP and EICP are governed by ERISA and, if so, whether the Cancellation Rule violates ERISA. *See* Compl., ¶ 90. Nothing about these claims "***involve facts particular to an individual plaintiff's own employment***." To the contrary, the relevant facts apply equally to every FA who forfeited deferred compensation, and each such FA can bring the same claims. Indeed, even the Secretary of Labor could do so. *See Cooper*, 990 F.3d at 183-84; *see also* ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (allowing claims by participant, beneficiary, fiduciary, or Secretary of Labor); ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (allowing claims by participant, beneficiary, or fiduciary).

*Cooper* did not, as Morgan Stanley suggests, involve "narrower arbitration language" or a "different kind of claim." Defs.' Mem. at 13. First, both cases involve employment arbitration agreements. *Compare Cooper*, 990 F.3d at 178 (covering "employment, application for employment, or termination of employment"), *with* 2015 Bonus Agreement § 7(a) (covering "employment, compensation, and terms and conditions of employment Morgan Stanley . . . or the termination thereof"), CARE Agreement § 2 (same), 2014 Bonus Agreement § 7(a) (covering "employment with Morgan Stanley or termination thereof), Nadler Agreement § 7.1 (covering "employment by Morgan Stanley").[10] Morgan Stanley observes that the defendant in *Cooper* did

---

[10] In contrast to the 2015 Bonus and CARE Agreements, the arbitration agreement in *Cooper* did not expressly extend to claims arising out of or relating to "compensation." *Cooper*, 990 F.3d at 178. Nevertheless, the Second Circuit noted that "compensation is, of course, a feature of . . . employment," *id*. at 180, and the arbitration agreement in *Cooper* separately stated that the covered claims included "overtime or other compensation disputes." *Id*. at 181-82 n.8. Like the 2015 Bonus and CARE Agreements, the arbitration provision in *Cooper* also covered statutory claims in general. But the Second Circuit *rejected* the defendant's argument that it therefore covered claims under ERISA. *Id*. at 182. And here, ERISA is conspicuously absent from the

- 8 -

not argue "that the claims 'arose out of' the plaintiff's employment," Defs.' Mem. at 13, but this observation is irrelevant because the phrase "relating to" is *broader* than the phrase "arising out of." *See Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (describing "relating to" as "broader in scope than the term 'arising out of'"); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 652 (S.D.N.Y. 2011) ("[a]n arbitration clause covering claims 'relating to' a contract is broader than a clause covering claims 'arising out of' a contract"). If the claims in *Cooper* did not "relate to" the plaintiff's employment, then they did not "arise out of" it.

Second, "in the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." *Cooper*, 990 F.3d at 184. In *Cooper*, the plaintiff argued that the defendant breached ERISA's fiduciary duties by overconcentrating a plan's assets. 990 F.3d at 177. Here, Plaintiffs allege that Defendants breached ERISA's fiduciary duties by enforcing the Cancellation Rule that violated ERISA's vesting requirements. *See* Compl., ¶¶ 68-71, 113. The claims in *Cooper* are materially like those in this case, as neither set of claims involves facts unique to an individual plaintiff's employment. *See Cooper*, 990 F.3d at 184.

Morgan Stanley argues that Plaintiffs seek "additional compensation . . . [which] plainly implicates facts particular to them, including the terms and circumstances of their agreements." Defs.' Mem. at 13. But Morgan Stanley correctly calculated deferred compensation using a "Grid" formula, which applies equally to each FA. Compl., ¶¶ 27-34. Plaintiffs do not contend that Morgan Stanley wrongly applied the "Grid" or that they are entitled to "additional compensation"

---

comprehensive list of employment-related statutes in the 2015 Bonus and CARE Agreements. *See* 2015 Bonus Agreement § 7(a); CARE Agreement § 2. As in *Cooper*, these arbitration provisions "describe[] the covered claims as 'not limited to' those listed," but those that are listed are "personal to the employee." *See* 990 F.3d at 181-82 n.8.

under the Grid. Rather, Plaintiffs contend that the MSCIP and EICP are governed by ERISA, not state law, that their (previously awarded) deferred compensation is subject to ERISA's vesting rules, and that Morgan Stanley violated ERISA's vesting rules in applying the Cancellation Rule. Like in *Cooper*, Plaintiffs' claims do not implicate their individual employment terms or compensation. Although the losses to each participant's individual plan account may differ, their claims and the core material facts that support them are the same for all participants. *See* Compl., ¶¶ 93, 100-101, 104, 107, 116-117.

In sum, because Plaintiffs' claims are not personal to Plaintiffs, they are not "Covered Claims" under the arbitration provisions, and for that reason alone, their claims are not arbitrable.

### b. The parties did not agree to arbitrate claims brought in Plaintiffs' representative capacity.

Three of the four arbitration provisions purport to waive the right to pursue a Covered Claim "on a class action, collective action, or representative action basis." 2015 Bonus Agreement § 7(d); CARE Agreement § 4; *accord* 2014 Bonus Agreement § 7(d). To the extent that any such claim is allowed to proceed, it must do so in court. *See id*. Moreover, "[a]ny issue concerning the validity or enforceability of any of the class action, collective action, and representative action waivers . . . shall be decided by a court of competent jurisdiction, and not by an arbitrator." *Id*. Thus, contrary to Morgan Stanley's argument that any disagreement about the arbitrability of Plaintiffs' claims is reserved for the arbitrator, Defs.' Mem. at 14-15, the Court—not an arbitrator—must decide whether Plaintiffs' claims must be allowed to proceed on a class-action or representative-action basis, such that they are not subject to arbitration.[11]

---

[11] "The law generally treats arbitrability as an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (internal quotation marks omitted). Here, the language delegating questions of arbitrability to the arbitrator is subject to qualification: "Any issue

Plaintiffs' claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), can be brought *only* in a representative capacity on behalf of the plan. ERISA § 409, 29 U.S.C. § 1109; *Cooper*, 990 F.3d at 184; *Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006); *see also Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-6685, 2021 WL 3667979, at *4 (S.D.N.Y. Aug. 17, 2021) (explaining that claims "for fiduciary breaches that impair the value of plan assets in a participant's individual account . . . are still on behalf of the plan" (internal quotation marks omitted)). Thus, these claims must proceed in court under the terms of the arbitration provisions, which prohibit the arbitration of representative actions.

The law compels the same result. In *Munro v. University of Southern California*, 896 F.3d 1088 (9th Cir. 2018), the Ninth Circuit held that an agreement between an employer and employee to arbitrate "all claims" did not cover a claim for breach of fiduciary duty under ERISA § 502(a)(2) because "a plaintiff bringing a suit for breach of fiduciary duty . . . seeks recovery only for injury done to the plan." 896 F.3d at 1093. As the *Munro* court explained, the agreement to arbitrate "claims . . . that Employee may have" "does not extend to claims that other entities," such as the plan, may have. *Id.* at 1092.

Plaintiffs also assert claims in a representative capacity under ERISA § 502(a)(3). For example, they seek a declaration that ERISA governs the FA Deferred Compensation Program and, in particular, the MSCIP and the EICP, and that the Cancellation Rule violates ERISA's

---

concerning arbitrability of a particular issue or claim pursuant to this Arbitration Agreement (*except for issues concerning the validity or enforceability of the class action, collective action, or representative action Waivers*) must be resolved by the arbitrator, not the court." 2015 Bonus Agreement § 7(d); 2014 Bonus Agreement § 7(d); CARE Agreement § 4 (emphasis added). Thus, the parties did not clearly and unmistakably commit questions about the arbitrability of Plaintiffs' inherently representative ERISA claims to an arbitrator. *See NASDAQ*, 770 F.3d at 1032; *accord Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281 (5th Cir. 2019) (on remand from Supreme Court decision, 139 S. Ct. 524 (2019), cited on page 14 of Morgan Stanley's brief).

vesting and anti-forfeiture requirements—equitable relief that must apply to all FAs on a plan-wide basis. *See* Compl., ¶¶ 100-101. Plaintiffs seek an order reforming the FA Deferred Compensation Program—again, relief that applies to all FAs and the plan as a whole—to comply with ERISA's vesting and anti-forfeiture requirements. *See id.*, ¶¶ 103-107. In *Laurent v. Pricewaterhouse Coopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019), the court held that "§ 502(a)(3) authorizes district courts to grant equitable relief—including reformation—to remedy violations of subsection I of ERISA," such as breaches of fiduciary duty. *Cf. Banyai v. Mazur*, No. 00-cv-9806, 2007 WL 959066, at *3 (S.D.N.Y. Mar. 29, 2007) ("nothing suggests that section 502(a)(3) authorizes only individual relief, thereby precluding suits seeking 'other appropriate equitable relief' . . . *on behalf of the plan*" (emphasis added)).

Plaintiffs' claims are like those in *Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021), in which the plaintiffs sought a declaration under ERISA § 502(a)(3) that their benefits were subject to ERISA's vesting rules and sued for breach of fiduciary under ERISA §§ 409 and 502(a)(2). *Id.* at 188. The Second Circuit affirmed the district court's declaration that the plan's terms violated ERISA's vesting rules. *Id.* at 194-97, 203 ("Courts must interpret plans to adhere to ERISA's requirements."). Although *Browe* was not a class action, the Second Circuit made clear that the relief that flowed from this determination applied to all participants, not just the named plaintiffs. In remanding the case to the district court to craft a remedial scheme to distribute benefits, the Second Circuit stated that the distribution must include a way for "[p]lan participants not parties to this suit to receive any benefits to which they may be entitled." *Id.* at 206. In other words, the court's conclusion that the plan's terms violated ERISA applied to ***all plan participants***, and each plan participant was entitled to receive benefits calculated under ERISA's vesting schedules.

The same is true here, as Plaintiffs seek a declaration for the benefit of all plan participants that ERISA's vesting rules apply to the plan and seek a way for all participants, including those "not parties to this suit[,] to receive any benefits to which they may be entitled." *Id.* at 206. These representative claims should not be litigated in individual arbitrations.

### c.   The ERISA plan did not agree to arbitrate Plaintiffs' claims.

Finally, Plaintiffs' claims are not "Covered Claims" under the arbitration agreements because the plan itself never agreed to arbitrate them. In *Hawkins v. Cintas Corp.*, 32 F.4th 625 (6th Cir. 2022), the Sixth Circuit affirmed the denial of a motion to compel arbitration because the ERISA plan never agreed to arbitrate the plaintiffs' claims under ERISA § 502(a)(2). 32 F.4th at 632-33. The plaintiffs had each signed employment agreements in which they agreed to individually arbitrate all claims "arising out of or in any way related to" their employment, including ERISA claims. *Id.* at 633. But the ERISA plan never agreed to arbitrate any claims, and plaintiffs' § 502(a)(2) claims, which sought plan-wide relief, were representative claims that really belonged to the ERISA plan. 32 F.4th at 635-36. Thus, "because § 502(a)(2) claims 'belong' to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration."[12] *Id.* at 632-33. Similarly, here, because Plaintiffs' § 502(a)(2) claims "belong" to the FA Deferred Compensation Program, including the MSCIP and EICP, Plaintiffs' individual arbitration agreements do not cover them.

### 2.   Even if Plaintiffs' claims are "Covered Claims" under the arbitration agreements, those agreements were superseded by the MSCIP.

Even if the arbitration agreements applied to Plaintiffs' claims, they were superseded by the MSCIP plan document, which specifically requires disputes about the plan to be resolved in

---

[12] Notably, in *Ferguson*, Judge Andrew L. Carter, Jr. of this District went a step further, concluding that even an arbitration agreement adopted by the plan cannot be construed to bar class certification without "run[ning] afoul" of *Coan. Ferguson*, 2021 WL 3667979, at *4.

court, *not* arbitration. Plaintiffs earned deferred compensation under the FA Compensation Plan each month that they worked at Morgan Stanley, with Morgan Stanley granting to them each January the total from the previous calendar year. Compl., ¶¶ 27, 31-32. The terms and conditions of each year's FA Compensation Plan are determined by the Compensation Committee and "set forth in the applicable award documentation." *Id*. at ¶ 32. This "applicable award documentation" includes the MSCIP plan document, which expressly provides that "***the courts of New York shall have exclusive jurisdiction*** over the Plan and any dispute arising in connection with the Plan, a Participant's participation in the Plan or rights under the Plan." Jasinski Decl. Ex. 2 § 17 (emphasis added). Accordingly, when Morgan Stanley awarded deferred compensation each year, it specifically affirmed that it would resolve award disputes in New York courts.

"Under New York law, it is well established that a subsequent contract regarding the same matter will supersede the prior contract." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). This principle applies to arbitration agreements. *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010). A prior arbitration agreement may be superseded by a subsequent contract containing a forum selection clause that precludes arbitration. *Goldman Sachs & Co. v. Golden Emp. Schools Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014). To do so, "there is no requirement that the forum selection clause mention arbitration." *Applied Energetics*, 645 F.3d at 523-24. The later agreement must only say that a specific court or venue has exclusive jurisdiction of the parties' future disputes. *Id*. at 526; *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) (parties can have "different or additional contractual arrangements" that supersede an earlier arbitration agreement).

To the extent that the arbitration agreements apply, the MSCIP plan document supersedes them. The MSCIP Plan was part of the "applicable award documentation" that applied to Plaintiffs'

- 14 -

awards of deferred compensation, which were all granted after Shafer signed the 2015 Bonus Agreement, Tamse and Loftus signed the 2014 Bonus Agreements, Nadler signed his Employment Agreement in April 2008, and Haugabook, Heidt, Livanos, Shover, Samsen, J. Sheresky, S. Sheresky, and Jukel allegedly received notice of the CARE Arbitration Agreement in September 2015.

The MSCIP plan document's use of the phrases "shall have exclusive jurisdiction" and "any dispute" are exactly the kinds of "all-inclusive" and "mandatory" language that supersede an earlier agreement. In *Applied Energetics*, for example, the parties' contract stated that "[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the . . . Southern District of New York." 645 F.3d at 523. That provision required the parties to litigate their claims in court because "the clause's use of the obligatory verb 'shall' precludes the resolution of the parties' dispute by any [other] means . . . ." *Id*. at 525.

Likewise, in *Golden Empire*, the parties' dispute was not arbitrable because their contract stated that "all actions and proceedings . . . shall be brought in the Southern District of New York." 764 F.3d at 216. And in *Citigroup Global Markets. Inc. v. All Children's Hospital Inc.*, 5 F. Supp. 3d 537 (S.D.N.Y. 2014), the court denied a motion to compel arbitration when an agreement stated that "all actions and proceedings . . . shall be brought in New York court." *Id*. at 540. Finally, in *Ruiz v. New Avon LLC*, No. 18-cv-9033, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019), the plaintiff agreed to arbitrate any future dispute with her employer. *Id*. at *2. The parties later entered into an agreement that stated that New York courts had "sole exclusive jurisdiction" over "all actions and controversies" between them. *Id*. at *7. The court denied the employer's motion to compel arbitration because the later agreement superseded the earlier agreement. *Id*. at *9.

**B.**   **Even if the parties agreed to arbitrate Plaintiffs' claims in individual arbitrations, those arbitration agreements are unenforceable as "prospective waiver[s] of a party's right to pursue statutory remedies" under ERISA § 502.**

Arbitration agreements are unenforceable on public-policy grounds if they act as a "'prospective waiver of a party's right to pursue statutory remedies.'" *Italian Colors*, 570 U.S. at 236 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). Here, if applied to Plaintiffs' claims, the arbitration provisions would eliminate Plaintiffs' right to pursue statutory remedies provided for under sections 502(a)(2) and 502(a)(3) of ERISA. *See Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 621 (7th Cir. 2021) (barring application of arbitration provision that prohibited plan-wide remedies available in claim under ERISA § 502(a)(2)); *Cedeno v. Argent Trust Co.*, No. 20-cv-9987, 2021 WL 5087898, at *5 (S.D.N.Y. Nov. 2, 2021).

Plaintiffs' claims under ERISA § 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole," in the interest of the "financial integrity" of the plan. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"). As discussed above, ERISA § 502(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, which provides that a fiduciary who breaches its duties is "liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . ." ERISA § 409(a), 29 U.S.C. § 1109(a). Thus, relief under ERISA § 409 "is available wherever it would advance the protection of the entire plan." *Cedeno*, 2021 WL 5087898, at *4; *see also Browe*, 15 F.4th at

- 16 -

205-206 ("the remedies available under ERISA for fiduciary breaches are intended to provide relief to the subject plan as a whole, as opposed to any individual participant (or her beneficiary)").

In *Cooper*, the Second Circuit stated that ERISA § 502(a)(2) "require[s] parties suing on behalf of a plan to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders." 990 F.3d at 184 (citing *Coan*); *see also Ferguson*, 2021 WL 3667979, at *4 (rejecting construction of arbitration provision that "applies to all claims arising out of or relating to the Plan" to bar class certification because doing so would "run[] afoul of *Coan*"). If the arbitration provisions prohibited Plaintiffs from bringing that claim in a representative basis, then it would "make it impossible to bring an ERISA fiduciary action that satisfies both the [arbitration provisions] and the *Coan* representative adequacy requirement, potentially rendering at least this part of the [arbitration provisions] unenforceable" and denying Plaintiffs the right to pursue that statutory remedy. *See Cooper*, 990 F.3d at 184-85. Like the Second Circuit did in *Cooper*, this Court should "decline to adopt an unnecessary reading [of the arbitration provisions] that casts its enforceability into doubt, in derogation of ERISA's protective purposes." *Id*. at 185.

The same is true for Plaintiffs' claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs seek relief for all FAs and the plan as a whole concerning whether the plan's terms are covered by ERISA and, if so, whether they violate ERISA. Am. Compl. at ¶¶ 98-107. The plan cannot be subject to ERISA's vesting rules for some participants but not others. *Coan* addressed this issue, finding that ERISA must be read to work hand-in-hand with a court's procedural rules, namely Rule 23, to help ensure that all plan participants are adequately represented. *Coan*, 457 F.3d at 256-57. Here, Plaintiffs must bring this claim in a representative capacity, and it would be manifestly unjust for them to litigate whether the plan terms must be changed for everyone in secret, individual arbitrations, where other plan participants receive no notice, much less an

opportunity to participate. Even worse, plan participants would not know how any arbitration might affect them because "[t]he publicly available arbitration award . . . typically contains little helpful information." *Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249, 256 (2d Cir. 2016).

Although Morgan Stanley is correct that ERISA does not preclude the arbitration of all statutory claims, Defs.' Mem. at 13, the question here is whether Plaintiffs' claims must be arbitrated. In *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116 (2d Cir. 1991), the court merely considered whether, as a general rule, ERISA statutory claims may be arbitrated. *See id.* at 118-22. The court did not conduct the more case-specific analysis that occurred in *Cooper*.[13]

*Bird* is distinguishable on at least three additional grounds. First, in *Bird*, the trustee of the plan was a party to the arbitration agreement. *See Bird*, 926 F.2d at 117. Thus, *Bird* is more akin to cases where the plan document contains an arbitration provision. As discussed above, the plan in this case was not a party to any arbitration agreement. *See supra* part IV.A.1.c. Second, *Bird* concerned the imprudent investment of trust assets, *id.* at 117-18, a fact-bound inquiry suitable for arbitration. This case, in contrast, concerns pure issues of ERISA law that go to the heart of whether and how ERISA applies to the plan and all plan participants. Third, the arbitration agreement in *Bird* did not include a representative-action waiver that required any such actions—to the extent permitted—to proceed in court.

Moreover, one of ERISA's goals is to promote uniformity in benefits administration.[14] *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). To that end, the ERISA requirement that plan

---

[13] The same is true of the out-of-circuit cases cited by Morgan Stanley. Defs.' Mem. at 13.

[14] All plans must be "established and maintained pursuant to a written instrument" that "specif[ies] the basis on which payments are made. . . from the plan." ERISA §§ 402(a)(1), (b)(4), 29 U.S.C. §§ 1102(a)(1), (b)(4). These requirements provide plan participants "a clear set of instructions" about how and when benefits will be paid. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009).

provisions be "applied consistently with respect to similarly situated claimants," 29 C.F.R. § 2560.503-1(b)(5), was not an issue in *Bird*. "Uniformity is impossible, however, if plans are subject to different legal obligations in different [venues]." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001). The Cancellation Rule cannot be legal for some participants but illegal for others. *See, e.g.*, *Conkright*, 559 U.S. at 517 (discussing problems that would arise under ERISA if participants were "entitled to different benefits depending on where they live, or perhaps where they bring a legal action").

Individual arbitrations about whether the Cancellation Rule violates ERISA would undermine the uniform remedies that ERISA provides to participants. Different arbitrators could reach different results on whether the plan is governed by ERISA, whether ERISA's vesting provisions apply, and whether the Cancellation Rule violates those provisions. For example, in this case, twelve former Morgan Stanley FAs assert the same claims, and Plaintiffs' counsel have been approached by other similarly situated participants. All are entitled under ERISA to have the plan provisions applied to them uniformly. ERISA's vesting rules cannot apply to some FAs but not others. The FA Deferred Compensation Plan cannot be reformed for some FAs but not others. Whether an individual participant may recover benefits *cannot* be based on the "luck of the draw" in arbitrator selection. Accordingly, the arbitration provisions operate as a prospective waiver of the uniform statutory remedies Plaintiffs seek under ERISA § 502.

In *Z.D. v. Group Health Coop.*, No. 11-cv-1119, 2012 WL 1977962 (W.D. Wash. June 1, 2012), the plaintiffs sought declaratory and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to prevent the defendant from denying coverage for a particular medical treatment. *Id*. at *2. In certifying the class, the court recognized that ERISA required the plan to act in a similar fashion toward all beneficiaries. *Id*. at *7. If the named plaintiffs were to prevail in an

individual suit, another court might reach a different result in a different suit, putting the defendants in an "inescapable legal quagmire" of not being able to comply with one judgment without violating another—a "truly unwinnable position." *Id*. at \*7. The same is true here. The individual arbitrations that Morgan Stanley seeks would ***create*** "a patchwork of different interpretations of a plan" that the Supreme Court held should be avoided in *Conkright* and deny all FAs their substantive right to have the plan applied consistently to all participants.

Plaintiffs have also requested that the fiduciaries be ordered to make good to the plan any losses resulting from the fiduciary's breach of duty, and to restore to the plan any profits the fiduciary made using the plan's assets. Compl., ¶ 114; ERISA § 409, 29 U.S.C. § 1109. "The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing." *Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016). If disgorgement were limited in arbitration to an individual participant's losses, it would not only risk inconsistent results, it would also impermissibly curtail ERISA's remedial structure that makes breaching fiduciaries liable "to the subject plan as a whole." *Browe*, 15 F.4th at 205.

The court in *Berry v. Wells Fargo & Co.*, No. 3:17-cv-304, 2018 WL 9989754 (D.S.C. Oct. 9, 2018), recognized these principles in a similar case involving whether Wells Fargo's deferred compensation plan for financial advisors violated ERISA's vesting rules. In granting class certification under Rule 23(b)(1)(A), the court observed:

> This case's central issue is whether the Deferral Plan . . . must comply with ERISA's vesting, anti-forfeiture, and funding provisions. . . . Separate lawsuits over these issues could result in different outcomes, making it impossible for the Deferral Plan's administrator to treat similarly situated participants alike as required by ERISA.

*Berry*, 2018 WL 9989754, *12. Although *Berry* addressed these issues on class certification, the same overarching principle—namely, that plan administrators must "treat all similarly situated participants in a consistent manner"—applies here. *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008). To hold otherwise would result in the inevitable violation of 29 C.F.R. § 2560.503-1(b)(5) and deny all participants their right under ERISA to the consistent application of plan terms.

### C.   The Court should not grant a partial stay for the same reasons it should not compel arbitration.

If the Court were to compel the arbitration of *all* of Plaintiffs' claims, then a stay of the entire action would be mandatory. 9 U.S.C. § 3. Recognizing that courts have expressly declined to compel arbitration of ERISA fiduciary duty claims, *see, e.g.*, *Munro*, 896 F.3d at 1092-93; *Hawkins*, 2021 WL 274341, at *7, Morgan Stanley argues that a discretionary stay of all claims "would be warranted even if the Court determined to compel arbitration of only some of plaintiffs' claims." Defs.' Mem. at 15. Its reasoning is that Plaintiffs' claims "involve common issues of fact and law, and arbitration as to any of the claims is likely to dispose issues common to all claims." Defs.' Mem. at 16 (internal quotation marks omitted).

Plaintiffs agree that their claims involve common issues of fact and law. But the presence of these common issues shows why individual arbitrations and a stay would not be appropriate. In *Winter Invs., LLC v. Panzer*, No. 14-cv-6852, 2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015), for example, a stay was warranted because the arbitration was "likely to have preclusive effect over some or all of the claims not subject to arbitration." *See id*. at *11. Here, it's the opposite. To the extent that individual, arbitrable issues exist, they are necessarily derivative of common, plan-wide issues that must first be adjudicated in court—such as whether the plan is governed by ERISA, whether ERISA's vesting rules apply, and whether the Cancellation Rule violates those provisions.

- 21 -

Consequently, "arbitration as to any of the claims" is *not* "'likely to dispose [of] issues common to' all claims." Defs.' Mem. at 16 (quoting *Moore v. Interacciones Glob., Inc.*, No. 94-cv-4789, 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995)). The issues common to Plaintiffs' claims cannot be decided in multiple, individual arbitrations, without risking inconsistent and conflicting decisions on those common issues. It bears repeating: the Cancellation Rule cannot be legal for some participants but not for others. Thus, if anything, all issues *not* subject to arbitration—i.e., all those common to the class—should be litigated first in this class action, and then any remaining arbitrable, individual issues could be resolved in individual arbitrations.

## V.    CONCLUSION

Because the arbitration provisions do not—and cannot—apply to Plaintiffs' claims, Defendants' Motion to Compel Arbitration and to Stay Proceedings should be denied.

Dated:  June 8, 2022                                    Respectfully submitted,

Robert A. Izard (*pro hac vice*)                     By: */s/ Mathew P. Jasinski*
Douglas P. Needham                                         William H. Narwold
IZARD, KINDALL & RAABE LLP                        Mathew P. Jasinski
29 South Main Street, Suite 305                      MOTLEY RICE LLC
West Hartford, CT 06107                                 27 Church Street, 17th Floor
Tel: (860) 493-6292                                         Hartford, CT 06103
Fax: (860) 493-6290                                        Telephone: (860) 882-1681
rizard@ikrlaw.com                                          Facsimile: (860) 882-1682
mkindall@ikrlaw.com                                      bnarwold@motleyrice.com
dneedham@ikrlaw.com                                   mjasinski@motleyrice.com

David S. Siegel (*pro hac vice*)                       *New York Office*:
John S. "Jack" Edwards, Jr. (*pro hac vice*)      777 Third Avenue, 27th Floor
Dona Szak (*pro hac vice*)                              New York, New York 10017
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150                               Thomas R. Ajamie
Houston, TX 77002                                         AJAMIE LLP
Telephone: (713) 860-1600                             460 Park Avenue, 21st Floor
Facsimile: (713) 860-1699                              New York, NY 10022
dsiegel@ajamie.com                                       Telephone: (713) 860-1600
jedwards@ajamie.com                                    Facsimile: (713) 860-1699
dszak@ajamie.com                                         tajamie@ajamie.com

                                                                    *Counsel for Plaintiffs*

- 22 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 8, 2022, a copy of the foregoing *Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and to Stay Proceedings* was served on Defendants' counsel by email, as agreed by the parties.

<u>*/s/ Mathew P. Jasinski*</u>
Mathew P. Jasinski
