# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW T. SHAFER, SHERI HAUGABOOK, PETER HEIDT, JEFFREY SHOVER, MACE TAMSE, GEORGE LIVANOS, MARK LOFTUS, JEFFREY SAMSEN, JEFFREY SHERESKY, STEVE SHERESKY, STEVE NADLER, AND SANDY JUKEL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. 1:20-cv-11047-PGG |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John/Jane Does 1-20, | |
| Defendants. | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Plaintiffs file this notice of supplemental authority in support of their *Opposition to Defendants' Motion to Compel Arbitration and to Stay Proceedings* (ECF No. 72).

On December 6, 2022, Judge Denise Cote issued an opinion in *Lloyd v. Argent Trust Company* that supports Plaintiffs' opposition and shows that the motion should be denied. *See* Exhibit 1, *Lloyd v. Argent Trust Co.*, No. 22-cv-4129, 2022 U.S. Dist. LEXIS 219964, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022).

Plaintiffs argued in their opposition that their ERISA claims brought in a representative capacity could not be individually arbitrated. (ECF No. 72 at 16-21.) As in this case, the plaintiffs in *Lloyd* brought ERISA claims in a representative capacity, yet the arbitration provision there

precluded the individual arbitration of their claims. *See Lloyd*, 2022 U.S. Dist. LEXIS 219964, at *7 ("The Plan's arbitration provision requires individual arbitration of any covered claim [and] such arbitration cannot provide 'any remedy which has the purpose or effect of providing additional benefits or monetary relief to any other Employee, Participant, or Beneficiary other than the Claimant.'"). The *Lloyd* court concluded that the arbitration provision was unenforceable because it "prevent[ed] a claimant from asserting rights and pursuing remedies that ERISA expressly provides." *Id.* at *12. Thus, the court denied the motion to compel individual arbitration.

As in *Lloyd*, the arbitration provisions in this case preclude the arbitration of claims brought in a representative capacity. (*See* ECF No. 72 at 3-5.) As in *Lloyd*, Plaintiffs here maintain that the arbitration provisions are unenforceable because of this restriction. (*Id*. at 15-18, 21-26.) Accordingly, this Court should deny *Defendants' Motion to Compel Arbitration and to Stay Proceedings*.

Dated:  December 20, 2022                           Respectfully submitted,

        /s/ Mathew P. Jasinski

| | |
|---|---|
| Robert A. Izard (*pro hac vice*) | William H. Narwold |
| Douglas P. Needham | Mathew P. Jasinski |
| IZARD, KINDALL & RAABE LLP | MOTLEY RICE LLC |
| 29 South Main Street, Suite 305 | 27 Church Street, 17th Floor |
| West Hartford, CT 06107 | Hartford, CT 06103 |
| Tel: (860) 493-6292 | Telephone: (860) 882-1681 |
| Fax: (860) 493-6290 | Facsimile: (860) 882-1682 |
| rizard@ikrlaw.com | bnarwold@motleyrice.com |
| dneedham@ikrlaw.com | mjasinski@motleyrice.com |
| | |
| | *New York Office*: |
| John S. "Jack" Edwards, Jr. (*pro hac vice*) | 777 Third Avenue, 27th Floor |
| Dona Szak (*pro hac vice*) | New York, New York 10017 |
| AJAMIE LLP | |
| Pennzoil Place - South Tower | Thomas R. Ajamie |
| 711 Louisiana, Suite 2150 | AJAMIE LLP |
| Houston, TX 77002 | 460 Park Avenue, 21st Floor |
| Telephone: (713) 860-1600 | New York, NY 10022 |
| Facsimile: (713) 860-1699 | Telephone: (713) 860-1600 |
| jedwards@ajamie.com | Facsimile: (713) 860-1699 |
| dszak@ajamie.com | tajamie@ajamie.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2022, a copy of the foregoing *Plaintiffs' Notice of Supplemental Authority in Support of Their Opposition to Defendants' Motion to Compel Arbitration* was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                                              */s/ Mathew P. Jasinski*
                                                                              Mathew P. Jasinski

# Exhibit 1

 Caution
As of: December 19, 2022 3:11 PM Z

# *Lloyd v. Argent Trust Co.*

United States District Court for the Southern District of New York

December 6, 2022, Decided; December 6, 2022, Filed

22cv4129 (DLC)

**Reporter**
2022 U.S. Dist. LEXIS 219964 *; 2022 WL 17542071

JAMAAL LLOYD and ANASTASIA JENKINS, Plaintiffs, -v- ARGENT TRUST CO., et al., Defendants.

**Subsequent History:** Appeal filed, 12/09/2022

## Core Terms

arbitration, shares, arbitration provision, remedies, claimants, stock, equitable relief, rights, arbitration clause, arbitration agreement, arbitration procedure, representative action, compel arbitration, per share, fiduciary, monetary

**Counsel:  [*1]** For plaintiffs: Ryan Wheeler, Cohen Milstein Sellers & Toll PLLC, Washington, DC.

For Jamaal Lloyd, plaintiff: Michelle C. Yau, Daniel Sutter, Cohen Milstein Sellers & Toll PLLC, Washington, DC; Kai Heinrich Richter, Cohen Milstein Sellers & Toll PLLC, Minneapolis, MN; Michael Benjamin Eisenkraft, Cohen Milstein Sellers & Toll PLLC, New York, NY.

For defendants: Larry M. Blocho, Jr., Lars C. Golumbic, Mark Nielsen, Paul Rinefierd, Sarah Adams, Groom Law Group, Chartered, Washington, DC.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

## Opinion

OPINION AND ORDER

DENISE COTE, District Judge:

Plaintiffs Jamaal Lloyd and Anastasia Jenkins have brought this suit against defendants Herbert Wetanson, Gregor Wetanson, Stuart Wetanson (the "Seller Defendants") and Argent Trust Co. ("Argent") for causing their Employee Stock Ownership Plan to overpay for 400,000 shares of company stock. The defendants have moved to compel arbitration and stay the case or, in the alternative, dismiss the case for lack of subject matter jurisdiction. For the following reasons, the defendants' motion is denied.

## Background

Unless otherwise noted, the following facts are taken from the First Amended Complaint ("FAC"), and are **[*2]** assumed to be true for the purposes of this motion. Lloyd and Jenkins are former employees of WBBQ Holdings, Inc. ("WBBQ"), a chain of low-priced barbeque restaurants located in New York City. Lloyd worked at WBBQ from 2013 to 2020, and Jenkins worked there from 2021 to 2018. Herb Wetanson is WBBQ's founder and President, Gregor Wetanson is WBBQ's CEO, and Stuart Wetanson is a manager at WBBQ.

On January 1, 2016, the Seller Defendants established the WBBQ Employee Stock Ownership Plan ("ESOP" or "Plan"), a pension plan governed by the *Employee Retirement Income Security Act*

*("ERISA")*. WBBQ appointed Argent as trustee of the ESOP. In July of 2016, the ESOP purchased 400,000 shares of WBBQ common stock, representing 80% of WBBQ's outstanding shares. The ESOP originally agreed to purchase the shares for a total of $92,000,000. Ultimately, however, the ESOP purchased the shares for a total of $98,887,309. To finance the purchase, the ESOP entered into a $20,000,000 loan from WBBQ (the "WBBQ Loan"), and a $73,887,309 loan from the Seller Defendants (the "Seller Loan"). The Seller Loan carried a higher rate of interest than the WBBQ Loan.

The ESOP acquired WBBQ stock for approximately $247.22 per share. By December of 2016, however, WBBQ **[*3]** stock had declined to $72.20 per share. The decline continued in the years afterward. WBBQ shares were valued at only $47 per share by December of 2017, at $28.12 per share by December of 2019, and at $18.52 per share by December of 2020.

The plaintiffs allege that Argent's valuation process was flawed. In particular, the plaintiffs allege that Argent inappropriately relied on financial projections from the Seller Defendants, who had a personal stake in inflating them, and that Argent failed to anticipate foreseeable financial headwinds in the form of rising labor and property costs. The plaintiffs also allege that the WBBQ shares were overvalued because the Seller Defendants had warrants allowing them to generate more shares, thereby diluting the value of existing ones. And the plaintiffs allege that the Seller Loan's higher interest rate made no sense, as those loans were guaranteed by WBBQ.

Lloyd filed this action on May 20, 2022, bringing claims on behalf of a putative class of other Plan participants for various breaches of fiduciary duty and other violations of ERISA. The case was transferred to this Court on August 17. On September 1, the FAC was filed, adding Jenkins as a plaintiff. **[*4]** On October 3, the defendants moved to send the case to arbitration or, in the alternative, dismiss it for lack of subject matter jurisdiction. The motion became fully submitted on November 16.

## Discussion

I. Standing

For an Article III court to hear a case, the plaintiff must have standing. *TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021)*. To meet Article III's standing requirements, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Melito v. Experian Marketing Solutions, Inc., 923 F.3d 85, 92 (2d Cir. 2019)* (quoting *Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*). The injury-in-fact requirement may be satisfied by "traditional tangible harms" such as "physical and monetary harms." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 63 (2d Cir. 2021)*.

The defendants have moved to dismiss the complaint for lack of standing, contending that the plaintiffs have not alleged any facts to suggest an injury. The defendants argue that the price of WBBQ's shares dropped immediately after purchase, not because those shares were overvalued, but simply because the ESOP took out debt to purchase them. The defendants explain that the value of the shares will increase as the debt is paid off, and that the equity value of the ESOP therefore did not diminish as an immediate result of the purchase. The **[*5]** defendants point out that, as alleged in the FAC, the ESOP borrowed around $94 million and spent $4.8 million of its own money to purchase shares that, afterward, were valued at $28.8 million. The defendants argue that the transaction therefore resulted in a profit to the plaintiffs, not a loss, and that the plaintiffs have therefore suffered no injury.

The defendants' argument is not appropriate at this stage of proceedings. When considering a Rule 12(b)(1) motion on the pleadings, a district court must "accept as true all material factual allegations of the complaint and draw all reasonable inferences of favor of the plaintiff." Lacewell v. Office of Comptroller of Currency, 999 F.3d 130, 140 (2d Cir. 2021) (citation omitted). The plaintiffs allege that WBBQ's shares were overvalued when purchased, and that this harmed their financial interest in the ESOP. This kind of traditional monetary harm is sufficient to support Article III standing. To the extent the defendants contest these allegations of damages, their argument goes to the merits of the plaintiffs' claims, which must be assumed for the purposes of standing. See SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020); Dubuisson v. Stonebridge Life Ins. Co., 887 F.3d 567, 574 (2018) ("we must avoid conflating the requirement for an injury in fact with the validity of a plaintiff's claim" (citation omitted)).

The defendants cite to two decisions **[*6]** in which a lawsuit over an ERISA plan's leveraged purchase of company stock was dismissed for lack of standing. Plutzer v. Bankers Trust Co., 21CV03632 (MKV), 2022 U.S. Dist. LEXIS 34712, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022); Lee v. Argent Trust Co., 19CV00156, 2019 U.S. Dist. LEXIS 132066, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019). These cases are easily distinguished. In both cases, the only damage alleged was the decline in the stock's value immediately after the plan took on debt to purchase it. Plutzer, 2022 U.S. Dist. LEXIS 34712, 2022 WL 596356, at *6; Lee, 2019 U.S. Dist. LEXIS 132066, 2019 WL 3729721 at *3. Here, by contrast, the FAC pleads a number of other facts to support its allegation of damages. For example, the plaintiffs allege that the purchase price of WBBQ stock was greater than its market price was even before it took on the debt, and that the Seller Loan was offered at an unreasonably high interest rate. Additionally, the plaintiffs allege not only that WBBQ's share price dropped immediately after the ESOP's purchase, but that it continued to decline in subsequent years due to cost increases and other factors that were foreseeable at the time. In other words, even if the equity value of the ESOP increased immediately after purchasing the WBBQ shares, the subsequent decline in value suggests that the purchase was still ultimately harmful to the ESOP, and therefore to the plaintiffs.

## II. Arbitration

When considering a motion to compel arbitration, a court must first decide whether the Federal Arbitration Act ("FAA") requires **[*7]** enforcement of the relevant arbitration provision. See New Prime Inc. v. Oliveira, 139 S. Ct. 532, 537, 202 L. Ed. 2d 536 (2019); 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements," requiring courts "rigorously to enforce arbitration agreements according to their terms." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018) (citation omitted). An arbitration clause may not be enforced, however, if it eliminates "a party's right to pursue statutory remedies" or "forbid[s] the assertion of certain statutory rights." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 236, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (citation omitted). "[T]he FAA does not require courts to enforce . . . waivers of substantive rights and remedies." Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1919, 213 L. Ed. 2d 179 (2022). "An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed." Id.

The WBBQ Plan states that any person who is eligible to participate in the Plan, receives a benefit under the Plan, or files a claim is subject to the Plan's arbitration provision. The Plan's arbitration provision requires individual arbitration of any covered claim. The Plan states that such arbitration cannot provide "any remedy which has the purpose or effect of providing additional benefits or monetary relief to any other Employee, Participant, or Beneficiary other than the Claimant." Additionally, any equitable **[*8]** relief granted in

arbitration "is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant." The Plan states that these requirements are a "material and non-severable term of the Arbitration Procedure," and that if they are found "unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects."

The plaintiffs do not dispute that ERISA claims may be subject to otherwise valid binding arbitration clauses. See *Bird v. Shearson Lehman/Am. Express, Inc., 926 F.2d 116, 122 (2d Cir. 1991)*. Nevertheless, the plaintiffs argue that the arbitration clause in the WBBQ Plan is not enforceable because it prohibits claimants from asserting certain statutory rights, and from seeking certain statutory remedies. In particular, the plaintiffs argue that the Plan's limitations on equitable relief preclude them from seeking certain forms of equitable relief authorized by ERISA, including "removal of [a] fiduciary." *29 U.S.C. § 1109(a)*. The plaintiffs also point to the Plan's limitations on damages remedies, which only allow damages to compensate an individual claimant. By contrast, ERISA allows claimants to bring representative actions, seeking relief on behalf of the plan as **[*9]** a whole. See *Coan v. Kaufman, 457 F.3d 250, 257 (2d Cir. 2006)* (citing *29 U.S.C. § 1132(a)(2)*).

The plaintiffs are correct; the Plan's arbitration clause may not be enforced. The Plan's arbitration procedures prohibit representative actions seeking relief on behalf of a plan even though ERISA expressly provides for such actions. Id. Additionally, the Plan prohibits arbitral remedies with "the purpose or effect of providing additional benefits or monetary relief" to other claimants. This provision imposes a limitation on relief that ERISA does not contain, and precludes remedies that ERISA expressly authorizes, such as the removal of a fiduciary. See *29 U.S.C. § 1109(a)*.

The Seventh Circuit recently declined to enforce an arbitration provision in an ERISA plan with a limitation on equitable relief nearly identical to the provision at issue here. *Smith v. Bd. Of Directors of Triad Mfr., Inc., 13 F.4th 613 (7th Cir. 2021)*. That plan, like the WBBQ Plan, contained a provision prohibiting arbitral relief that had "the purpose or effect of providing additional benefits or monetary or other relief to any eligible Employee, Participant or Beneficiary other than the Claimant." *Id. at 621*. The Seventh Circuit explained that this provision was inconsistent with "[r]emoval of a fiduciary -- a remedy expressly contemplated by *§ 1109(a)*." Id. Accordingly, the court found that the **[*10]** terms of the arbitration provision "cannot be reconciled" with ERISA. Id. And because that limitation, like the one at issue here, was non-severable, the court declined to compel arbitration of any ERISA claims. *Id. at 622*.

The Second Circuit has also expressed skepticism of arbitration provisions requiring strictly individualized arbitration of ERISA claims. In *Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173 (2d Cir. 2021)*, the Second Circuit explained that its precedents permitted claims to be brought on behalf of an ERISA plan in a representative capacity, accompanied by procedural safeguards to ensure that the plaintiff was an adequate representative. *Id. at 184* (citing *Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006)*). The requirement to arbitrate claims individually, however, precluded such actions because it did not provide for the relevant procedural safeguards. Id. Accordingly, the court found that an arbitration clause requiring individualized arbitration of all employment claims would likely be unenforceable as applied to ERISA claims. *Id. at 185*.

Each of these cases makes clear that the WBBQ Plan arbitration provision's limitation on arbitral relief is unenforceable. The Plan requires individualized relief, thereby preventing claimants from seeking remedies provided to them by statute. See *29 U.S.C. § 1109(a)*; *Smith, 13 F.4th at 621-22*.

The defendants argue **[*11]** that *Smith* was wrongly decided, because even if the arbitration provision at issue prevented the plaintiff from seeking removal of a breaching fiduciary, it does not prevent the Secretary of Labor from pursuing that relief. See *29 U.S.C. § 1132(a)(2)*. The defendants cite to *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)*, which held that the AEDA did not prohibit compulsory arbitration of age discrimination claims, in part because "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Id. at 32*. But the Court also explained that the arbitration agreements at issue in that case left arbitrators with "power to fashion equitable relief," and that the applicable arbitration rules did "not restrict the types of relief an arbitrator may award." Id. Indeed, the rules even "provide[d] for collective proceedings." Id.

The arbitration provisions at issue here, by contrast, strictly prohibit collective proceedings, and sharply limit equitable relief. And whereas *Gilmer* found that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration," *id. at 26*, the arbitration provisions here conflict with explicit statutory rights and remedies. See *29 U.S.C. §§ 1109(a)*, *1132(a)(2)*. Nor are these restrictions immaterial simply because the **[*12]** Secretary of Labor can bring his own action. The relevant inquiry when determining the enforceability of the arbitration clause is whether it limits "a party's right to pursue statutory remedies." *Am. Express Co., 570 U.S. at 236* (emphasis modified).

The defendants also argue that ERISA's provision of representative actions merely provides a procedure that an arbitration clause can waive, not a substantive right. The defendants therefore argue that ERISA does not prohibit individualized arbitration, even when that arbitration requires procedures inconsistent with a representative action. But the Second Circuit's opinion in *Cooper* indicates that the ability to bring a representative action is a "statutory right" that an arbitration agreement cannot override. See *Cooper, 990 F.3d at 184* (quoting *Am. Express Co., 570 U.S. at 236*).

The WBBQ Plan's arbitration provision prevents a claimant from asserting rights and pursuing remedies that ERISA expressly provides. This limitation cannot be enforced. And because the limitation is non-severable from the rest of the Plan's arbitration procedures, those arbitration procedures as a whole cannot be enforced. The defendants' motion to compel arbitration is therefore denied.[1]

## Conclusion

The defendants' October 3, 2022 motion to compel arbitration **[*13]** and stay the case or, in the alternative, dismiss for lack of subject matter jurisdiction is denied,

Dated: New York, New York

December 6, 2022

/s/ Denise Cote

DENISE COTE

United States District Judge

---

[1] Because the motion to compel arbitration is denied regardless, the plaintiffs' argument that they did not receive adequate notice of the Plan's arbitration provisions need not be considered.

**End of Document**