# Morgan Stanley

## Morgan Stanley Compensation Incentive Plan
### Wealth Management Financial Advisor/Private Wealth Advisor Awards

### 2017 DISCRETIONARY RETENTION AWARDS
### MSCIP AWARD SUMMARY DESCRIPTION

The following is an abbreviated general description of the terms and conditions of 2017 awards under the Morgan Stanley Compensation Incentive Plan ("*MSCIP*"). This summary does not address all 2017 MSCIP award features. Your 2017 Award Certificate provides a full explanation of the terms and conditions of your 2017 MSCIP award, which may differ from the description in this summary. Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in your 2017 Award Certificate. If there is any conflict between the terms of this summary and those of your 2017 Award Certificate, the latter will control. You will also be provided with a tax supplement that contains important information about your award.

**IF YOU ARE A NON-U.S. BASED EMPLOYEE, PLEASE REFER TO YOUR 2017 INTERNATIONAL SUPPLEMENT FOR OTHER RELEVANT TERMS OF YOUR AWARD**

| | |
|---|---|
| **Earning Award** | You have no right to your 2017 MSCIP award until it is "earned." Generally, to earn your award, you must (1) remain in continuous Employment through the Scheduled Vesting Date, (2) even if your award is vested, not engage in any activity that constitutes Prohibited Activity and (3) satisfy any obligations you owe to the Firm. The vesting requirements and Prohibited Activities are summarized below, and set forth in full in the 2017 Award Certificate that will be provided to you. |
| **Initial Value** | The initial value of your 2017 MSCIP award will be communicated to you independently. |
| **Account** | Your 2017 MSCIP award will be credited to a bookkeeping account in your name as of January 19, 2018. Pursuant to the section "Notional Allocation of Account" below, if a menu of notional investments is made available by Morgan Stanley, your account will be credited (or debited) with notional returns on the notional investments to which your account is allocated. This summary uses the term "*Applicable Account Value*" to refer to your 2017 MSCIP award and if applicable, any notional return (positive or negative) thereon. |
| **Notional Allocation of Account** | You may be permitted to notionally allocate your account among a menu of notional investments selected by Morgan Stanley in its sole discretion. If such allocation is made available, the notional value of your account will track the performance of the referenced funds underlying the notional investments that you select and any such allocation (and any subsequent reallocations, if applicable) will be subject to the rules and notional allocation requirements of your 2017 MSCIP award as in effect from time to time. |
| | If applicable, the value of your account is subject at all times to risk based upon the performance of the notional investments to which your account is allocated. If the value of the notional investments to which your account is allocated decreases, the value of your account may be lower than your original award amounts. The Firm may provide you with a description of the referenced funds and their historical returns, as applicable, but this is, of course, no guide or representation as to their future performance. |
| | The performance of your notional investments, if any, and the value of your account, will be impacted by all of the fees and costs of the referenced funds underlying your notional investments, including fees which the funds may pay to the Firm for services the Firm provides to the referenced funds. |

\

1

|  |  |
|---|---|
|  | Notwithstanding the foregoing, the notional allocation of your account will be at the sole discretion of Morgan Stanley. |
| **Scheduled Vesting Date** | Generally, your Applicable Account Value will vest on **January 27, 2024** ("*Scheduled Vesting Date*").  Except as otherwise provided in your Award Certificate, your Applicable Account Value will vest only if you remain in continuous Employment through the Scheduled Vesting Date. |
| **Scheduled Distribution Date** | Generally, the Firm will pay you your Applicable Account Value, to the extent vested, in cash (minus applicable tax and other withholding liabilities) on **January 27, 2024** ("*Scheduled Distribution Date*").  Until payment, your award constitutes a contingent and unsecured promise of the Firm to pay you your vested Applicable Account Value on the Scheduled Distribution Date.  Notwithstanding the foregoing, subject to the "Timing of Payment" provision below, your Applicable Account Value may be paid following the Scheduled Distribution Date on the next administratively practicable payroll date. |
| **Termination of Employment** | If your Employment terminates other than for death, Disability, Retirement or Full Career Retirement (as applicable), involuntary termination not involving any Prohibited Activity, or Governmental Service Termination, your unvested Applicable Account Value will be canceled immediately. |
|  | The special provisions that apply if your Employment terminates for death, Disability, Retirement or Full Career Retirement (as applicable), involuntary termination not involving any Prohibited Activity, or Governmental Service Termination are described below. |
| **Death** | If you die while Employed, the unvested portion of your Applicable Account Value will vest.  Your Applicable Account Value will be paid to your beneficiary or estate upon your death, *provided* that your estate or beneficiary notifies the Firm of your death within 60 days following your death. |
|  | If you die after your termination of Employment but prior to the Scheduled Distribution Date, the vested portion of your Applicable Account Value that you held as of the date of your death will be paid to your beneficiary or estate upon your death, *provided* that your estate or beneficiary notifies the Firm of your death within 60 days following your death. |
| **Disability** | If your Employment terminates due to Disability, then, subject to the cancellation provisions described below, your unvested Applicable Account Value will vest on your termination date and your Applicable Account Value will be paid on the Scheduled Distribution Date.  Vesting of your Applicable Account Value upon, and distribution of your Applicable Account Value following, Disability is conditioned on your not engaging in any Prohibited Activity. |
|  | "*Disability*" is defined as a medically determinable physical or mental incapacity which is reasonably expected to be of long-term duration or result in death.  The determination of the Firm shall be conclusive on all parties as to whether you are disabled. |
| **Retirement and Full Career Retirement** | If your Employment terminates as a result of your Retirement or Full Career Retirement (as applicable), then, subject to the cancellation provisions described below, your unvested Applicable Account Value will vest upon your termination date and your Applicable Account Value will be paid on the Scheduled Distribution Date, *provided that* if you satisfy the conditions for a Retirement or Full Career Retirement (as applicable) upon your "Separation from Service" (as defined in Section 409A), 50% of your vested Applicable Account Value will be paid, and cancellation provisions will lift, on the first anniversary of your "Separation from Service" and the remaining vested portion of your Applicable Account Value will be paid, and cancellation provisions will lift, on the second anniversary of your "Separation from Service", subject to earlier |

payment on the Scheduled Distribution Date. Vesting of your Applicable Account Value upon, and distribution of your Applicable Account Value following, Retirement or Full Career Retirement (as applicable) is conditioned on your not engaging in any Prohibited Activity.

I. Financial Advisors

If you are a Financial Advisor, your termination will be treated as a "***Retirement***" if your termination is other than as a result of your death or Governmental Service Termination and your Employment terminates on or after the date:

a) You have attained age 65;
b) You qualify for the payment of any retirement benefit under Section 5 or Section 8 of the Morgan Stanley Employee Retirement Plan (as in effect on December 31, 2016), whether or not you are a participant therein; or
c) Otherwise specified by written agreement between the Firm and you (as in effect on December 31, 2016, or if you were hired by the Firm after such date, as in effect 30 days following your commencement of employment).

II. Private Wealth Management Private Wealth Advisors ("***PWAs***")

If you are a PWA, your termination will be treated as a "***Full Career Retirement***" if your termination is other than a result of your death or Governmental Service Termination and upon your termination you meet any of the following criteria:

a) Age 50 and 12 years as a Managing Director or comparable officer; or
b) Age 50 and 15 years as an officer; or
c) Age 55 with 5 years of service and age plus years of service equals or exceeds 65; or
d) 20 years with the Firm.

(Credit towards Full Career Retirement will be given for prior service with certain entities as described in the 2017 Award Certificate.)

| | |
|---|---|
| **Involuntary Termination not Involving Any Prohibited Activity** | If the Firm terminates your employment under circumstances not involving any Prohibited Activity, then, *provided* that you sign an agreement and release satisfactory to the Firm, your unvested Applicable Account Value will vest on the date of your termination. Subject to the cancellation provisions described below, your Applicable Account Value will be paid, and cancellation provisions will lift, on the Scheduled Distribution Date. |
| **Governmental Service** | If your Employment terminates in a Governmental Service Termination and not involving any Prohibited Activity, then, *provided* that you sign an agreement satisfactory to the Firm relating to your repayment obligations summarized below, your unvested Applicable Account Value will vest, and your Applicable Account Value will be paid, on the date of your Governmental Service Termination. |
| | If your Employment terminates other than in a Governmental Service Termination and not involving any Prohibited Activity and, following your termination of Employment, you accept employment with a Governmental Employer, then, *provided* that you sign an agreement satisfactory to the Firm relating to your repayment obligations summarized below, your outstanding vested Applicable Account Value will be paid upon your commencement of such employment, *provided* you present the Firm with satisfactory evidence that the divestiture of your continued interest in your Applicable Account Value is reasonably necessary to avoid the violation of U.S. federal, state or local or foreign ethics law or conflicts of interest law applicable to you at such Governmental Employer. |
| | If your Applicable Account Value is paid due to this provision and you engage in any Prohibited |

3

Activity within the period of time that would have resulted in cancellation of all or a portion of your Applicable Account Value, you will be required to pay to Morgan Stanley the amount distributed to you in accordance with this provision plus interest on such amount.

"*Governmental Service Termination*" means the termination of your Employment due to your commencement of employment at a Governmental Employer; *provided* that you have presented the Firm with satisfactory evidence demonstrating that as a result of such new employment, the divestiture of your continued interest in your Applicable Account Value is reasonably necessary to avoid the violation of U.S. federal, state or local or foreign ethics law or conflicts of interest law applicable to you at such Governmental Employer.

**Specified Employees**  If Morgan Stanley considers you to be one of its "specified employees" as defined in Section 409A of the Internal Revenue Code ("*Section 409A*") at the time of your Separation from Service other than in the event of your employment at a Governmental Employer under circumstances described above, payment of your Applicable Account Value that otherwise would occur upon your Separation from Service will be delayed until the first business day following the date that is six months after your Separation from Service (subject to earlier payment in the event of your death or your employment at a Governmental Employer under the circumstances described above).

**Cancellation**  Prior to vesting, awards are cancelable for termination of Employment, other than due to death, Disability, Retirement, involuntary termination not involving any Prohibited Activity, or Governmental Service Termination.

The Firm may retain custody of your Applicable Account Value following the Scheduled Distribution Date pending any investigation or other review that impacts the determination as to whether your Applicable Account Value is cancellable under the circumstances set forth herein.

Your entire unpaid vested and unvested Applicable Account Value is also subject to cancellation in full, or in the case of a Cancellation Clawback Event described in clause (c) below, in full or in part, subject to applicable law, until the Scheduled Distribution Date if you engage in any Prohibited Activity, as defined below.

"*Prohibited Activity*" means you (1) without the written consent of the Firm, at any time prior to the Scheduled Distribution Date, (i) use for the benefit of any person or entity other than the Firm, or disclose to any third party Non-Public, Privileged or Confidential Information or Trade Secrets, (ii) remove Non-Public, Privileged or Confidential Information or Trade Secrets from the premises of the Firm in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, the Firm, (iii) engage in any other conduct in violation of any contractual or legal obligations to the Firm or (iv) following termination of Employment, fail or refuse to cooperate with or assist the Firm in connection with any investigation, regulatory matter, lawsuit or arbitration in which the Firm is a subject, target or party and as to which you may have pertinent information; or (2) (i) are terminated for Cause, or (ii) engage in conduct constituting Cause (either during or following Employment and whether or not your Employment has been terminated as of the Scheduled Distribution Date), or (iii) following termination of your Employment, the Firm determines that you could have been terminated for Cause; or (3) without the written consent of the Firm, before the earlier to occur of one year after your termination of Employment due to your resignation and the Scheduled Distribution Date, enter into an employment or consulting relationship with a firm offering Competitive Services to work, within one hundred (100) miles from any office to which you were assigned within the last three years preceding termination, in any capacity in a retail branch or in a retail sales or product representative position; or (4) without the written consent of the Firm, before the earlier to occur of two years after termination and the Scheduled

4

Distribution Date, solicit or attempt to solicit, directly or indirectly, for a firm engaging in Competitive Services (with or without the use or disclosure of Non-Public, Privileged or Confidential Information or Trade Secrets) (i) any of the Firm's customers who were serviced by you while employed by the Firm; or (ii) any of the Firm's customers whose names or accounts became known to you while employed by the Firm and who live or work within a radius of one hundred (100) miles from any office to which you were assigned within the last three years preceding termination; or (5) without the written consent of the Firm, before the earlier to occur of three years after termination and the Scheduled Distribution Date, solicit or attempt to solicit, directly or indirectly, any Firm employee for employment or other business relationship with any other firm engaging in Competitive Services (if the employee became known to you as a result of being employed by the Firm); or (6) without the written consent of the Firm, make Defamatory or Disparaging Comments or Unauthorized Disclosures about the Firm; or (7) engage in a Clawback Cancellation Event.

"*Competitive Services*" means services with respect to any line of business in which the Firm is engaged, including, but not limited to: securities, commodities, financial futures, insurance, tax advantaged investments and mutual funds.

"*Cause*" means:

(x)   any act or omission which constitutes a breach by you of your obligations to the Firm including, without limitation, (i) your failure to comply with any notice or non-solicitation restrictions that may be applicable to you or (ii) your failure to comply with the Firm's compliance, ethics or risk management standards, or your failure or refusal to perform satisfactorily any duties reasonably required of you; or

(y)   your commission of any dishonest or fraudulent act, or any other act or omission, which has caused or may reasonably be expected to cause injury to the interest or business reputation of the Firm; or

(z)   a violation of any securities, commodities or banking laws, any rules or regulations issued pursuant to such laws, or rules and regulations of any securities or commodities exchange or association of which the Firm is a member or of any policy of the Firm relating to compliance with any of the foregoing;

*provided,* that an act or omission shall constitute "Cause" for purposes of this definition if the Firm determines, in its sole discretion, that such action or omission is described in clause (c) of Clawback Cancellation Event below and is deliberate, intentional or willful.

You will be deemed to have made "*Defamatory or Disparaging Comments*" about the Firm if, at any time, you make, publish, or issue, or cause to be made, published or issued, in any medium whatsoever to any person or entity external to the Firm, any derogatory, defamatory or disparaging statement regarding the Firm, its businesses or strategic plans, products, practices, policies, personnel or any other Firm matter.  Nothing contained herein is intended to prevent you from testifying truthfully or making truthful statements or submissions in litigation or other legal, administrative or regulatory proceedings or internal investigations.

You will be deemed to have made "*Unauthorized Disclosures*" about the Firm if, while Employed or following termination of Employment, without having first received written authorization from the Firm, you disclose, or participate in the disclosure of or allow disclosure of, any information about the Firm or its present or former clients, customers, executives, officers, directors, or other employees or Board members, or its business or operations, or legal matters involving the Firm and resolution or settlement thereof, or any aspects of your Employment with the Firm or termination of such Employment (which, for the avoidance of doubt, does not prevent you from confirming your employment status with the Firm), whether

written, oral or in electronic format, to any reporter, author, producer or similar person or entity or to any general public media in any form (including, without limitation, books, articles or writings of any other kind, as well as film, videotape, television or other broadcasts, audio tape, electronic/Internet or blog format or any other medium).

"*Clawback Cancellation Event*" means you take any action, or you fail to take any action (including with respect to direct supervisory responsibilities), where such action or omission:

(a)   causes a restatement of the Firm's consolidated financial results;

(b)   constitutes a violation by you of the Firm's Global Risk Management Principles, Policies and Standards (where prior authorization and approval of appropriate senior management was not obtained) whether such action results in a favorable or unfavorable impact to the Firm's consolidated financial results; or

(c)   causes a loss in the current year on a trade or transaction originating in the current year or in any prior year for which revenue was recognized and which was a factor in your award determination, and violated internal control policies that resulted from your:

   (i)   violation of business unit, product or desk specific risk parameters;
   (ii)  use of an incorrect valuation model, method, or inputs for transactions subject to the "STAR" approval process;
   (iii) failure to perform appropriate due diligence prior to a trade or transaction or failure to provide critical information known at the time of the transaction that might negatively affect the valuation of the transaction; or
   (iv)  failure to timely monitor or escalate to management a loss position pursuant to applicable policies and procedures.

In the event that the Firm determines, in its sole discretion, that your action or omission is as described in clause (c) and you do not engage in any other cancellation or clawback event described herein, the award will be reduced by a fraction, the numerator of which is the amount of the pre-tax loss, and the denominator of which is the total revenue originally recognized by the Firm which was a factor in your award determination.

| | |
|---|---|
| **Covenants and Certification** | In the event you fail to acknowledge, within the time and in the manner prescribed by the Firm, a notice and non-solicitation or other restrictive covenant agreement required of you by the Firm, the Firm has a right to cancel your award. |
| | You may be required to provide Morgan Stanley with a written certification or other evidence that it deems appropriate, in its sole discretion, to confirm that no Prohibited Activity has occurred. If you fail to submit a timely certification or evidence, Morgan Stanley will cancel your award. |
| **Tax Withholding** | Vesting and payment of your Applicable Account Value, whether on the Scheduled Vesting Date or Scheduled Distribution Date or some other date, shall be subject to withholding of all required United States federal, state, local and foreign income and employment/payroll taxes (including Federal Insurance Contributions Act taxes). You authorize the Firm to withhold such taxes from any payroll or other payment or compensation owed to you, including by canceling or accelerating payment of a portion of your Applicable Account Value in an amount not to exceed such taxes imposed upon vesting or payment and any additional taxes imposed as a result of such cancellation or acceleration, subject to limitations imposed under Section 409A. |
| **Award Modification** | Morgan Stanley generally has the right to modify or amend the terms of your award without your consent. However, Morgan Stanley may not make a modification that would materially impair your rights in such award without your consent unless such modification is necessary or advisable (i) to comply with any law, regulation, ruling, judicial decision, accounting standard or similar |

6

|  |  |
|---|---|
| | pronouncement or (ii) to ensure that awards are not subject to federal, state or local income tax prior to payment. |
| **Timing of Payment (Section 409A Rule of Construction)** | With respect to any provision that provides for payment on a specified event or date, such payment will be considered to have been timely made as long as payment is made by December 31st of the year in which occurs the specified event or date or, if later, by the 15th day of the third calendar month following such specified event or date, or, in connection with any such payment due to death, to the extent permissible under Section 409A, by the end of the calendar year following the year of your death. |
| **U.S. Taxation** | In general, when your Applicable Account Value is paid, the amount of the payment will be taxed as ordinary income. FICA and Medicare tax apply at the time your Applicable Account Value is deemed to vest for tax purposes. Please refer to the tax supplement for a fuller discussion of these tax consequences. |
| **Non-U.S. Taxation** | Taxation on grant, vesting and payment depends on the tax laws and regulations in your jurisdiction. |
| **Governing Law** | New York Law. |

**By accepting this award, you acknowledge that you have received all 2017 deferred compensation to which you are entitled. Nothing in this summary or any correspondence related to this award should be construed as a guarantee of an MSCIP award or any particular level of compensation, bonus or benefits. Please note that the Firm does not commit to granting the award described in this summary in the future. These awards do not create a contract or guarantee of employment, or modify any agreement entered into by Morgan Stanley or any of its affiliates and you.**

**This program is not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders. Participants should not look to this program as a source of retirement income. This program is not subject to the Employee Retirement Income Security Act of 1974.**

**You are required to keep confidential all matters relating to MSCIP to the fullest extent permitted by law. The provisions of the Firm's Code of Conduct regarding Confidential and Proprietary Information shall cover all aspects of MSCIP.**

**Morgan Stanley does not render advice on tax and tax accounting matters.**