

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
**o.** 860.882.1681 **f.** 860.882.1682

**Mathew P. Jasinski**
*Licensed in CT, NY*
direct: 860.218.2725
mjasinski@motleyrice.com

www.motleyrice.com

*"I will stand for my client's rights.
I am a trial lawyer."*
–Ron Motley (1944–2013)

**VIA ECF**

September 20, 2023

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2204
New York, NY 10007

Re:    *Shafer v. Morgan Stanley, et al.*, No. 1:20-cv-11047 (PGG) (S.D.N.Y.)

Dear Judge Gardephe,

In response to the Court's Order [ECF 82], Plaintiffs respectfully submit this letter in support of their position that Morgan Stanley's deferred compensation program (referred to as the "FA Deferred Compensation Program" in Plaintiffs' Amended Complaint) "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" under ERISA § 3(2), 29 U.S.C. § 1002(2)(A), because financial advisors receive their deferred compensation after their employment with Morgan Stanley in several situations. The cases identified by the Court are distinguishable because they involved "bonus plans," which are exempt from ERISA's requirements unless the bonus payments "are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c). As described below, this case does not involve a "bonus plan," and the "systematically deferred" test in the regulation does not apply.

**Morgan Stanley requires FAs to defer a portion of their non-discretionary income**. The compensation structure for Morgan Stanley Financial Advisors ("FAs") is explained in a document titled "Financial Advisor/Private Wealth Advisor Compensation Plan" (the "FA Comp. Plan"). *See, e.g.*, 2018 FA Comp. Plan [ECF 83-2] at 3 of 31. As a base salary, FAs receive a minimum wage. In 44 states, this amounts to $1,972/month, which works out to $11.32/hour. *Id*. In practice, FAs receive their compensation in the form of commissions, i.e., revenue generated on their clients' investment activity, which Morgan Stanley labels "incentive compensation."

Morgan Stanley calculates commissions by applying a specified percentage to the net revenue an FA generated. *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 2:11-cv-3121, 2013 WL 6255697, at *1 (D.N.J. Dec. 4, 2013). Specifically, the revenue generated is multiplied by a percentage, called a "Credit Rate," which is in a fixed schedule, called a "Grid," to determine how many "Total Credits" the FA earns as commissions. 2018 FA Comp. Plan [ECF 83-2] at 5-6 of 31. Commission compensation (the "Total Credits") is then allocated between "Deferred Compensation" and "Cash Compensation." As stated in section 1.2.3 entitled "Cash Compensation," "Cash Credits" are the cash component of the commissions FAs receive each



Page 2

month. *Id*. at 6 of 41. Cash Credits are first applied against the FA's salary. *Id*. In other words, if an FA has even minimal success—such that his Cash Credits exceed his minimum-wage salary—then the FA's compensation will be 100% commission-based.

An FA's "Deferred Credits" are described in section 1.22 titled "Deferred Compensation." *Id*. at 5 of 41. Morgan Stanley automatically designates a percentage of an FA's Total Credits each month—the "Deferral Ratio"—as Deferred Credits. *Id*. at 5-6 of 41. The Deferral Ratio is in a fixed schedule in the FA Compensation Plan and depends on the amount of revenue an FA generated over the previous twelve months. 2018 FA Comp. Plan at 5. The Deferral Ratio *requires* FAs to defer a portion of their Total Credits—i.e., commissions—starting with the first dollar of net revenue generated. *Id*. at 5-6 of 31. In this regard, an FA's deferred compensation is not discretionary; it is fixed by the FA Compensation Plan as a core part of an FA's compensation. *Id*. The Deferral Ratios that applied in 2018 are shown in paragraph 30 of the Amended Complaint.

Morgan Stanley automatically allocates 75% of an FA's Deferred Compensation to the Morgan Stanley Compensation Incentive Plan ("MSCIP") as a "cash-based deferred compensation award scheduled to be paid approximately six years after the grant date."[1] *Id*. at 6 of 31. The stated purpose of using the MSCIP is "to facilitate the allocation of a portion of your above-base compensation (the minimal salary) . . . to the notional investment opportunities afforded by the Plan." 2017 Award Certificate [ECF 83-5] at 4.[2]

Under the terms of the plan, Deferred Compensation vests immediately upon death, disability, retirement or involuntary termination. In these circumstances, an FA's Deferred Compensation vests when their employment with Morgan Stanley ends and is either paid immediately or upon termination of employment. Otherwise, an FA must be employed by Morgan Stanley on the Scheduled Vesting Date to receive Deferred Compensation prior to retirement. The apparent purpose of this vesting restriction is to punish FAs who leave Morgan Stanley to work for a competing business by causing them to forfeit their deferred compensation (a.k.a. "golden handcuffs").

**<u>The FA Deferred Compensation Program is an ERISA plan.</u>** Plaintiffs contend that Morgan Stanley's deferred compensation program is an "employee pension benefit plan" under ERISA. The statute defines the term "employee pension benefit plan" as:

> [A]ny plan, fund, or program ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or ***(ii) results in a deferral of income by employees for periods extending***

---

[1] The remaining 25% of an FA's deferred compensation is "in the form of a restricted stock unit ("RSU") award that is scheduled to convert to shares of Morgan Stanley common stock approximately four years after the grant date . . ." *Id*. at 5 of 31.

[2] Morgan Stanley labels the Award Certificates "Discretionary Retention Awards." 2017 Award Certificate [ECF 83-5] at 1, 3. Morgan Stanley appears to use these form documents for all employees that participate in the MSCIP, including executives that are not FAs, etc. It is not limited to FAs who have a unique Deferred Compensation plan. Thus, Morgan Stanley did not conform its form MSCIP documents to the FA Plan.



Page 3

> ***to the termination of covered employment or beyond***, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

ERISA § 3(2), 29 U.S.C. § 1002(2)(A) (emphasis added).

Subsections (i) and (ii) above "set out independent tests to determine whether a plan is protected by ERISA." *Pasternack v. Schrader*, 863 F.3d 162, 168 (2d Cir. 2017). Subsection (i) "considers the plan's primary purpose rather than its result." *Id.* at 169 (noting that subsection (i) applies "only to plans designed for the purpose of paying retirement income" (citations omitted)). In contrast, subsection (ii) is "an effects-based inquiry rather than one based on purpose." *Pasternack*, 863 F.3d at 170, n.5. Subsection (ii) applies here.

***First***, the FA Deferred Compensation Program results in "a deferral of income by employees," a phrase courts have interpreted to mean "deferred compensation." *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 625 (5th Cir. 2014). "Deferred compensation" is (1) "[p]ayment for work performed, to be paid in the future or when some future event occurs," and (2) "an employee's earnings that are taxed when received or distributed rather than when earned . . . ." BLACK'S LAW DICTIONARY (10th ed. 2014). In *Tolbert*, the Fifth Circuit found that the plan's provisions for "Voluntary Deferred Compensation and Mandatory Deferred Compensation" were within subsection (ii) because they "***plainly refer to income that is deferred***." 758 F.3d at 625 (emphasis added).

Likewise, the Sixth Circuit held that a plan which provided "deferred compensation" satisfied subsection (ii)'s "results in a deferral of income" requirement. *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435 (6th Cir. 2019) ("Because ERISA's definition of pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan." (citations omitted)). Here, section 1.2.2 of FA Compensation Plan is titled "Deferred Compensation," and requires FAs to defer a portion of their commissions for several years. Like the plans in *Tolbert* and *Wilson*, the FA Deferred Compensation Program "results in a deferral of income" under subsection (ii)—and is thus governed by ERISA.

***Second***, income is deferred under the FA Compensation Program "for periods extending to the termination of covered employment or beyond," namely, the end of an FA's employment. *Wilson*, 930 F.3d at 435. Critical to the analysis is the modifying phrase "results in" at the beginning of subsection (ii), which the Second Circuit has held "calls for an effects-based inquiry rather than one based on purpose." *Pasternack*, 863 F.3d at 170, n.5; *see also Tolbert*, 758 F.3d at 624 (explaining, in interpreting ERISA § 3(2)(A)(ii), that "[a] thing 'results' when it arises as an effect, issue, or outcome *from* some action, process or design" (internal quotation marks omitted)).

Importantly, ERISA does ***not*** require that income be deferred until the end of an employee's employment in every case. As the Fifth Circuit held in *Tolbert*, "[o]ur court has never held that, to fall within subsection (ii), a plan must be designed for the purpose of paying retirement or post-termination income." *Tolbert*, 758 F.3d at 623. The Sixth Circuit similarly held in *Wilson* that subsection (ii) "covers plans containing terms that have as an effect, issue, or outcome—



Page 4

even if not as a requirement—deferral of income by employees to periods extending to the termination of covered employment or beyond." *Wilson*, 930 F.3d at 435 (cleaned up). "[D]eferrals may occur for various 'periods,' and those periods may last up and and/or beyond termination." *Wilson*, 930 F.3d at 435; *see also Tolbert*, 758 F.3d at 622, 626 (ERISA applied to plan providing "'In-service' (i.e., during employment)" and post-termination distributions).

Here, Morgan Stanley FAs who end their employment because of disability, retirement, or an involuntary termination, ***still receive their deferred compensation after*** they stop working for Morgan Stanley. *See*, *e.g.*, Am. Compl. [ECF 58] at ¶¶ 42-45 (citing MSCIP Plan Doc. [ECF 83-5] at §§ 3, 4(c), and 16(g). Likewise, FAs who leave to work for the government receive their deferred compensation when their employment with Morgan Stanley ends. *Id.* at ¶ 43 (citing MSCIP Plan Doc. [ECF 83-5] at § 5). This is enough to trigger ERISA coverage under subsection (ii).

In *Tolbert*, RBC's deferred-compensation plan for financial advisors had "Mandatory Deferred Compensation" that was subject to a vesting schedule. But the deferred compensation vested immediately upon the FA's death or disability or if the FA was terminated without cause, and the FA's deferred compensation was distributed either "promptly upon death or disability" or over time if the termination was involuntary. *Tolbert*, 758 F.3d at 622. The Fifth Circuit concluded that these factors caused the RBC plan to "fit[] comfortably within the meaning of subsection (ii)." *Id.* at 626. The RBC plan was also found to be an ERISA-governed plan under subsection (ii) by the district court in *Paul v. RBC Capital Markets, LLC*, 2018 WL 784577, at *6 (W.D. Wash. Feb. 8, 2018), with the court relying on discovery showing that one-third of participants received deferred compensation after their employment ended. *Id.*

Similarly, the plan in *Wilson* allowed participants to receive their deferred compensation after their employment terminated, including due to disability. The Sixth Circuit held that subsection (ii) "does not mandate that 'all deferrals extend to the termination of employment' or that payments be 'systematically deferred' until termination. Thus, the Safelite Plan contemplates that deferral occurs 'for periods extending to the termination of covered employment or beyond' and fits within the meaning of subsection (ii)." *Wilson*, 930 F.3d at 437 (cleaned up); *see also id.* at 435 ("Subsection (ii) covers a wide array of plans and does not exclude plans that give participants the option to receive in-service distributions.").

**<u>The FA Deferred Compensation Program is not a bonus plan.</u>** A "commission" is not a "bonus." "A commission is a 'fee or percentage allowed to a sales representative or an agent for services rendered.'" *Wolfe v. Advance Ins. Co. of Kan.*, No. 07–1406–DWB, 2009 WL 2106138, at *8 (D. Kan. July 16, 2009) (quoting The American Heritage Dictionary (3d ed. 1992)). A bonus, on the other hand, is a "premium paid ***in addition to what is expected***; e.g., a payment by way of a division of a business's profits, given over and above normal compensation (year-end bonus.)." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). "Generally, a bonus plan's terms state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention." *Wilson*, 930 F.3d at 435-36 (6th Cir. 2019).

The cases identified in the Court's Order involved bonus plans, not plans that deferred



Page 5

current income. In *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574-75 (5th Cir. 1980), employees received discretionary bonuses in the form of royalty rights that were current, not deferred. In *Oatway v. American International Group, Inc.*, 325 F.3d 184, 189 (3d Cir. 2023), the stock options were discretionary and given "in addition to regular compensation," which is the opposite of this case. In *International Paper Co. v. Suwyn*, 978 F. Supp. 506, 509 (S.D.N.Y. 1997), the plan awarded grants of restricted stock and stock options that were designed to motivate a small select group of top executives and to align their interests with shareholders, not core compensation as in this case. Further, these grants were cancelled if the employee retired, whereas here, the Deferred Compensation vests immediately if an FA retires. *Pasciutti v. LiquidPiston, Inc*., 2021 WL 4502950, at **2-3 (D. Conn. Sept. 30, 2021), involved a stock option plan where options could be exercised immediately upon grant and, therefore, encouraged "employees to exercise their options before retirement." Finally, *In re Segovia*, 404 B.R. 896, 921 (N.D. Cal. 2009), aff'd, *Segovia v. Schoenmann*, 408 Fed. Appx. 61 (9th Cir. 2011), involved a stock option plan, the purpose of which was to motivate *key* employees to produce a superior return. The Morgan Stanley plan, in contrast, defers a portion of each FA's compensation, not just that of key employees or top performers. *See, e.g.*, 2018 FA Comp. Plan [ECF 83-2] at 5 of 31 (showing that FAs generating any level of revenue earn deferred compensation).

Because FAs' deferred compensation is not a "bonus," the regulation that excludes "bonus programs" from the scope of what ERISA § 3(2)(A) defines as an "employee benefit pension plan," 29 C.F.R. § 2510.3-2(c), does not apply. Accordingly, FAs' deferred compensation does not have to be "systematically deferred" until their employment ends for the FA Deferred Compensation Program to be covered by ERISA. *See, e.g.*, *Tolbert*, 758 F.3d at 626 (declining to apply the regulation's "systematically deferred" test because the RBC plan was "not among the 'specific plans' identified in § 2510.3-2(c)" to be carved out of ERISA's definition of an "employee pension benefit plan").

While a bonus may reward performance, ERISA's definition says nothing about whether a deferral of income incentivizes performance. Indeed, all compensation, including deferred compensation, incentivizes performance to some degree; that is why employers pay employees. The issue here is whether the income is "deferred," a point that the FA Compensation Plan makes clear and does so while distinguishing between an FA's deferred compensation and the potential bonuses the FA may earn. *Compare* 2018 FA Comp. Plan [ECF 83-2], § 1.2.2 titled "Deferred Compensation," at 4-5 of 31, *with* § 2.1 titled "Lending Growth Award Program," at 18 of 31, describing the "reward" that FAs receive from "expanding" a line of business compared to the previous year, with the award subject to a "bonus agreement."

For these reasons, Morgan Stanley's FA Compensation Plan constitutes an ERISA pension plan under subsection (ii) of ERISA § 3(2), 29 U.S.C. § 1002(2)(A).

Respectfully submitted,

 /s/
Mathew P. Jasinski

CC: Counsel of record (via ECF)