

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4061

T: +1 202 383 5300
F: +1 202 383 5414
omm.com

September 20, 2023

**VIA ECF**

Meaghan VerGow
D: +1 202 383 5504
mvergow@omm.com

Hon. Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Shafer v. Morgan Stanley*, Case No. 20-cv-11047 (PGG)—Defendants' Response to the Court's September 15, 2023 Order

Dear Judge Gardephe:

    We represent defendants ("Morgan Stanley") in the above matter. As requested by the Court, we submit this letter to address whether the at-issue compensation is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

    In purpose and effect, Morgan Stanley's deferred compensation program for financial advisors is not a retirement plan. Morgan Stanley issues to financial advisors awards of deferred compensation that are conditioned on the advisor remaining employed through a vesting date (four, six, or eight years, historically) and on the advisor continuing to engage in good conduct. The purposes of the awards are to motivate employee retention and good guardianship. The awards are paid if the advisor remains employed in good standing on the vesting date. If the advisor leaves Morgan Stanley's employment before vesting, however, the awards are generally cancelled. By design, the awards provide income *during* employment, not after it.

    To argue that ERISA nevertheless applies, the operative complaint focuses on the program's humanitarian exceptions to cancellation. If an employee dies, or becomes disabled, or retires in the ordinary course, for example, the awards can be paid after an advisor is no longer employed; from that, plaintiffs contend the entire program is transformed into a retirement plan. But this argument has been repeatedly rejected by other courts, and should be rejected here. "Under the statutory definition, the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980); *see also, e.g.*, *Oatway v. A.I.G., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) ("post-retirement payments [that a]re only incidental to the goal of providing current compensation" do not subject a plan to ERISA). These awards are designed to provide—and do provide—in-employment compensation, not retirement income. The limited exceptions to cancellation that avoid harsh consequences to employees who leave due to illness, age, death, or layoff do not negate the program's actual non-retirement purposes.

    As Morgan Stanley has separately explained, plaintiffs agreed to arbitrate these claims and the arbitrator could provide a complete remedy on plaintiffs' request for benefits, if the

claims had merit. ECF Nos. 65, 69. But the claims are indeed meritless, as an arbitration panel correctly found this week after a multi-day hearing on the merits, *see* Ex. A. Plaintiffs cannot claim their unvested, cancelled deferred compensation is an unpaid ERISA benefit, because ERISA has no application to this program at all.

I. **Background**[1]

Morgan Stanley financial advisors receive a base salary and may also be awarded incentive compensation based on the revenue they generate and their length of service. *See* Pls.' Ex. B, 2018 FA Compensation Plan, ECF No. 83-2, at 2-4; Pls.' Ex. C, 2015 FA Compensation Plan, ECF No. 83-3, at 2-4. Most of the incentive compensation is paid in cash on a monthly basis. *See* 2018 Compensation Plan at 4-7; 2015 Compensation Plan at 4-6. A fraction of the incentive compensation—between 1.5% and 15.5%—is awarded as deferred compensation. *See, e.g.*, 2015 Compensation Plan at 4. This case concerns those deferred compensation awards.

The awards are issued under two plans, the Morgan Stanley Compensation Incentive Plan ("MSCIP") (cash awards) and the Morgan Stanley Equity Incentive Compensation Plan ("EICP") (equity awards). Am. Compl., ECF No. 58, ¶ 2. The principal purposes of the awards are to "reward [advisors] for [their] continued Employment and service to the Firm in the future and [their] compliance with the Firm's policies (including the Code of Conduct)"—that is, to promote retention and good conduct. Pls.' Ex. E, 2017 Award Certificate, ECF No. 83-5, at 2; *accord* Pls.' Ex. F, 2015 Award Certificate, ECF No. 83-6, at 2.[2]

To facilitate those purposes, the awards are contingent: they are payable only if the advisor remains employed with the firm through the vesting date for the award and continues to abide by the firm's standards of good conduct. *See, e.g.*, 2018 FA Compensation Plan at 5 ("Deferred compensation awards are contingent upon the Advisor remaining employed through the grant and vesting date of the award."); 2017 Award Certificate at 2 ("[Y]ou will earn your 2017 award only if you (1) remain in continuous Employment through the Scheduled Vesting Date (subject to limited exceptions set forth below), [and] (2) do not engage in any Prohibited Activity…."). Equity awards vest four years after the award grant, and cash awards have vested eight (2015) or six (2016–present) years after grant. *See, e.g.*, 2015 FA Compensation Plan at 4; 2018 FA Compensation Plan at 5. A financial advisor can thus begin receiving payment on these awards as soon as four years into their employment with Morgan Stanley, and every year thereafter until they retire. But if they leave Morgan Stanley, any unvested awards are cancelled—because the program's purpose is to induce advisors to stay.

---

[1] These authorities are incorporated into the Complaint, and the Court in any event may consider extrinsic evidence in deciding Morgan Stanley's motion to compel. *See Henricks v. Flywheel Sports, Inc.*, 2020 WL 1285453, at *2 (S.D.N.Y. Mar. 18, 2020) (Gardephe, J.).

[2] These purposes are echoed in the plan documents that support these and other deferred compensation awards at Morgan Stanley. *See* Pls.' Ex. D, MSCIP Plan Document, ECF No. 83-4, § 1 ("The [MSCIP] is intended to attract, retain and motivate employees and to compensate them for their contributions to the Firm."); Pls.' Ex. H, EICP Plan Document, ECF No. 83-8, § 1 (discussing purpose, *inter alia*, "to attract, retain and motivate employees").

`

     The award terms include narrow exceptions to cancellation in circumstances that do not frustrate the purposes of the award.  If an advisor dies, becomes permanently disabled, is involuntarily terminated without cause, enters government service, or retires, the awards are not cancelled.  *See, e.g.*, 2015 Award Certificate § 2(a).  But these limited exceptions are just that—exceptions.  The central feature of the awards is that the advisor must be employed to earn payment on the award, because that is the primary reason the award exists.

## II. Morgan Stanley's Deferred Compensation Awards To Financial Advisors Are Not Subject To ERISA

     Morgan Stanley's awards of deferred compensation are not an ERISA pension plan: their purpose is to encourage employees to remain employed in good standing with the firm; and the awards are paid primarily to current employees.  Courts in this district and elsewhere have rejected the argument, advanced here, that incidental payments after the termination of employment implicate ERISA.  The statutory definition of a pension plan compels the conclusion that these awards are not ERISA-governed, and a federal regulation leads to the same result, for essentially the same reasons: the purpose of these awards is not to provide retirement income, and payments on the awards are not systematically deferred until after termination.

### A. The statutory definition does not reach programs, like Morgan Stanley's, that are primarily intended to and primarily do pay current employees.

     An "employee pension benefit plan" is a plan "that by its express terms or as a result of surrounding circumstances … (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2)(A).  These awards do not fit this definition.

     Plaintiffs do not argue that Morgan Stanley's plan satisfies subsection (i).  *See* Am. Compl. ¶ 59.  "The words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances."  *Murphy*, 611 F.2d at 575.  Morgan Stanley's program does not qualify as an ERISA plan under this test because its purpose is to encourage retention and good conduct, not to provide retirement income.  *See Oatway*, 325 F.3d at 189 (affirming conclusion that plan was "not an employee pension benefit plan under ERISA because it was not created for the purpose of providing retirement income, but rather was an incentive plan" to encourage retention and performance); *see also Pasciutti v. LiquidPiston, Inc.*, 2021 WL 4502950, at *2 (D. Conn. Sept. 30, 2021) (looking to "purpose of the Plan, as stated in the Plan document"); *In re Segovia*, 404 B.R. 896, 922 (N.D. Cal. 2009) (same; finding that ERISA did not govern plan intended to help motivate and retain current employees), *aff'd sub nom. Segovia v. Schoenmann*, 408 F. App'x 61 (9th Cir. 2011); *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 510 (S.D.N.Y. 1997) ("When considering the first definition of 'pension plan'—whether the plan 'provides retirement income'—generally 'only plans "designed for the purpose of paying retirement income" should be considered to provide retirement income under ERISA.'").

     Plaintiffs instead hang their hat on subsection (ii)—encompassing plans that "result[] in a deferral of income by employees for periods extending to the termination of covered

`

employment or beyond," *see* Am. Compl. ¶ 53 (quoting 29 U.S.C. § 1002(2)(A)(ii))—but that argument fails on multiple levels.

First, Morgan Stanley's program does not entail *any* "deferral of income by employees," because employees do not defer income under the awards at all. These are contingent awards. Advisors do not earn payment on the awards unless and until they satisfy the conditions for payment. As soon as advisors meet those conditions, the awards are paid. The program is thus unlike a 401(k) plan or other retirement plans, where participants can elect to have portions of their salaries withheld and distributed in the future. This is not a program where employees make contributions out of earnings to be distributed in the future.

*Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 624 (5th Cir. 2014), cited in the complaint, illustrates the point. There, in finding that ERISA governed a plan, the Fifth Circuit found it critical that "by design, employees ha[d] the option to defer receipt of a portion of their compensation," and "by participating in" the plan "for[went] income *in exchange for* receiving income at a later date." *Tolbert*, 758 F.3d at 625-26 (emphasis added; quotations omitted). There is no such exchange here. Morgan Stanley financial advisors do not choose to forgo present income to receive it later as deferred compensation; they have no right to payment until and unless they remain employed at vesting—a condition plaintiffs failed to meet. In this way, Morgan Stanley's program is like the plan considered in *Boos v. AT&T, Inc.*, 643 F.3d 127 (5th Cir. 2011), and distinguished in *Tolbert*, 758 F.3d at 625, in which the plaintiff-retirees "had no right to income" before certain conditions were met and thus "had not foregone any income in exchange for receiving income at a later date." *Id.* (discussing *Boos*).

Second, any "post-retirement payments" under the Morgan Stanley program are "only incidental" to the goal of providing compensation to current employees and thus do not bring the entire program within subsection (ii)'s reach. *Oatway*, 325 F.3d at 189; *Tolbert*, 758 F.3d at 625 ("[T]he mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." (quoting *Murphy*, 611 F.2d at 575)). The "possibility" of post-retirement payments "is not sufficient to bring [a] plan within the coverage of ERISA." *Pasciutti*, 2021 WL 4502950, at *3; *see Segovia*, 404 B.R. at 922. For ERISA to apply, the plan must "*generally* defer the receipt of income to the termination of employment." *Suwyn*, 978 F. Supp. at 511 (emphasis added).

The plans in *Murphy*, *Oatway*, *Suwyn*, *Pasciutti*, and *Segovia* all contemplated that some payments could be made after the end of employment. *Murphy*, 611 F.2d at 575 (royalties); *Oatway*, 325 F.3d at 186, 189 (stock options exercised after termination); *Suwyn*, 978 F. Supp. 506 at 509 (restrictions lifted upon death, disability, or at retirement age); *Pasciutti*, 2021 WL 4502950, at *3 (options could be exercised after termination); *Segovia*, 404 B.R. at 922 (options could be redeemed at retirement). In each, the post-termination payments were merely incidental to programs that provided in-employment compensation. So too here: the Morgan Stanley's humanitarian exceptions to cancellation are incidental to a program that generally requires advisors to be employed to receive payment. This is not a retirement plan.

The language of ERISA is "not to be read as an elastic girdle that can be stretched to cover any content that can conceivably fit within its reach." *Murphy*, 611 F.2d at 575. Plaintiffs

`

failed to earn payment on these awards under terms that were clearly disclosed to them, and cannot claim the awards were a "pension benefit" to change the terms of the deal now.

### B.     The Department of Labor's "bonus" regulation compels the same conclusion.

The Department of Labor's "bonus" regulation likewise forecloses ERISA's application here.  That regulation states that ERISA does not cover "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond."  29 C.F.R. § 2510.3-2(c).  Morgan Stanley's awards do not "systematically" defer payments to the termination of covered employment, and they therefore qualify as bonus awards under this regulation.  Plaintiffs' reasons for arguing the regulation does not apply, Am. Compl. ¶ 72, are incorrect.

"Generally, a bonus plan's terms state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention." *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435-36 (6th Cir. 2019); *see also Oatway*, 325 F.3d at 189.  Morgan Stanley's program states exactly those purposes.  Plaintiffs contend that financial advisors "do not have to do anything 'in addition to what is expected' of them" to be paid awards, Am. Compl. ¶ 74, but that is plainly wrong; plaintiffs must work for Morgan Stanley *and continue to work through the vesting period* to earn award payments.  Plaintiffs also assert that awards are "commissions," Am. Compl. ¶¶ 76-79, but plaintiffs cannot escape the bonus regulation with a label.  This is contingent compensation, as the materials plaintiffs incorporate into the Complaint establish beyond question.  And because it is conditioned on continued employment, it is a bonus that is systematically paid *during* employment.

### III.    Plaintiffs May—And Must—Obtain Any Relief On Their Claims In Arbitration

For the foregoing reasons, Morgan Stanley's deferred compensation program is not an ERISA plan.  But plaintiffs could obtain the ERISA benefits relief they seek through arbitration, if they were entitled to any relief at all.  Plaintiffs seek payments *from* the alleged plan *to them*.  Their claims are quintessential individual benefits claims, and they are capable of being remedied in full in arbitration.  *See* Mot. to Compel, ECF No. 66, at 12-14; Reply, ECF No. 69, at 4-6.  Indeed, multiple arbitrations piggybacking on this lawsuit are now pending, and the first has already proceeded to hearing.  While that arbitration panel denied all claims in their entirety (*see* Ex. A), it did so on the merits, not because the requested relief was unavailable in arbitration.  Plaintiffs' claims ultimately fail because they are meritless, not because plaintiffs agreed to arbitrate them.

Respectfully submitted,

*/s/ Meaghan VerGow*

Meaghan VerGow

`