## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MATTHEW T. SHAFER, SHERI
HAUGABOOK, PETER HEIDT, JEFFREY
SHOVER, MACE TAMSE, GEORGE
LIVANOS, MARK LOFTUS, JEFFREY
SAMSEN, JEFFREY SHERESKY, STEVE
SHERESKY, STEVE NADLER, and SANDY
JUKEL, on behalf of themselves and all others
similarly situated,

        Plaintiffs,

    -against-

MORGAN STANLEY, MORGAN STANLEY
SMITH BARNEY LLC, MORGAN STANLEY
COMPENSATION MANAGEMENT
DEVELOPMENT AND SUCCESSION
COMMITTEE, and John/Jane Does 1-20,

        Defendants.

Civil Action No. 1:20-cv-11047-PGG

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR RECONSIDERATION OR CLARIFICATION

Meaghan VerGow
Brian D. Boyle (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
mvergow@omm.com
bboyle@omm.com

Pamela A. Miller
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
pmiller@omm.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley Smith Barney LLC, and
Morgan Stanley Compensation*

*Management Development and*
*Succession Committee*

December 5, 2023

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 2

BACKGROUND ..................................................................................................... 4

    A.    Relevant Procedural History .................................................................. 4

    B.    Parallel Arbitrations ............................................................................. 7

ARGUMENT .......................................................................................................... 8

I.    WHETHER ERISA GOVERNS MORGAN STANLEY'S DEFERRED COMPENSATION PROGRAM IS UNNECESSARY TO THE COURT'S DECISION AND THUS BEYOND THE COURT'S AUTHORITY HERE .................................................................................. 9

    A.    The Court's Holding On Morgan Stanley's Motion To Compel Does Not Depend On Whether ERISA Governs The Deferred Compensation Program .......................................................... 10

    B.    The FAA Requires The Court To Enforce The Parties' Agreements And Reserve The ERISA Question For The Arbitrator To Decide ........ 12

    C.    It Would Be Clear Error To Decide The ERISA Question When The Parties Did Not Present It For Decision .......................................... 14

II.    THE ERISA COVERAGE QUESTION IS FACT-SPECIFIC AND MUST BE DECIDED BASED ON A DEVELOPED RECORD AND DEDICATED BRIEFING .................................................................. 15

    A.    It Would Be Clear Error To Deem The Deferred Compensation Program An ERISA Plan Without An Adequately Developed Record ................................................................................... 16

    B.    Manifest Injustice Would Result From Declaring That ERISA Governs The Program Without Affording Morgan Stanley A Full And Fair Opportunity To Litigate The Issue ............................... 18

III.    THE COURT'S DISCUSSION OF ERISA REFLECTS CLEAR ERRORS THAT WARRANT RECONSIDERATION ................................... 20

    A.    The Court Clearly Erred In Finding The Bonus Regulation Inapplicable Based On Analysis Of Exclusively Irrelevant Authorities ................................................................................. 20

    B.    The Court Misapprehended The Contractually Defined Nature Of Awards Under The Morgan Stanley Program .............................. 23

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Adams v. Intralinks, Inc.*,
   2004 WL 1627313 (S.D.N.Y. July 20, 2004) ........................................................ 16

*Albers v. Guardian Life Ins. Co. of Am.*,
   1999 WL 228367 (S.D.N.Y. Apr. 19, 1999) ........................................................ 17

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013).............................................................................................. 12

*Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*,
   2021 WL 2358695 (S.D.N.Y. June 9, 2021) ........................................................ 9

*Boos v. AT&T, Inc.*,
   643 F.3d 127 (5th Cir. 2011) ................................................................................ 25

*Cashman v. GreyOrange, Inc.*,
   2023 WL 2652789 (N.D. Ga. Mar. 27, 2023) ...................................................... 21

*Conn. Gen. Life Ins. Co. v. Mitchell*,
   1995 WL 469714 (S.D.N.Y. Aug. 8, 1995).......................................................... 16

*Davidson v. Scully*,
   172 F. Supp. 2d 458 (S.D.N.Y. 2001) .................................................................. 9

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985).............................................................................................. 12

*Foster v. Bell Atl. Tricon Leasing Corp.*,
   1994 WL 150830 (S.D.N.Y. Apr. 20, 1994) ........................................................ 16

*Greenlaw v. United States*,
   554 U.S. 237 (2008).............................................................................................. 14

*Grimo v. Blue Cross/Blue Shield of Vt.*,
   34 F.3d 148 (2d Cir. 1994) ............................................................................ 17, 18

*Haropulos v. First Am. Title Ins. Co. of N.Y.*,
   1995 WL 274456 (S.D.N.Y. May 10, 1995) ........................................................ 22

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)............................................................................................ 12

*Hester v. Whatever It Takes*,
   2022 WL 89176 (W.D. Ky. Jan. 7, 2022)............................................................ 21

*Int'l Paper Co. v. Suwyn*,
   978 F. Supp. 506 (S.D.N.Y. 1997) ................................................................ 17, 18

*Israel v. Voya Institutional Plan Servs., LLC*,
   2017 WL 1026416 (D. Mass. Mar. 16, 2017)...................................................... 22

*Killian v. McCulloch*,
   850 F. Supp. 1239 (E.D. Pa. 1994) ...................................................................... 21

## TABLE OF AUTHORITIES
### *(Continued)*

**Page(s)**

*Kissner v. Inter-Cont'l Hotels Corp.*,
1998 WL 337067 (S.D.N.Y. June 25, 1998) ........................................................ 16

*McKinsey v. Sentry Ins.*,
986 F.2d 401 (10th Cir. 1993) ............................................................................ 21

*Oatway v. Am. Int'l Grp., Inc.*,
325 F.3d 184 (3d Cir. 2003) ............................................................................... 20

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003) ................................................................................. 8

*Pilkington v. CGU Ins. Co.*,
2000 WL 33159253 (E.D. Pa. Feb. 9, 2001) ...................................................... 21

*Roberts v. AIG Glob. Inv. Corp.*,
2008 WL 4444004 (S.D.N.Y. Sept. 30, 2008) .................................................... 16

*RST (2005) Inc. v. Rsch. in Motion Ltd.*,
597 F. Supp. 2d 362 (S.D.N.Y. 2009) ................................................................... 8

*Smith v. Rochester Tel. Bus. Mktg. Corp.*,
786 F. Supp. 293 (W.D.N.Y. 1992) ..................................................................... 22

*Sutherland v. Ernst & Young LLP*,
847 F. Supp. 2d 528 (S.D.N.Y. 2012) ................................................................... 8

*Tolbert v. RBC Cap. Mkts. Corp.*,
758 F.3d 619 (5th Cir. 2014) .............................................................................. 25

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020) ................................................................................. 14, 15

*United Steelworkers of Am. v. Am. Mfg. Co.*,
363 U.S. 564 (1960) ........................................................................................... 13

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
372 F.3d 339 (5th Cir. 2004) .............................................................................. 13

*Wilson v. Safelite Grp., Inc.*,
930 F.3d 429 (6th Cir. 2019) .............................................................................. 20

**Statutes and Regulations**

29 U.S.C. § 1002 .................................................................................................. 17

29 C.F.R. § 2510.3-2 ........................................................................................... 20

**Other Authorities**

*Bonus*, *Black's Law Dictionary* (11th ed. 2019) ................................................. 23

*Bonus*, *Webster's Third New International Dictionary of the English Language, Unabridged*
(1993 ed.) ........................................................................................................... 23

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

Lax & Neville LLP, *Court Compels Morgan Stanley Advisors to Arbitrate for Their Deferred Compensation at FINRA*, N.Y. Sec. Lawyer Blog (Nov. 22, 2023)........................................... 1

Miriam Rozen, *Ex-Morgan Stanley Brokers Must Arbitrate Class Claim Over Deferred Comp, Judge Rules*, AdvisorHub (Nov. 22, 2023)........................................................................... 1, 7

Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, and Morgan Stanley Compensation Management Development and Succession Committee (together, "Morgan Stanley") submit this memorandum of law in support of their motion for reconsideration or clarification of the Court's November 21, 2023, Memorandum Opinion & Order, ECF No. 86, granting Morgan Stanley's motion to compel arbitration.  On its way to the correct conclusion that plaintiffs agreed to arbitrate these claims, the Court suggested that Morgan Stanley's deferred compensation program for financial advisors is governed by the Employee Retirement Income Security Act of 1974 (ERISA).  That is the ultimate question presented by plaintiffs' lawsuit, however.  It must be decided by the arbitrators, not on a motion to compel arbitration where neither party had asked the Court to rule on the merits.

Morgan Stanley presumes that the Court did not intend to adjudicate *sua sponte* the central issue in this case without a developed evidentiary record, responsive pleadings, and legal briefing, not least because doing so would supplant the authority of the arbitrators the Court has properly recognized.  Nevertheless, the Court's order is susceptible of misinterpretation and risks substantial prejudice to Morgan Stanley in forthcoming arbitrations.  Already, the order has been characterized by plaintiffs as a merits decision on the core disputed element of their claims,[1] and it is being used by lawyers to advertise their services to prospective clients.[2]  Because it was

---

[1] *See* Miriam Rozen, *Ex-Morgan Stanley Brokers Must Arbitrate Class Claim Over Deferred Comp, Judge Rules*, AdvisorHub (Nov. 22, 2023), https://www.advisorhub.com/ex-morgan-stanley-brokers-must-arbitrate-class-claim-over-deferred-comp-judge-rules/ ("Judge Gardephe concluded that the Morgan Stanley deferred compensation plan is an ERISA pension plan … . This means that our clients' deferred compensation is vested and non-forfeitable.").

[2] See Lax & Neville LLP, *Court Compels Morgan Stanley Advisors to Arbitrate for Their Deferred Compensation at FINRA*, N.Y. Sec. Lawyer Blog (Nov. 22, 2023), https://www.newyorksecuritieslawyerblog.com/court-compels-morgan-stanley-advisors-to-arbitrate-for-their-deferred-compensation/ ("The Court's holding may significantly strengthen FINRA arbitration claims against Morgan Stanley, which primarily depend on the applicability, and Morgan Stanley's violation, of ERISA. … If you are a former Morgan Stanley financial

neither necessary nor appropriate for the Court to rule on the merits of plaintiffs' claims in order to decide the motion to compel arbitration, Morgan Stanley respectfully requests that the Court modify its opinion to clarify that it has not done so.

If the Court's intention was indeed to reach the substance of plaintiffs' claim that Morgan Stanley's deferred compensation awards constitute an ERISA plan, Morgan Stanley respectfully asks the Court to reconsider that determination, which would impair Morgan Stanley's ability to obtain an arbitration panel's decision of the merits based on a full review of the evidence and appropriate legal briefing.  A judicial finding of the ultimate issue in this case not only is unnecessary to the Court's holding but also would contravene the Federal Arbitration Act (FAA) and traditional principles of adjudication that call for the decision only of matters that have been presented and properly developed by the parties.  The undeveloped record before the Court led to oversights in the order's discussion of ERISA, which, Morgan Stanley respectfully submits, a plenary review of the relevant evidence and legal authorities will help illuminate.  That is the arbitration panel's job now—and to ensure that the panel has an untrammeled opportunity to reach its own conclusion, and avoid manifest injustice, Morgan Stanley asks that the Court clarify that its ruling concerns only the motion to compel and should not be construed to constrain the arbitration panel in its own review of the evidence and the law.

**INTRODUCTION**

Plaintiffs claim that Morgan Stanley's deferred compensation program for financial advisors is really an ERISA plan, and that the cancellation of plaintiffs' unvested awards when they left Morgan Stanley violated ERISA.  As the Court correctly concluded, valid agreements between plaintiffs and Morgan Stanley require the arbitration of plaintiffs' claims: plaintiffs are

---

advisor who had deferred compensation when you left Morgan Stanley, please contact us … to discuss your potential claims.").

seeking individual benefits as damages; complete relief on their claims for benefits may be obtained in arbitration; and the parties' agreements here require plaintiffs to seek relief in that forum.  The Court's analysis in that regard is entirely correct.

To reach that conclusion, it would have been sufficient to *assume*—as the parties did—that the deferred compensation program is an ERISA plan and then ask whether plaintiffs would then have any basis for avoiding arbitration.  But the Court's opinion ventures further, to suggest that Morgan Stanley's program really is an ERISA pension plan—the very issue that will be contested by the parties in the eventual arbitration proceeding.  Those pronouncements are unnecessary to the Court's decision and have been misconstrued as deciding merits issues that should be reserved for the arbitration panel.

Under the FAA, a court deciding a motion to compel must decide only whether to enforce the parties' arbitration agreement.  When an arbitration agreement requires the arbitration of a party's claims, the FAA affirmatively requires courts to refrain from opining on the merits.  The party-presentation principle of federal adjudication independently directs the same result.  Here, Morgan Stanley's motion to compel arbitration presented only the question whether plaintiffs' claims must be directed to arbitration.  Neither party sought a ruling from the Court on the merits of plaintiffs' claims, nor would such a request have been proper in view of the arbitration agreements.  For purposes of the motion to compel, the parties assumed that ERISA applies and asked the Court to decide only whether ERISA would be any barrier to arbitration.  Given the posture of the case, Morgan Stanley has not filed a responsive pleading; no discovery has been undertaken in this matter; and no motion practice regarding the legal sufficiency of plaintiffs' claims has been completed.  Under traditional adjudicatory principles, only the issues perfected by the pending motion should be decided.

Indeed, it would be premature to resolve the ultimate ERISA question even if the Court had authority to do so.  Similar claims have already proceeded to decision in two separate arbitration hearings in which the panels received full legal briefing and considered a complete evidentiary record, neither of which was available to the Court before it issued its order.  Plaintiffs' claims must be decided in a similar fashion—after a proceeding in which both parties have had the opportunity to develop the record and place it in the context of the governing legal authority.  Although the Court's discussion of ERISA's application should not bind future arbitration panels, the inclusion of that discussion in the Court's order risks confusing the issues and causing prejudice to Morgan Stanley as a result.

Accordingly, Morgan Stanley respectfully requests that the Court modify its opinion to clarify that the Court has decided only the arbitrability issue presented by motion to compel, and that the question whether ERISA applies to Morgan Stanley's deferred compensation program can and must be decided by the arbitration panel.

## BACKGROUND

### A.    Relevant Procedural History

Plaintiffs filed their first complaint December 30, 2020, ECF No. 1, and Morgan Stanley moved to compel arbitration on March 24, 2021, ECF No. 42.  Plaintiffs filed the operative amended complaint on March 24, 2022, ECF No. 58; Morgan Stanley again moved to compel on May 9, 2022, ECF No. 65, and requested oral argument on the motion, ECF No. 70.  In the extensive litigation over whether plaintiffs must arbitrate their claims, both parties have consistently focused on whether they entered valid agreements to arbitrate, whether their arbitration agreements reach plaintiffs' claims, and whether plaintiffs assert any claims as to which the arbitration agreements are unenforceable.

In Morgan Stanley's opening brief supporting its operative motion to compel, ECF No. 66, Morgan Stanley argued that plaintiffs had entered valid arbitration agreements that encompassed their claims, *id.* at 7-14, and that those agreements delegated any questions of arbitrability to the arbitrator, *id.* at 14-15.  Anticipating that plaintiffs would claim to be "asserting representative ERISA claims that are not subject to arbitration," Morgan Stanley argued that precedent "does not preclude arbitration of ERISA claims brought in a representative capacity on behalf of a plan," and that in any event "plaintiffs' claims are not brought *on behalf of* an ERISA plan" but rather "to recover benefits that they claim are due *to* them, *from* the alleged plan."  *Id.* at 12-14.  Plaintiffs responded, ECF No. 72, that "[t]he parties did not agree to arbitrate claims brought in Plaintiffs' representative capacity," *id.* at 10; that their "§ 502(a)(2) claims 'belong' to the" alleged "ERISA plan," which "did not agree to arbitrate" them, *id.* at 13; and that any agreement to arbitrate their claims under ERISA §§ 502(a)(2) and 502(a)(3) would be "unenforceable as 'prospective waiver[s] of a party's right to pursue statutory remedies' under ERISA § 502," *id.* at 16.  For purposes of this briefing, Morgan Stanley assumed for the sake of argument that ERISA applied and contended that the arbitration agreements nonetheless validly applied to plaintiffs' claims.

Plaintiffs also filed three notices of supplemental authority (one while Morgan Stanley's original motion to compel remained pending), and Morgan Stanley filed a response to each. Plaintiffs' first notice argued that their ERISA claims do not "relate to" their employment within the meaning of the parties' arbitration agreements and that their ERISA § 502(a)(2) fiduciary-breach claims seek planwide relief and cannot be individually arbitrated, ECF No. 52-1, at 1-2; Morgan Stanley responded that both the claim and agreement in plaintiffs' cited authority were distinguishable and that plaintiffs do "not genuinely assert claims *on behalf of* an ERISA plan,"

but rather claims "for individual benefits" that are "unquestionably arbitrable," ECF No. 54, at 2.

Plaintiffs' second notice argued that "the arbitration provisions are unenforceable because" they

"preclude the arbitration of claims brought in a representative capacity," ECF No. 74-1, at 2;

Morgan Stanley responded that "plaintiffs seek payment of benefits *from* the alleged plan, on

their *own* behalf," and that "if they succeed in showing that Morgan Stanley's deferred

compensation program is an ERISA plan at all, they may obtain the claimed benefits in full in an

arbitration proceeding," ECF No. 76, at 2.  Plaintiffs' third notice argued that the parties'

agreements would preclude them from asserting in arbitration "claims under ERISA

§ 502(a)(2) … in a representative capacity" and "claims under ERISA § 502(a)(3) … on behalf

of all class members," ECF No. 79-1, at 2; Morgan Stanley explained that plaintiffs

"fundamentally seek the payment of benefits to themselves," which they could obtain in

arbitration, ECF No. 81, at 2.  Importantly, in none of the foregoing briefing did the parties

address the question whether Morgan Stanley's deferred compensation program constitutes a

pension plan within the meaning of ERISA; rather, the parties disputed whether plaintiffs may

avoid arbitration *even assuming* ERISA applies.

On Friday, September 15, 2023, the Court issued an order directing as follows:

> The parties' briefing does not adequately address whether Morgan
> Stanley's deferred compensation program is an ERISA plan … .  Accordingly, by
> **Wednesday, September 20, 2023**, the parties will submit letters addressing
> whether Plaintiffs' allegations that, in certain scenarios, some financial analysts
> receive their scheduled payouts after their employment with Morgan Stanley ends
> demonstrates that the deferred compensation program is an ERISA plan.

ECF No. 82, at 2.  A separate docket entry apparently reflects a request by the Court to plaintiffs

that they provide the Court with the documents cited in their Amended Complaint.  ECF No. 83,

at 1.  Consistent with the Court's Individual Rules, each party filed five-page letter briefs in

response to the Court's order.  In its brief responding to the Court's order, Morgan Stanley

explained that ERISA does not govern the program, and reiterated that this issue can and should be decided in arbitration.  ECF No. 85.

On November 21, 2023, the Court issued a memorandum opinion and order, ECF No. 86 ("Op."), granting Morgan Stanley's motion to compel arbitration.  The Court explained that the parties entered valid arbitration agreements with paradigmatically broad language.  Op. at 15-27. The Court then turned to plaintiffs' argument that "their claims are not arbitrable" because "they have brought their claims in a representative capacity on behalf of ERISA plans."  *Id.* at 28.  The Court agreed with Morgan Stanley that plaintiffs do not assert any genuinely representative claims under ERISA § 502(a)(2) but rather raise individual benefits claims that are indisputably arbitrable, *id.* at 41-51; that plaintiffs failed to show that their § 502(a)(3) claims are not arbitrable, *id.* at 51-53; and that compelling arbitration would not result in an impermissible prospective waiver of any statutory rights, *id.* at 53-55.

The Court's opinion also discusses the question whether Morgan Stanley's deferred compensation program constitutes an ERISA-governed pension plan.  *Id.* at 29-39.  Plaintiffs' counsel has said the Court "concluded that the Morgan Stanley deferred-compensation plan is an ERISA pension plan," Rozen, *supra*, in a statement that is now featured on counsel's website.[3]

### B.   Parallel Arbitrations

As Morgan Stanley noted in its most recent letter to the Court, ECF No. 85, claimants across the country have now initiated multiple arbitrations that, like this lawsuit, assert that Morgan Stanley's deferred compensation program is an ERISA plan.  *Id.* at 5.  So far, two statements of claim have gone to multi-day hearings, and in both instances the panels have rejected the claims on the merits after considering the evidence—including a multitude of

---

[3] https://www.ajamie.com/press/ex-morgan-stanley-brokers-must-arbitrate-class-claim-over-deferred-comp-judge-rules/.

documents and hours of testimony that are not part of the record here—and receiving full legal briefing and oral argument.  For example, the panel in the most recent arbitration received evidence regarding all of the documents that govern the administration of these awards; their structure, drafting, and history, including changes to their language over time; disclosures to advisors regarding the awards, including disclosures explicitly explaining that the program is not a retirement plan; communications to advisors regarding the terms of the awards and communications and testimony by advisors reflecting their understanding of those terms; clawback and cancellation requirements imposed by financial regulators; and documents reflecting critical differences between the terms of advisors' ongoing cash incentive compensation and the contingent deferred compensation awards that advisors receive as a bonus for engaging in good guardianship and remaining with the firm through a vesting period.

## ARGUMENT

Local Civil Rule 6.3 permits a party to seek "reconsideration or reargument of a court order … within fourteen (14) days after the entry of the Court's determination of the original motion," based on "a memorandum setting forth concisely the matters or controlling decision which counsel believes the Court has overlooked."  "Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly" and is not warranted when a party merely seeks to "relitigat[e] issues already decided by the Court."  *RST (2005) Inc. v. Rsch. in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quotations omitted).  "Reconsideration is appropriate," however, "where there is 'an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice.'" *Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528, 531 (S.D.N.Y. 2012) (quoting *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147,

167 (2d Cir. 2003)).  "Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion of a district court judge."  *Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (quotations omitted).  Meanwhile, a "motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order."  *Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*, 2021 WL 2358695, at *1 (S.D.N.Y. June 9, 2021) (quotation omitted) (granting motion to clarify that opinion was not the "final word" on certain disputed issues).

To decide Morgan Stanley's motion to compel the Court had only to resolve the arbitrability question presented.  For the reasons given below, the Court should grant reconsideration and clarify that it is not seeking to take the ultimate issue in this case—whether ERISA applies to plaintiffs' deferred compensation awards—away from the arbitrators.

## I.   WHETHER ERISA GOVERNS MORGAN STANLEY'S DEFERRED COMPENSATION PROGRAM IS UNNECESSARY TO THE COURT'S DECISION AND THUS BEYOND THE COURT'S AUTHORITY HERE

The Court's correct decision to compel the parties to arbitrate their dispute did not require the Court to decide whether Morgan Stanley's deferred compensation program actually is an ERISA pension plan.  Because that question goes to the merits of plaintiffs' claims, which the parties agreed that an arbitrator would decide, the FAA requires the Court to refrain from weighing in on it.  The party-presentation principle leads to the same conclusion, because the parties never sought the Court's decision of the merits.  It would be clear error for the Court to resolve the ultimate issue in dispute in this case, and manifest injustice would result from the implication that the Court has denied Morgan Stanley its contractual right to submit that dispute to an arbitrator in the first instance.  The Court should accordingly clarify the limits of its decision, including that it does not address the merits of plaintiffs' claims.

A.     The Court's Holding On Morgan Stanley's Motion To Compel Does Not Depend On Whether ERISA Governs The Deferred Compensation Program

The Court correctly found it "clear that the arbitration provisions at issue unambiguously delegate disputes as to arbitrability to the arbitrator, except as to challenges to the provisions' class action waivers." Op. at 16. The Court rejected plaintiffs' challenges to those waivers on the ground that plaintiffs do not assert any genuinely representative claims or seek any uniquely classwide relief they could not obtain in arbitration. *Id.* at 51-55. The Court could—and should—decide all of those issues by simply assuming that the program is an ERISA plan and asking whether plaintiffs could then avoid arbitration on any of their asserted grounds.

Each decision point in the Court's opinion confirms that the ultimate ERISA coverage issue is not necessary to the Court's holding. First, plaintiffs argued that the "parties did not agree to arbitrate claims brought in Plaintiffs' representative capacity"; plaintiffs relatedly argued that the alleged "ERISA plan never agreed to arbitrate any claims," and that this precluded arbitration "because Plaintiffs' § 502(a)(2) claims 'belong' to the FA Deferred Compensation Program." ECF No. 72, at 10, 13. The Court correctly rejected these arguments "because Plaintiffs have not alleged 'losses to the plan'" and thus "are not, in fact, proceeding in a representative capacity." Op. at 48. That conclusion holds whether or not ERISA actually governs the deferred compensation program: Because plaintiffs "failed to allege a true § 502(a)(2) claim," their complaint did not require the Court to decide whether "claims under § 502(a)(2) are non-arbitrable." *Id.* at 51. Second, and similarly, plaintiffs contended they were not bound to arbitrate because they "assert claims in a representative capacity under ERISA § 502(a)(3)." ECF No. 72, at 11. The Court correctly rejected this argument because § 502(a)(3) claims may seek individual relief and be arbitrated individually, and plaintiffs had "not demonstrated that their § 502(a)(3) claims are non-arbitrable." Op. at 53. Once again, that

conclusion holds whether or not ERISA actually governs the deferred compensation awards in dispute.  Last, plaintiffs objected to arbitration under the prospective waiver doctrine, arguing that "the arbitration provisions would eliminate Plaintiffs' right to pursue statutory remedies provided for under sections 502(a)(2) and 502(a)(3)."  ECF No. 72, at 16.  The Court correctly rejected this argument because plaintiffs had "not identified any limitation on remedies that would apply in an arbitration, … other than the class waiver," and the class waiver did not require plaintiffs to forgo any substantive rights.  *Id.* at 54-55; *see id.* at 54 ("Prohibiting class treatment does not inherently limit statutory remedies, however, because class treatment is a procedural matter, and not a substantive right.").  That too is true regardless whether ERISA in fact governs plaintiffs' deferred compensation awards.  At every step, the Court's systematic rejection of each of plaintiffs' grounds for resisting arbitration shows that the Court did not need to reach the ERISA coverage question.

The Court's opinion itself makes clear why the Court does not need to rely on any ultimate decision of the ERISA question to decide the issues disputed in the motion to compel. As the Court explained, plaintiffs offered a two-step argument: "that the arbitration provisions are unenforceable because (1) they 'prohibit[] Plaintiffs from bringing [their] claim[s] on a representative basis'; and (2) this restriction violates ERISA."  *Id.* at 29 n.11.  The Court concluded at the first step that plaintiffs are not, in fact, bringing claims on a representative basis, making it unnecessary to reach the second step at all—whether a restriction of representative actions would violate ERISA is purely academic here.[4]  And while the Court agreed with plaintiffs that the "validity of the class action waivers must be determined by a court," *id.*, as

---

[4] If the Court had concluded that it needed to reach the second step—that is, if it concluded that plaintiffs had brought genuine representative claims—the Court still could have ordered arbitration of their individual benefits claims and held any remaining claims in abeyance pending that arbitration, as Morgan Stanley explained in its briefs.  *See* ECF No. 66, at 15-16.

explained above, the Court's analysis of that question did not depend on any conclusion about ERISA.  In short, consistent with the parties' own understanding of the issues presented by the motion to compel and their briefing of the same, the question of ERISA coverage was not submitted for adjudication and did not bear on the ultimate decision whether arbitration should be compelled in this case.

**B.     The FAA Requires The Court To Enforce The Parties' Agreements And Reserve The ERISA Question For The Arbitrator To Decide**

The question whether ERISA applies to the deferred compensation awards does not bear on the arbitrability of plaintiffs' claims—but it does go directly to their merits, as plaintiffs themselves have explained.  *See* Opp., ECF No. 72, at 8 ("Rather, Plaintiffs' claims concern whether the MSCIP and EICP are governed by ERISA and, if so, whether the Cancellation Rule violates ERISA.").  And since the parties' agreements reserve this dispute for arbitration, it would be improper for a court to decide it.  To the extent the Court's decision is construed as such a decision, it would deny Morgan Stanley its contractual right to have an arbitrator independently decide the issue on the merits, working a manifest injustice.

The Court recognized that the "FAA reflects a strong federal policy favoring arbitration." Op. at 12 (quotation omitted).  Under the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract" and allow the arbitrator to "resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527-28 (2019).

Because, as discussed, the Court did not need to decide whether the deferred compensation program is an ERISA plan to compel arbitration, enforcing the parties' arbitration agreements according to their terms requires the Court to allow the arbitrator to decide that question in the first instance.  To the extent that the Court's decision could be construed as nonetheless reaching the question, that would be clear error under decades of case law holding that courts deciding whether to compel arbitration "have no business weighing the merits of the grievance."  *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).  Whether the deferred compensation program is an ERISA pension plan is the core merits dispute between the parties.  Morgan Stanley "should not be deprived of the arbitrator's judgment" on that question, "when it was his judgment and all that it connotes that was bargained for."  *Id.*

Absent clarification, the inevitable confounding effects of the Court's discussion of the merits would effect a manifest injustice in the arbitration of plaintiffs' and other claimants' claims.  Whether the deferred compensation program is an ERISA plan goes to the heart of the merits of not only any arbitration pursuant to the Court's order here, but also the sixteen other arbitrations of similar claims that are currently pending.  While a judicial discussion of the merits should not be binding in any of those proceedings, the pronouncements of a federal court may nevertheless have undue influence in them.  *Cf. Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004) ("Given the binding effect of a federal judgment, as well as the factual similarities in WM's asserted claims, the ICC arbitrator would necessarily be strongly influenced to follow the court's determination.").  Moreover, the Court's analysis was constrained by the limited record before it and, as Morgan Stanley will explain to the arbitration panels if necessary, reflects misunderstandings that become clear in the light of the evidence and legal arguments that will be properly considered in those proceedings.

Yet even having to delve into those misunderstandings will distract from the arbitrators' primary decision of the issues, and will prolong and complicate proceedings that (by design and by agreement) are meant to be simple and efficient.

The Court's dicta risk substituting this Court's judgment for the arbitrator's in *all* of the other arbitrations, even though in *this* proceeding Morgan Stanley never had the opportunity to file a responsive pleading, engage in discovery, submit plenary adversarial legal briefing, or present evidence to the Court.  In any action, a decision of this issue would have been premature; in an action which the parties have agreed to arbitrate, a judicial foray into the merits risks seriously impairing "the integrity of the arbitration and the preservation of [Morgan Stanley's] rights to that contractual agreement," *id.*—in this dispute and many others.

### C.    It Would Be Clear Error To Decide The ERISA Question When The Parties Did Not Present It For Decision

"In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).  That principle requires courts to act as "essentially passive instruments of government" that "normally decide only questions presented by the parties."  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotations omitted).  The parties—mindful of the limited scope of the judicial role here—asked the Court to decide whether plaintiffs' claims are arbitrable regardless whether the program is an ERISA plan.  *See supra* at 4-6.  None of the nine filings on Morgan Stanley's motion asked the Court to decide whether the program really is an ERISA plan, nor would such a request make sense for a case in this posture.

14

The Court raised the merits question *sua sponte* in its September 15 order and addressed it in this decision.  "But as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief."  *Sineneng-Smith*, 140 S. Ct. at 1579 (quotations and alterations omitted).  Morgan Stanley advanced facts and argument showing that plaintiffs' claims are arbitrable regardless whether the deferred compensation program is an ERISA plan, and plaintiffs responded in kind.  Though "a court is not hidebound by the precise arguments of counsel," *id.* at 1581, the Court's shift in focus from the arbitrability question the parties litigated to the merits question reserved for arbitration risks usurping the central role of the arbitration panel in receiving and evaluating the evidence after the development of a full record.  It would be a clear error for the Court to decide a question that neither party presented and that was not a necessary predicate to answering the question the parties did present.  The Court should clarify that its opinion does not do so.

## II. THE ERISA COVERAGE QUESTION IS FACT-SPECIFIC AND MUST BE DECIDED BASED ON A DEVELOPED RECORD AND DEDICATED BRIEFING

Even if the law permitted the Court to resolve the ERISA question, the Court could not decide that matter in plaintiffs' favor based on the pleadings alone.  Whether ERISA governs Morgan Stanley's deferred compensation program is a fact-based question that must be answered based on evidence, not allegations; an arbitrator will decide that question based on a fully developed factual record and full briefing by the parties regarding the applicability of the law to those facts.  The evidence relevant to plaintiffs' claims exceeds the limited materials attached to plaintiffs' complaint.  In other proceedings, arbitrators have considered the full array of applicable plan documents and award certificates together with evidence reflecting, for example, how the compensation is awarded and earned; how Morgan Stanley communicated and

explained award terms to recipients; the differences between these awards and other

compensation paid to financial advisors; that no income is "forgone" for these awards; what

proportion of the compensation is paid to terminated employees; and how the vesting and

cancellation terms in these awards serve regulatory purposes and are widely used in the industry.

It would be clear error to decide the merits prematurely, without affording Morgan Stanley a full

and fair opportunity to litigate whether ERISA applies at all.  Manifest injustice would result

from the implication that the Court has resolved that issue.

### A.    It Would Be Clear Error To Deem The Deferred Compensation Program An ERISA Plan Without An Adequately Developed Record

Courts can decide—and have decided—that ERISA does *not* apply to a plan based on the

contentions in a plaintiff's pleading and incorporated materials.[5]  But to reach the contrary

conclusion, a court would have to consider the evidence, after it has been discovered and

presented.  "Whether an agreement constitutes an ERISA pension plan is a question of fact

which must be answered in light of all the surrounding circumstances from the perspective of a

reasonable person."  *Kissner v. Inter-Cont'l Hotels Corp.*, 1998 WL 337067, at *2 (S.D.N.Y.

June 25, 1998); *accord Roberts v. AIG Glob. Inv. Corp.*, 2008 WL 4444004, at *7 (S.D.N.Y.

Sept. 30, 2008); *Conn. Gen. Life Ins. Co. v. Mitchell*, 1995 WL 469714, at *2 (S.D.N.Y. Aug. 8,

1995).  The "language of the statute instructs that the 'express terms or […] surrounding

circumstances' should guide the inquiry" into whether a plan is a "pension benefit plan" within

---

[5] *See, e.g.*, *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004) (concluding that plan "clearly qualifie[d] as a bonus plan" based on express "purpose … to provide incentives for employee performance" and terms that did not "systematically defer[] payment until the termination of employment or beyond"); *Foster v. Bell Atl. Tricon Leasing Corp.*, 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994) (concluding that ERISA did not apply where, based on "the terms of the plan" and "plaintiff's characterization" of its functioning in practice, the plan could "[]not be said to generally defer the receipt of income to the termination of employment").

the meaning of the statute. *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 511 (S.D.N.Y. 1997)

(quoting 29 U.S.C. § 1002(2)(A)).  As part of that inquiry, courts consider not only "the express

terms of the benefits plan in question," but also "a number of key factors" beyond those terms.

*Id.*; *accord, e.g.*, *Albers v. Guardian Life Ins. Co. of Am.*, 1999 WL 228367, at *3 (S.D.N.Y. Apr.

19, 1999).  In short, determining whether something qualifies as an ERISA plan requires an

adequately developed factual record.  *See, e.g.*, *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d

148, 153 (2d Cir. 1994) (finding record insufficient to determine whether ERISA governed a

plan and remanding for the district court to develop "a more complete factual record").

Here, the Court considered only the documents incorporated into plaintiffs' complaint.

The Court did not have before it any other documents relevant to plaintiffs' claims (including the

full array of documents applicable to plaintiffs' deferred compensation awards, documents

clearly denominating the deferred compensation a "bonus," and documents reflecting advisors'

understanding that the deferred compensation is not "earned" until the terms of the awards are

satisfied); or the testimony of any witnesses (including witnesses who could address the history

of the program, the regulatory directives that influenced its structure, and how it operates in

practice).  Indeed, the Court itself specifically noted gaps in the record that could bear on

material questions.  *See, e.g.*, Op. at 19 (noting that "the record does not indicate" whether plan

document had "changed over time" or whether subsequently issued reproductions of a document

"should be considered … current as of that year or … merely a copy of" an earlier original—

both "matters" the Court deemed "material here"); *id.* at 39 (noting that "nothing in the record

suggests that post-employment deferred compensation payments are rare").  On the record that

was before it, the Court could not reliably determine whether Morgan Stanley's deferred

compensation program qualifies as an ERISA pension plan under the statute, and whether the

program "falls outside the safe harbor regulation" for bonus plans.  *Grimo*, 34 F.3d at 152

(finding record insufficient to determine not only whether plan qualified as welfare benefit plan

under the statute in the first instance, but also whether it fell within regulatory safe harbor for

group insurance programs); *see also Suwyn*, 978 F. Supp. at 511 ("pertinent to [the]

determination" is the amount of "benefits [that] are paid on a current basis before retirement

age … or are otherwise available periodically during the course of employment," and "whether

any payments … made after termination or retirement are merely incidental").  To the extent the

opinion suggests that the Court reached a conclusion on those issues, that conclusion lacks a

proper foundation in a developed evidentiary record.

### B.  Manifest Injustice Would Result From Declaring That ERISA Governs The Program Without Affording Morgan Stanley A Full And Fair Opportunity To Litigate The Issue

As discussed above, no party asked the Court to adjudicate the question whether Morgan

Stanley's deferred compensation program is, in fact, an ERISA plan.  *See supra* at 4-6.  The

briefing the Court requested after raising the question *sua sponte*—five pages on five days'

notice—did not suffice to facilitate a reasoned decision.

The ERISA coverage issue is a more complex question than can reasonably be decided

based on five pages per party.  By way of comparison, the Court itself dedicated approximately

ten pages to the issue in its opinion.  Op. at 30-39.  Counsel is not aware of any case in which a

court has relied on such summary submissions to decide that something not described as an

ERISA plan is, in fact, an ERISA pension plan.  In the absence of adequate legal briefing, the

Court's discussion of ERISA reflects misunderstandings of issues that will go to the arbitration

panel with the benefit of thoroughgoing written submissions, a fully developed record, and a live

evidentiary hearing.  The stakes here are not small: the *only* basis for treating the program as an

ERISA plan is certain humane exceptions to cancellation that Morgan Stanley has adopted for

employees who retire, become disabled, or are laid off, and for the survivors of employees who have died.  If Morgan Stanley were to eliminate these exceptions, as it unquestionably could, plaintiffs' argument for ERISA plan status would evaporate.  Morgan Stanley should have the chance to meaningfully explain why—consistent with guidance from its regulators and standard industry practice—it can accommodate those limited humane exceptions without transforming the deferred incentive compensation awards into a pension plan.  To suggest otherwise would effect a manifest injustice on the affected employees and their families.

Making matters worse, *only* Morgan Stanley was confined to five pages on these issues. Plaintiffs' 30-page operative complaint offers extensive allegations about how Morgan Stanley's deferred compensation program operates, Am. Compl., ECF No. 58, ¶¶ 27-52, and lays out plaintiffs' argument that the program is subject to and violates ERISA, *id.* ¶¶ 53-89.  Morgan Stanley did not have a comparable opportunity to test those allegations or rebut those arguments. Moreover, in an unusual *ex parte* request, the Court sought out the documents plaintiffs chose to cite in support of their complaint, *see* Pls.' Letter (Sept. 15, 2023), ECF No. 83, at 1 ("Pursuant to the request received from Your Honor's Chambers, Plaintiffs write to provide the Court with the following documents cited in their Amended Complaint …"), but Morgan Stanley had no equivalent opportunity to develop and submit the evidence that is material to its own arguments that its deferred compensation program is not a pension plan.  Manifest injustice would result from declaring that ERISA applies to Morgan Stanley's plan without first providing the parties adequate—and equal—opportunities to advance their arguments.  This is precisely what ought to happen in the anticipated arbitration proceeding.

## III.   THE COURT'S DISCUSSION OF ERISA REFLECTS CLEAR ERRORS THAT WARRANT RECONSIDERATION

Even if the ERISA question could be reached at this stage consistent with law and prudence, errors in the Court's discussion would independently require reconsideration.  The errors underscore that these issues merit plenary consideration by the proper decisionmaker.

### A.   The Court Clearly Erred In Finding The Bonus Regulation Inapplicable Based On Analysis Of Exclusively Irrelevant Authorities

The Court clearly erred in reasoning that the Department of Labor's "bonus" regulation, 29 C.F.R. § 2510.3-2(c), does not apply to Morgan Stanley's deferred compensation program. Op. at 36.

The bonus regulation "clarifies the limits of the defined terms 'employee pension benefit plan' and 'pension plan' … by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans" under the statute.  29 C.F.R. § 2510.3-2(a). Specifically, the regulation instructs that "the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."  *Id.* § 2510.3-2(c).

Many authorities—some cited by the Court for other points—explain that the bonus regulation includes programs that award compensation to motivate retention.  *See, e.g.*, *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435-36 (6th Cir. 2019) ("Generally, a bonus plan's terms state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention."); *Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (finding that "an incentive plan designed to provide a financial incentive for employees to remain with AIG and improve their performance there" qualified as a bonus

plan); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) (finding bonus regulation applied to plan with "express terms" describing "purpose of promoting … loyalty to the organization and increased effectiveness of [participants'] work"); *Cashman v. GreyOrange, Inc.*, 2023 WL 2652789, at *5 (N.D. Ga. Mar. 27, 2023) (applying regulation where "the purpose of the plan is to incentivize or reward employees for good performance and to attract and retain talent"); *Hester v. Whatever It Takes*, 2022 WL 89176, at *6 (W.D. Ky. Jan. 7, 2022) ("Because the Plan refers to the retention of executive employees, it is reasonable to interpret the Plan as 'providing for payments made as bonuses for work performed.'"); *Pilkington v. CGU Ins. Co.*, 2000 WL 33159253, at *1, *3 (E.D. Pa. Feb. 9, 2001) (applying bonus regulation to plan with "stated purpose … to 'encourage … associates to remain with the company'"); *Killian v. McCulloch*, 850 F. Supp. 1239, 1246 (E.D. Pa. 1994) (applying regulation to plan with "express purpose … to provide employees with an incentive to remain with the Company").

The Morgan Stanley deferred compensation program, like the plans in all of these cases, expressly states that its purposes include encouraging retention.  *See* MSCIP Plan Document, ECF No. 83-4, § 1 ("MSCIP is a long-term incentive plan.  The Plan is intended to *attract, retain and motivate* employees and to compensate them for their contributions to the Firm." (emphasis added)); EICP Plan Document, ECF No. 83-8, § 1 ("The primary purposes of the [EICP] are to *attract, retain and motivate employees*, to compensate them for their contributions to the growth and profits of the Company and to encourage them to own Morgan Stanley Stock." (emphasis added)).

The structure of these awards likewise shows that they promote retention in practice, and qualify as bonuses within the meaning of the regulation.  Because of their distinct purposes, the terms of the awards are different from the terms of the salary and cash incentive compensation

that advisors are paid on an ongoing basis.  Advisors earn their salary and cash incentive compensation immediately.  Op. at 3-6.  The deferred compensation, in contrast, is awarded subject to clear conditions *in the terms of the awards themselves*.  The deferred compensation is paid only if the financial advisor satisfies those additional conditions.  Morgan Stanley pays financial advisors their salaries and cash incentive compensation in exchange for their ordinary work; Morgan Stanley pays deferred incentive compensation as an additional reward for choosing to remain with the company for longer than at-will employment requires, and for acting as good guardians.  Advisors must do something extra to earn the awards, making the program a bonus plan just like in the cases above.

In analyzing whether Morgan Stanley's deferred compensation program falls within the bonus regulation, the Court did not cite any authorities applying the regulation.  Op. at 35-37. The Court cited two cases that did not involve ERISA at all.  *See Haropulos v. First Am. Title Ins. Co. of N.Y.*, 1995 WL 274456, at *1 (S.D.N.Y. May 10, 1995) (Age Discrimination in Employment Act case noting background fact, unrelated to legal analysis, that plaintiff's "salary was $50,000 per year plus incentive commissions and bonuses"); *Israel v. Voya Institutional Plan Servs., LLC*, 2017 WL 1026416, at *4-7 (D. Mass. Mar. 16, 2017) (distinguishing bonuses from commissions within meaning of Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, which expressly refers to and reaches "commissions" but does not mention or reach bonuses). The Court's third and final cited case involved ERISA, but not the bonus regulation; it concerned whether "commissions [were] … included within 'base rate of pay' or 'bonuses'" within the meaning of a plan that *itself* used both of those terms.  *Smith v. Rochester Tel. Bus. Mktg. Corp.*, 786 F. Supp. 293, 298 (W.D.N.Y. 1992).  It would be clear error to reach any conclusion about the applicability of the bonus regulation by relying exclusively on cases that say nothing about

whether compensation structured to promote retention falls within the bonus regulation, when the relevant cases demonstrate that compensation just like this qualifies as a bonus.

The Court's only other cited authorities, two dictionaries, reinforce that the payments here qualify as bonuses.  The quoted excerpts define a bonus as a "premium paid in addition to what is due or expected" or "money or an equivalent given in addition to the usual compensation."  Op. at 36 (first quoting *Bonus*, *Black's Law Dictionary* (11th ed. 2019); and then quoting *Bonus*, *Webster's Third New International Dictionary of the English Language, Unabridged* (1993 ed.)).  Financial advisors' guaranteed salaries and regularly paid cash incentive compensation are what is "due or expected" and financial advisors' "usual compensation"; deferred incentive compensation that rewards longevity with the company is "paid" or "given in addition" to that.  The plain language of the governing documents states that deferred compensation awards are not earned unless and until other key terms and conditions are met, including but not limited to continued employment in good standing.  *See infra* at 24.  It would improperly rewrite the terms of these supplemental awards to transform them into ordinary compensation that is due or expected without meeting those additional conditions. These errors in the Court's application of the bonus regulation warrant reconsideration.

**B.    The Court Misapprehended The Contractually Defined Nature Of Awards Under The Morgan Stanley Program**

The Court also clearly erred in its analysis of when the awards at issue here are earned and whether payments are deferred, based on an apparent misunderstanding of the terms of the contracts governing the awards.  *See* Op. at 39 ("Whenever an action (here, leaving Morgan Stanley's employ) results in the forfeiture of a contractual right, those facts can always be recharacterized by stating that the opposite action (here, remaining in Morgan Stanley's employ) is a condition precedent to the performance of a contract.").  Here, the condition precedent *is*

*contained in the contract itself.*  Put differently, the contractual right to payment is itself conditioned on the requirement that an employee remain employed through the vesting period. The conditional nature of the compensation is built directly into the contract.

The materials before the Court reflect that financial advisors have no right to the deferred compensation at the time of the award.  In contrast to cash-based incentive compensation, which is earned and paid on an ongoing basis, the deferred compensation is expressly conditioned on an employee's remaining with the firm for the vesting period.  Morgan Stanley's program does not result in the "forfeiture" of any "contractual right" because—as the governing documents clearly explain—financial advisors *do not acquire any right to payment until they satisfy the conditions for payment.  See, e.g.*, 2017 Award Certificate, ECF No. 83-5, at 2 ("[Y]ou will earn your 2017 award only if you (1) remain in continuous Employment through the Scheduled Vesting Date (subject to limited exceptions set forth below), (2) do not engage in any Prohibited Activity …"); MSCIP Plan Document, ECF No. 83-4, at 8 ("[N]or shall a Participant or any Beneficiary or any other person have any right to receive any distribution under the Plan except as, and to the extent, expressly provided in this plan document or the Award Certificate."); 2018 FA Compensation Plan, ECF No. 83-2, at 5 ("Deferred compensation awards are contingent upon the Advisor remaining employed through the grant and vesting dates of the award.").  When plaintiffs left Morgan Stanley's employment, their awards were cancelled *according to the awards' express terms*.  By way of analogy, consider a construction contract that requires the purchaser to pay the builder a deposit upfront and to pay the remainder of the total price upon completion of the construction.  If the builder never finishes the project, she would not "forfeit" any "right" to the additional payment; she would have acquired a right to full payment only by completing the project as the contractual terms required.  The same is true here.

24

The Court clearly erred in dismissing a basic principle of contract law—that a party must perform as a contract requires to acquire the right to consideration under it—as "exalt[ing] form over substance." Op. at 39. As a result, the Court overlooked the critical limiting factor in *Tolbert* for ERISA to apply: that the plan entail employees *forgoing* income *to which they have a present right. See Tolbert v. RBC Cap. Mkts. Corp.*, 758 F.3d 619, 625-26 (5th Cir. 2014) ("The first section of the WAP … explains that, by design, employees have the option 'to defer receipt of a portion of their compensation to be earned with respect to the upcoming Plan Year.' … Put another way, by participating in the WAP, the plaintiffs have foregone income … in exchange for receiving income at a later date." (quotation and alteration omitted)). Consistent with *Tolbert* and the authorities discussed there, this program is not an ERISA plan because advisors do not forgo any present income when they receive a deferred compensation award; advisors do not acquire a right to the income until they meet the conditions for payment. *Cf. id.* at 625 ("[W]e held [in *Boos v. AT&T, Inc.*, 643 F.3d 127 (5th Cir. 2011),] the plaintiffs had no right to income until they purchased telephone services, and therefore, the plaintiffs had not foregone any income in exchange for receiving income at a later date."). This compensation program could not serve its unique purposes of retention and good guardianship if the awards were to vest unconditionally; the awards' carefully crafted structure demonstrates that ERISA does not apply.

## CONCLUSION

Morgan Stanley respectfully asks the Court to reconsider its discussion of the question whether the deferred compensation program is an ERISA pension plan and clarify that its decision does not resolve the merits of plaintiffs' claims.

Dated: Washington, D.C.

December 5, 2023

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Meaghan VerGow
Meaghan VerGow
Brian D. Boyle (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
mvergow@omm.com
bboyle@omm.com

Pamela A. Miller
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
pmiller@omm.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley Smith Barney LLC, and
Morgan Stanley Compensation
Management Development and
Succession Committee*