**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW T. SHAFER, SHERI HAUGABOOK, PETER HEIDT, JEFFREY SHOVER, MACE TAMSE, GEORGE LIVANOS, MARK LOFTUS, JEFFREY SAMSEN, JEFFREY SHERESKY, STEVE SHERESKY, STEVE NADLER, AND SANDY JUKEL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. 1:20-cv-11047-PGG |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John/Jane Does 1-20, | |
| Defendants. | January 9, 2024 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR RECONSIDERATION OR CLARIFICATION**

# TABLE OF CONTENTS

I.  INTRODUCTION & BACKGROUND ........................................................................... 1

II.  LEGAL STANDARDS ............................................................................................... 2

    A.  A motion for clarification should not modify a clear and unambiguous
        ruling. ...................................................................................................................... 2

    B.  A motion to reconsider should not relitigate previously rejected arguments
        or advance new arguments. .................................................................................... 3

III.  ARGUMENT ............................................................................................................. 4

    A.  The motion for clarification should be denied. ...................................................... 4

    B.  The motion for reconsideration should be denied. ................................................. 5

        1.  The Court did not commit clear error in addressing whether
            ERISA applied. ............................................................................................ 5

            a.  Morgan Stanley waived this argument when it did not raise
                it in the Motion to Compel briefing. ................................................ 5

            b.  The Court had authority to address all issues related to
                whether Plaintiffs' claims should be arbitrated, including
                whether ERISA governed the Plans. ................................................. 7

            c.  The parties asked the court to decide whether the plan was
                governed by ERISA. ...................................................................... 10

            d.  The Court did not need additional documents and
                information to address whether ERISA applied. .......................... 11

        2.  The Court did not commit clear error when it concluded that the
            Plans were ERISA plans, not bonus plans. ............................................... 13

         3.  The Court did not misapprehend Morgan Stanley's Plans. ...................... 16

        4.  The Order will not result in manifest injustice. ........................................ 17

IV.  CONCLUSION ......................................................................................................... 19

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Adams v. Intralinks, Inc.*,
2004 U.S. Dist. LEXIS 13678 (S.D.N.Y. July 20, 2004) ...................................................... 11

*Alexander v. Brigham & Women's Phys. Org.*,
467 F.Supp.2d 136 (D. Mass. 2006) ...................................................................................... 14

*Alston v. Pafumi*,
2012 WL 6093893 (D. Conn. Dec. 7, 2012) ............................................................................ 4

*Bank of New York Mellon, London Branch v. Cart 1, Ltd.*,
2021 WL 2358695 (S.D.N.Y. June 9, 2021) ............................................................................ 2

*Bridgeport Music, Inc. v. TufAmerica, Inc.*,
2023 WL 5917635 (S.D.N.Y. Sept. 10, 2023) .......................................................................... 3

*Browe v. CTC Corp.*,
15 F.4th 175 (2d Cir. 2021) .................................................................................................... 17

*Cashman v. Greyorange, Inc.*,
2023 WL 2652789 (N.D. Ga. Mar. 27, 2023) ........................................................................ 15

*Commc'n Workers of Am. v. Avaya*,
693 F.3d 1295 (10th Cir. 2012) ............................................................................................... 8

*Commc'n Workers of Am. v. Tyco Power Sys., Inc.*,
99 F. App'x 499 (5th Cir. 2004) .............................................................................................. 9

*Cooper Crouse-Hinds, LLC v. City of Syracus*,
2022 WL 344053 (N.D.N.Y. Feb. 4, 2022) ............................................................................. 4

*Crawford v. Franklin Credit Mgmt.*,
2013 WL 2951957 (S.D.N.Y. June 14, 2013) .......................................................................... 3

*Daft v. Advest, Inc.*,
658 F.3d 583 (6th Cir. 2011) .................................................................................................. 14

*Demery v. Extebank Def. Comp. Plan (B)*,
216 F.3d 283 (2d Cir. 2000) ................................................................................................... 14

*Feifer v. Prudential Ins. Co. of Am.*,
306 F.3d 1202 (2d Cir. 2002) ................................................................................................. 11

*Foster v. Bell Atl. Tricon Leasing Corp.*,
1994 U.S. Dist. LEXIS 5065 (S.D.N.Y. Apr. 20, 1994) ........................................................ 11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287, 298 (2010)............................................................................... 7, 9

*Grimo v. Blue Cross/Blue Shield of Vt.*,
    34 F.3d 148 (2d Cir. 1994) ............................................................................ 13

*Heinz v. Central Laborers' Pension Fund*,
    303 F.3d 802 (7th Cir. 2002) ........................................................................ 17

*Hester v. Whatever It Takes*,
    2022 WL 89176 (W.D. Ky. Jan. 6, 2022)..................................................... 15

*Huff v. Watson Servs.*,
    2009 U.S. Dist. LEXIS 11822 (S.D.N.Y. Feb. 13, 2009)............................. 11

*IBEW v. GKN Aerospace N. Am., Inc.*,
    431 F.3d 624 (8th Cir. 2005) .......................................................................... 8

*IBEW, Local 176 v. Balmoral Racing Club, Inc.*,
    293 F.3d 402 (7th Cir. 2002) .......................................................................... 9

*Int'l Paper Co. v. Suwyn*,
    978 F. Supp. 506 (S.D.N.Y. 1997) ............................................................... 13

*Killian v. McCulloch*,
    850 F. Supp. 1239 (E.D. Pa. 1994) .............................................................. 15

*Kissner v. Inter-Cont'l Hotels Corp.*,
    1998 WL 337067 (S.D.N.Y. June 25, 1998) ................................................ 13

*McCutcheon v. Colgate-Palmolive Co.*,
    62 F.4th 674 (2d Cir. 2023) .......................................................................... 11

*McKinsey v. Sentry Ins.*,
    986 F.2d 401 (10th Cir. 1993) ...................................................................... 15

*Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*,
    2020 WL 1812868 (S.D.N.Y. Apr. 8, 2020) ............................................ 3, 15

*Merrick v. UnitedHealth Group, Inc.*,
    127 F.Supp.3d 138 (S.D.N.Y. 2015) .............................................................. 9

*Metcalf v. Yale Univ.*,
    2019 WL 1767411 (D. Conn. Jan. 4, 2019)................................................... 3

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014) ......................................................................... 7

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship*,
   409 F. App'x 401 (2d Cir. 2010) ................................................................. 5

*Navigators Ins. Co. v. Goyard, Inc.*,
   623 F.Supp. 3d 220 (S.D.N.Y. 2022) ........................................................... 5

*Nortek Inc. v. ITT LLC*,
   2022 WL 2657189 (S.D.N.Y. July 8, 2022) ................................................. 3

*Oatway v. Am. Int'l Grp., Inc.*,
   325 F.3d 184 (3d Cir. 2003) ........................................................................ 15

*Pasternack v. Schrader*,
   863 F.3d 162 (2d Cir. 2017) ................................................................. 14, 15

*Phillips v. City of New York*,
   775 F.3d 538 (2d Cir. 2015) .......................................................................... 4

*Pilkington v. CGU Ins. Co., Inc.*,
   2000 WL 3319253 (E.D. Pa. Feb. 9, 2001) ............................................... 15

*Preville v. PepsiCo Hourly Emps. Ret. Plan*,
   2015 WL 13881592 (S.D.N.Y. July 15, 2015) ...................................... 6, 12

*Rite Aid of Penn., Inc. v. UFCW, Local 1776*,
   595 F.3d 128 (3d Cir. 2010) .......................................................................... 8

*RST (2005) Inc. v. Research in Motion Ltd.*,
   597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ................................................. 3

*Salveson v. JP Morgan Chase & Co.*,
   166 F. Supp. 3d 242 (E.D.N.Y. 2016) .......................................................... 4

*Sims v. Ellis*,
   2022 WL 446505 (W.D.N.Y. Feb. 14, 2022) .............................................. 2

*Tolbert v. RBC Capital Markets Corp.*,
   758 F.3d 619 (5th Cir. 2014) ...................................................................... 14

*U.S. for Use & Benefits of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*,
   758 F. App'x 97 (2d Cir. 2018) .................................................................... 3

*United States v. Snow*,
   462 F.3d 55 (2d Cir. 2006) .......................................................................... 13

*Van Buskirk v. United Grp. of Cos., Inc.*,
   935 F.3d 49 (2d Cir. 2019) .......................................................................... 16

*Waste Mgmt., Inc. v. Residuos Indus. Mutliquim, S.A. de C.V.*,
   372 F.3d 339 (5th Cir. 2004) ............................................................... 18

*Wilson v. Safelite Group, Inc.*,
   930 F.3d 429 (6th Cir. 2019) ............................................................... 15

**<u>Statutes</u>**

29 U.S.C. § 1002(2)(A) ........................................................................... 1

29 U.S.C. § 1002(2)(A)(ii) ............................................................. 12, 14

29 U.S.C. § 1024(b)(4) .......................................................................... 11

29 U.S.C. § 1102(a)(1) .......................................................................... 11

29 U.S.C. § 1132 ..................................................................................... 1

29 U.S.C. § 1132(a)(2) ............................................................................ 8

29 U.S.C. § 1132(a)(3) ............................................................................ 8

California Labor Code § 2699 ................................................................. 8

**<u>Other Authorities</u>**

Black's Law Dictionary (10th ed. 2014) .............................................. 17

**<u>Regulations</u>**

29 C.F.R. § 2510.3-2(a) ........................................................................ 14

29 C.F.R. § 2510.3-2(c) ........................................................................ 13

## I.     INTRODUCTION & BACKGROUND

Plaintiffs are former Morgan Stanley[1] Financial Advisors ("FAs"), who brought this putative class action to remedy a feature of Morgan Stanley's deferred compensation plans that they allege violates ERISA's vesting and anti-forfeiture requirements and, in turn, to recover the deferred compensation that Morgan Stanley wrongfully caused them to forfeit when they left Morgan Stanley. *See generally* Am. Class Action Compl., ECF 58. Defendants moved to compel arbitration. ECF 65. Plaintiffs opposed the motion on, among others, the grounds that their claims were brought in a representative capacity on behalf of ERISA plans and that the parties' arbitration agreements are unenforceable because they prospectively waived Plaintiffs' statutory rights under ERISA. *See* ECF 72 at 13, 16-21.

Before ruling on Defendants' motion to compel, the Court requested letter briefing on whether the deferred-compensation plans are ERISA plans, ECF 82, and both sides submitted letter briefs on that issue. ECF 84 and ECF 85. In their letter brief, Plaintiffs argued that "Morgan Stanley's FA Compensation Plan constitutes an ERISA pension plan under subsection (ii) of ERISA § 3(2), 29 U.S.C. § 1002(2)(A)." ECF 84 at 5. In contrast, Defendants argued in their letter brief that "Morgan Stanley's awards of deferred compensation are not an ERISA pension plan." ECF 85 at 3. Neither party argued that the Court could not or should not decide whether ERISA applies. ECF 84 and ECF 85.

On November 21, 2023, the Court granted Morgan Stanley's motion to compel arbitration. ECF 86 (the "Order"). To assess Plaintiffs' argument that their claims are not arbitrable because they were brought in a representative capacity under ERISA, the Court addressed "whether (1) the

---

[1] Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, Morgan Stanley Compensation Management Development Succession Committee, and John/Jane Does 1-20 are referred to collectively as "Defendants" or "Morgan Stanley."

Compensation Incentive Plan and the Equity Incentive Plan" (the "Plans") "are ERISA plans; and (2) if so, whether—as Plaintiffs contend—arbitration of their claims was not consented to by each alleged ERISA plan and/or would be contrary to ERISA." Order at 29. As to the first issue, the Court concluded that "Morgan Stanley's deferred compensation programs are ERISA plans." *Id*. at 39. As to the second issue, the Court determined that Plaintiffs "failed to allege a true § 502(a)(2) claim," *id*. at 51, "have not demonstrated that their § 502(a)(3) claims are non-arbitrable," *id*. at 53, and "have not identified any limitation on remedies that would apply in an arbitration . . . other than the class waiver," *id*. at 55.

Morgan Stanley now asks the Court to "clarify" or "reconsider" the Order. ECF 88. Defendants do so—not because the Order is ambiguous or because they no longer seek arbitrate Plaintiffs' claims—but rather because they disagree with the Court's reasoning. ECF 87 (Mot.) and 88 (Mem. of Law). There is no doubt that Defendants understand the Court's Order, and the Court did not clearly err in addressing an issue that Defendants were perfectly content to have the Court decide—until the Court decided it. Accordingly, as shown below, there is no basis for clarification or reconsideration.

## II.    LEGAL STANDARDS

### A.    A motion for clarification should not modify a clear and unambiguous ruling.

A motion for clarification is "not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order." *Bank of New York Mellon, London Branch v. Cart 1, Ltd.*, 2021 WL 2358695, at *1 (S.D.N.Y. June 9, 2021). In other words, "[a] clarification motion asks the Court: 'What did you mean to say?,'" while "[a] reconsideration motion says to the Court: 'We know what you said. It was wrong. Change it." *Sims v. Ellis*, 2022 WL 446505, at *1 (W.D.N.Y. Feb. 14, 2022) (citation omitted). Although "there is no Federal Rule of Civil Procedure specifically governing 'motions for clarification,'" *Nortek Inc. v. ITT LLC*, 2022 WL

2657189, at *1 (S.D.N.Y. July 8, 2022) (citation omitted), "[w]hen a court ruling is unclear or ambiguous, the issuing court may grant the motion and provide additional clarification modifying that ruling or order after providing other parties an opportunity to respond," *Metcalf v. Yale Univ.*, 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019).

### B.    A motion to reconsider should not relitigate previously rejected arguments or advance new arguments.

A motion for reconsideration is "disfavored" and "reserved for exceptional cases," *Crawford v. Franklin Credit Mgmt.*, 2013 WL 2951957, at *1 (S.D.N.Y. June 14, 2013), because it is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *Bridgeport Music, Inc. v. TufAmerica, Inc.*, 2023 WL 5917635, at *3 (S.D.N.Y. Sept. 10, 2023) (Gardephe, J.) (quoting *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009)). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, 2020 WL 1812868, at *1 (S.D.N.Y. Apr. 8, 2020) (Gardephe, J.) (internal citation omitted). "To these ends, a request for reconsideration under [Local] Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matters that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *Id*.

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefits of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F.App'x 97, 101 (2d Cir. 2018) (alteration in original; internal citation omitted). Nor is it "an occasion for repeating old arguments previously rejected [or] an opportunity for making new arguments that

could have previously been made." *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016). Arguments made for the first time in a motion for reconsideration are considered "waived." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015).

## III.   ARGUMENT

The Court should deny Morgan Stanley's motion for clarification because there is no ambiguity in the Order to clarify. The Court should deny Morgan Stanley's motion for reconsideration because the Court did not commit clear error, the Order will not result in manifest injustice, and Morgan Stanley waived its new arguments by failing to make them before.

### A.   The motion for clarification should be denied.

The Order does not contain any ambiguity that needs clarification. In the Order, the Court determined that Plaintiffs must arbitrate their claims—the precise relief Morgan Stanley requested. The only "clarification" Morgan Stanley seeks is for the Court to "clarify the limits of its decision, including that it does not address the merits of plaintiffs' claim." ECF 88 ("Mem.") at 9.[2] But Morgan Stanley does not request clarification of an unclear statement or finding in the Order. Indeed, Morgan Stanley has not identified any ambiguity in, or difficulty understanding, the Order. Instead, it simply disagrees with the Court's reasoning. *See Cooper Crouse-Hinds, LLC v. City of Syracuse*, 2022 WL 344053, at *4 (N.D.N.Y. Feb. 4, 2022) (denying motion for clarification when "no ambiguity" identified; rather party merely disagreed with order); *see also Alston v. Pafumi*, 2012 WL 6093893, at *2 (D. Conn. Dec. 7, 2012) ("The [r]uling speaks for itself. Accordingly, the motion for clarification is denied."). Therefore, the Court should deny Morgan Stanley's motion for clarification.

---

[2] In fact, Morgan Stanley only uses the words "clarify" or "clarification" a total of six times throughout its twenty-five-page memorandum. Mem. at 2, 4, 9, 25.

**B.      The motion for reconsideration should be denied.**

The motion for reconsideration should be denied because the Court did not commit clear error, the Order will not result in manifest injustice, and the new arguments in the motion were waived when Morgan Stanley failed to make them before.

> **1.      The Court did not commit clear error in addressing whether ERISA applied.**

> > **a.      Morgan Stanley waived this argument when it did not raise it in the Motion to Compel briefing.**

Defendants argue that the Court committed "clear error" when it decided that ERISA applied to the Plans. According to Morgan Stanley, the Court should not have addressed this issue and instead should have simply assumed that ERISA applied. But Morgan Stanley did not raise this argument before.

On September 15, 2023, the Court directed the parties to brief "whether Plaintiffs' allegations that, in certain scenarios, some financial analysts receive their scheduled payouts after their employment with Morgan Stanley ends demonstrates that the deferred compensation program is an ERISA plan." ECF 82 at 2. In its letter brief, Morgan Stanley did ***not*** argue that the Court could not or should not decide whether ERISA applies or suggest that the Court should merely assume that ERISA applies when deciding the Motion to Compel Arbitration. ECF 85. Accordingly, Morgan Stanley waived these arguments by not raising them previously.

Under Local Rule 6.3, a party may move for reconsideration of an order, but in doing so, "may not advance new facts, issues, or arguments not previously presented to the Court." *Navigators Ins. Co. v. Goyard, Inc.*, 623 F.Supp.3d 220, 222 (S.D.N.Y. 2022) (citations omitted); *see Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 F.App'x 401, 403 (2d Cir. 2010) (affirming district court's finding that an argument was not properly raised for the first time on a motion for reconsideration and that argument was waived).

Contrary to the position it now takes, Morgan Stanley **specifically asked** the Court in its letter brief to decide if ERISA applies, arguing that Plaintiffs' claims are "meritless . . . because ERISA has no application to [the deferred compensation] program at all" and that "[t]he statutory definition of a pension plan compels the conclusion that these awards are not ERISA-governed." ECF 85 at 2 and 3; *see also id.* at 3 ("Morgan Stanley's program does not qualify as an ERISA plan") and 5 ("Morgan Stanley's deferred compensation plan is not an ERISA plan."). Motions for reconsideration cannot be used to "advance different theories not previously argued," *Preville v. PepsiCo Hourly Emps. Ret. Plan*, 2015 WL 13881592, at *3 (S.D.N.Y. July 15, 2015), *aff'd*, 649 F.App'x 63 (2d Cir. 2016) (Gardephe, J.). Accordingly, Morgan Stanley cannot now flip-flop and claim it was "clear error" for the Court to decide an issue that Morgan Stanley asked the Court to decide in its favor. *Id.* at *1 (denying motion for reconsideration when moving party took contrary position to the one on the underlying motion).

Morgan Stanley also argues the Court committed "clear error" because there was not an "adequately developed record" for the Court to "reliably determine whether Morgan Stanley's deferred compensation program qualifies as an ERISA plan." Mem. at 16-17. But Morgan Stanley did not make this argument in any of its motion-to-compel briefs, despite the Court's clear directive that it intended to decide whether ERISA applies. ECF 82. To the contrary, Morgan Stanley argued that "***the materials plaintiffs incorporate into the Complaint establish beyond question***" that ERISA does not apply. ECF 85 at 5 (emphasis added). The same materials that Morgan Stanley contended established its position "beyond question" cannot become an inadequate record because Morgan Stanley dislikes the Court's reasoning. Morgan Stanley cannot "plug[] the gaps of a lost motion with additional matters" by seeking reconsideration. *Media Glow*, 2020 WL 1812868, *1.

> **b.    The Court had authority to address all issues related to whether Plaintiffs' claims should be arbitrated, including whether ERISA governed the Plans.**

Even if Morgan Stanley did not waive its arguments, the Court properly addressed whether the Plans are ERISA plans. A court may order arbitration of a particular dispute only when it is "satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (emphasis in original). "To satisfy itself that such an agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id*. "The law generally treats arbitrability as an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014).

Here, the parties' arbitration agreements provide that: "***Any issue*** concerning the validity or enforceability of any of the class action, collective action, and representative action waivers contained in this arbitration agreement . . . ***shall be decided by a court of competent jurisdiction, and not by an arbitrator***." Porco Decl., ECF 67, Ex. B § 7(d) (emphasis added); Porco Decl. Exs. C & D § 7(d) (emphasis added); Krentzman Decl., ECF 68, Ex. E ¶ 4 (emphasis added).[3] The phrase "any issue" is all inclusive, encompassing all issues related to the topic. Therefore, ***any issue*** includes whether Plaintiffs brought a representative action. Analysis of this issue properly includes determining the law establishing the representative action and the elements of the action under that law.

---

[3] Based on this contractual language, the Court correctly found that the validity of the class action and representative action waivers "must be determined by the Court and not by an arbitrator." Order at 29, n.11.

A representative action is a legal concept that depends on a specific legal structure. To illustrate, a Delaware-law shareholders' derivative action, a California Private Attorney General Act Action ("PAGA")[4] and an ERISA § 502(a)(2) action are all representative actions, but they have different elements, requirements, and remedies. Unlike shareholders' derivative or PAGA actions, representative actions under ERISA § 502(a)(2) can only be brought by the Secretary of Labor, a fiduciary, a participant, or a beneficiary. 29 U.S.C. § 1132(a)(2). As the Order demonstrates, whether a claim was brought in a representative capacity under ERISA requires an ERISA-based legal analysis. Order at 41-51. For example, whether there were "losses to the Plan" is strictly a matter of ERISA law. *Id.* at 45-46. The same is true of Plaintiffs' claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* at 51-53. To determine the validity or enforceability of the representative action-waivers, the Court properly addressed whether ERISA applies and if Plaintiffs would be prospectively waiving any of their statutory rights in arbitration.

Morgan Stanley incorrectly argues that the Court should not have decided whether ERISA applies because it is a "merits issue." Mem. at 12. But there is often overlap between a party's substantive claims and whether an arbitration agreement covers those claims. In those instances, a court's duty to determine arbitrability trumps its duty to avoid reaching the merits. *Commc'n Workers of Am. v. Avaya*, 693 F.3d 1295, 1300 (10th Cir. 2012); *see also Rite Aid of Penn., Inc. v. UFCW, Local 1776*, 595 F.3d 128, 136 (3d Cir. 2010) ("Decisions of the Supreme Court and Courts of Appeals have made clear that where the merits and arbitrability questions are inextricably intertwined, a court's arbitrability decision may, of necessity, touch incidentally on the merits."); *IBEW v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 628 (8th Cir. 2005) ("the judicial responsibility to determine arbitrability takes precedence over the general rule to avoid

---

[4] California Labor Code § 2699.

consideration of the merits of a [dispute]"); *IBEW, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 403 (7th Cir. 2002) ("Our responsibility, however, is limited to the arbitrability issue, even if there are some inevitable overlaps between that and the merits.").

In *Granite Rock*, for example, the plaintiff sought damages under the parties' collective bargaining agreement (CBA), which contained a no-strike provision. The defendant contended that it did not have to arbitrate the dispute based on when it ratified the CBA, an issue the parties disputed. *Granite Rock*, 561 U.S. at 291-93. The Supreme Court held that, to decide arbitrability, the district court needed to resolve when the CBA was ratified because that issue related to whether the CBA covered the dispute. *Id*. Although the Court acknowledged that the ratification date was important to the merits because, based on when the CBA was ratified, the plaintiff could argue that the strike violated the CBA, the Court nevertheless concluded that the ratification date was an issue for the district court to resolve in deciding arbitrability. *Id.* at 310; *see also Commc'n Workers of Am. v. Tyco Power Sys., Inc.*, 99 F.App'x 499, 501 (5th Cir. 2004) (district court did not improperly stray into the merits when there was overlap between merits and arbitrability issues). Thus, the fact that ERISA's application relates to both arbitrability and the merits does not mean that the Court erred in deciding that ERISA applies.[5]

In *Merrick v. UnitedHealth Group, Inc.*, 127 F.Supp.3d 138 (S.D.N.Y. 2015), a doctor brought ERISA claims for not paying for his patients' treatments. He opposed the insurer's motion

---

[5] Even after the Court's Order, many issues remain to be decided in arbitration, including: (1) whether Plaintiffs were partially or fully vested in their awards of deferred compensation; (2) the amount of vested deferred compensation that was forfeited; (3) whether Plaintiffs are entitled to a return of all or part of their forfeited deferred compensation; (4) the amount of deferred compensation that plaintiffs are entitled to; (5) any equitable defenses Morgan Stanley raises; (6) any other defenses Morgan Stanley chooses to raise; and (7) any other issues that plaintiffs or Morgan Stanley choose to raise. The arbitrators will not simply award money to plaintiffs based on the Court's Order. Thus, Morgan Stanley's consternation over the Order is unfounded.

to compel arbitration by arguing that the ERISA claims were outside the scope of the parties' arbitration agreement. *Id*. at 147-51. In deciding arbitrability, the court "categorized" the plaintiff's claims to determine whether they were governed by ERISA or state law. Even though it was also a merits issue, the court decided that ERISA did not apply, and granted the arbitration motion.

Morgan Stanley argues that the Court could have decided whether Plaintiffs brought claims in a representative capacity without deciding whether those claims were brought under ERISA. Mem. at 10-11. Even if that were true, as discussed above, the parties' arbitration agreements authorized the Court to decide ***any*** issue ***concerning*** the representative action waiver, ***not only*** those issues that are ***absolutely necessary*** to a decision. Determining the statute giving rise to those rights constitutes any "issue." Moreover, to decide whether representative-action rights would be waived in arbitration, the Court appropriately decided what rights Plaintiffs possess, which necessarily required the Court to determine and consider the statute governing those rights. For example, as discussed above, shareholder derivative, PAGA, and ERISA rights are different. As the Court's analysis demonstrates, the Court necessarily had to determine if ERISA governed Plaintiffs' claims before it could consider what rights might be waived. Order at 41-55.

### c.   The parties asked the court to decide whether the plan was governed by ERISA.

The Court should also reject Morgan Stanley's argument that the parties merely assumed that the Plans are ERISA plans. Mem. at 3. As discussed above, this Court asked the parties to brief "whether Morgan Stanley's deferred compensation program is an ERISA plan" so it could decide the Motion to Compel. ECF 82. In their letter brief, Defendants did not "assume" anything, but instead expressly argued that "ERISA has no application to this program at all." ECF 85 at 2 and 3-5. By briefing the ERISA issue without objection or qualification, Morgan Stanley sought a ruling in its favor from the Court that the Plans are not ERISA plans. As such, it is disingenuous

for Morgan Stanley to suggest now that the parties did not ask the Court to decide whether ERISA applied. Mem. at 9, 14. And, as discussed above, the parties asked the Court to consider any issue concerning the validity or enforceability of the arbitration agreement's representative-action waiver.

> ### d.   The Court did not need additional documents and information to address whether ERISA applied.

The Court also correctly concluded that ERISA governs the Plans based on the undisputed terms of the documents the parties presented to the Court. Under ERISA, all documents forming a plan must be in writing and made available to participants on request. 29 U.S.C. §§ 1102(a)(1), 1024(b)(4). *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1208 (2d Cir. 2002) ("ERISA was designed to ensure that plans be governed by written documents." (cleaned up)). Indeed, courts in this district routinely decide whether a plan is an ERISA plan as a matter of law "where the record contains the undisputed terms of the disputed plan." *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004). Since the parties did not (and do not) dispute the terms of the Plans, Morgan Stanley's suggestion that the Court could not decide whether the Plans are governed by ERISA without a "live evidentiary hearing," Mem. at 18, is not well taken.

Morgan Stanley's suggestion that the Court needed to perform a larger inquiry into how the Plans operate is also meritless. Mem. at 18-19. Morgan Stanley does not argue that the Plans operate in a manner that contradicts the documents the parties submitted or that extrinsic evidence is needed to construe any ambiguity in those documents.[6] *Id.* As such, any further inquiry into the

---

[6] Courts in the Second Circuit have consistently held that, as in contract law, when the language of an ERISA plan is unambiguous, then the parties' intent is determined within the four corners of the plan itself, without looking at extrinsic evidence. *See, e.g.*, *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 691-92 (2d Cir. 2023); *Huff v. Watson Servs.*, 2009 U.S. Dist. LEXIS 11822, at *24 (S.D.N.Y. Feb. 13, 2009). Here, the Court had all of the undisputed plan documents and, upon a review of those documents, concluded that the language within them created a deferred

surrounding circumstances would be redundant and simply confirm the Court's original conclusion—ERISA applies.

Regardless, the Court's inquiry was appropriate to decide the issue and there was no "manifest injustice" when the Court reached a decision on the record before it. Morgan Stanley attached certain plan-related documents to its Motion to Compel Arbitration (ECF 67-1) and, before Morgan Stanley submitted its letter brief, Plaintiffs provided the Court with all of the documents cited in their Amended Complaint. ECF 83. Morgan Stanley did not dispute the terms of these documents and cited these same materials in its letter brief. ECF 85 at 2-5. The Court did not simply rely on Plaintiffs' original and Amended Complaint when it decided the issue.

Morgan Stanley also could have filed additional documents if it believed the Court needed the "full array" of documents that it maintains are relevant to Plaintiffs' claims. But Morgan Stanley did not identify or provide any additional documents. Instead, Morgan Stanley argued that the documents that had already been filed "establish beyond question" that ERISA did not apply. The only document that Morgan Stanley filed was an unreasoned arbitration decision that Defendants claimed supported their contention that Plaintiffs' claims were "meritless." ECF 85 at 5. Morgan Stanley provides no justification for not submitting the documents it now contends the Court should have considered. Reconsideration is appropriate only when new evidence has become available, not when a party seeks to remedy its previous failure to submit documents to the court. *Preville*, 2015 WL 13881592, at *3 (denying motion for reconsideration because the moving party did not "present any newly discovered evidence").

---

compensation plan under ERISA. The Court did not need extrinsic evidence to conclude that the plan was governed by ERISA because the plan clearly and unambiguously "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii).

Morgan Stanley also claims that it did not receive the opportunity to file more briefs. Mem. at 18. But Defendants never requested additional briefing, and until now, raised no concerns about the process used by the Court.[7] The cases Morgan Stanley relies on are distinguishable because they were at the pleadings stage where the defendants had filed motions to dismiss, and no documents had been exchanged between the parties. *See, e.g.*, *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148 (2d Cir. 1994); *Kissner v. Inter-Cont'l Hotels Corp.*, 1998 WL 337067 (S.D.N.Y. June 25, 1998). But here both parties submitted documents related to the plan. ECF 67-1 and ECF 83-1 to 83-10. In *International Paper Co. v. Suwyn*, a case cited by Morgan Stanley, the court decided whether ERISA applied by analyzing the terms of the plan itself. *See* 978 F. Supp. 506, 511-12 (S.D.N.Y. 1997). Thus, it was entirely appropriate for this Court to review the terms of the plan documents submitted by Plaintiffs—documents that Morgan Stanley did not dispute—and conclude that ERISA applies to the Plans.

> **2.    The Court did not commit clear error when it concluded that the Plans were ERISA plans, not bonus plans.**

Defendants' argument that the Court committed "clear error" when it concluded the Bonus Regulation (29 C.F.R. § 2510.3-2(c)) does not apply fails. Mem. at 20-24. Clear error exists when "when the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006). There was no clear error here.

Underscoring Morgan Stanley's entire argument is Defendants' incorrect assertion that a plan that promotes employee retention is automatically exempt from ERISA. Mem. at 20-23.

---

[7] Morgan Stanley threatens that if the Court does not amend its reasoning, it will eliminate humane exceptions in the plan, "as it unquestionably could," thereby effecting "a manifest injustice on the affected employees and their families." Mem. at 19. Of course, Morgan Stanley could always act humanely towards its employees and either retain those exceptions or eliminate the Cancellation Rule entirely.

While bonus programs can promote employee retention, so can ERISA plans. *See, e.g.*, *Alexander v. Brigham & Women's Phys. Org.*, 467 F.Supp.2d 136, 143 (D. Mass. 2006); *see also Daft v. Advest, Inc.*, 658 F.3d 583, 585 (6th Cir. 2011) (ERISA plan's purpose was to "attract, retain, and motivate qualified account executives"); *Demery v. Extebank Def. Comp. Plan (B)*, 216 F.3d 283, 289 (2d Cir. 2000) (ERISA plan established "to retain valuable employees"). Indeed, "competitive hourly wages" and flexible work schedules can also promote employee retention.[8]

An employer's desire to retain employees does not make all compensation a "bonus." *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 627 n.6 (5th Cir. 2014) (rejecting RBC's argument that vesting provisions designed to retain financial advisors should affect the court's interpretation of ERISA). Far from it. Indeed, the Bonus Regulation simply "clarifies the limits" of the term "'employee pension benefit plan' . . . by identifying ***certain specific plans***" that are outside the definition. 29 C.F.R. § 2510.3-2(a) (emphasis added). *Tolbert* rejected RBC's argument that its desire to retain employees made the plan a "bonus program," concluding that the plan was not one of the "specific plans" identified in the Bonus Regulation. *Tolbert*, 758 F.3d at 625.

Perhaps more importantly, Defendants ignore that a plan's purpose is ***not*** relevant under ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii), the statutory section that governs whether ERISA applies. *Pasternack v. Schrader*, 863 F.3d 162, 168 (2d Cir. 2017). As this Court correctly found, subsections (i) and (ii) "set out independent tests to determine whether a plan is protected by ERISA." Order at 34 (citing *Pasternack*, 863 F.3d at 168). While subsection (i) "considers the plan's primary purpose rather than its result," subsection (ii)'s test is "an effects-based inquiry

---

[8] *See, e.g.*, 15 Effective Employee Retention Strategies In 2024, Forbes Advisor, https://www.forbes.com/advisor/business/employee-retention-strategies/.

rather than one based on purpose." *Pasternack*, 863 F.3d at 170 n.5. The Second Circuit stated in *Pasternack*:

> We do not think that this purpose-based test adequately accommodates one of the statutory tests of 29 U.S.C. § 1002(2)(A). Subparagraph (ii) extends ERISA coverage to any plan that "results in a deferral of income by employees." The word "results" calls for an effects-based inquiry rather than one based on purpose.

*Id*. Here, Plaintiffs contend that only subsection (ii) applies. Am. Compl., ECF 58, at ¶ 59, and Pls' Letter Br., ECF 84, at 3 ("Subsection (ii) applies here."). The "many authorities" that Defendants cite, Mem. at 20-21, that mention employee retention do not apply under *Pasternack*. There was no "clear error."[9]

The Court correctly applied the Bonus Regulation when deciding that Morgan Stanley's Plans were not a "bonus program." Order at 35-37. As detailed in the Order, the Court examined Morgan Stanley's commission-based system that generated the deferred compensation, noting that it was distinct from the "bonuses" Morgan Stanley separately provides using different criteria. *Id*. at 36. The Court also cited several cases that found "commissions" and "bonuses" are distinct

---

[9] Defendants' argument also fails because the Order discussed *Wilson v. Safelite Group, Inc.*, 930 F.3d 429 (6th Cir. 2019), and *Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184 (3d Cir. 2003), undercutting any suggestion these cases were overlooked. As to the others, Defendants did not cite any of these cases in their letter brief and do not describe how these cases "might reasonably be expected to alter" the Court's conclusion that the deferred compensation was not a bonus. *Media Glow Digital, LLC* 2020 WL 1812868, at *1. In *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993), *Cashman v. Greyorange, Inc.*, 2023 WL 2652789, at *5 (N.D. Ga. Mar. 27, 2023), and *Pilkington v. CGU Ins. Co., Inc.*, 2000 WL 3319253, at *1 (E.D. Pa. Feb. 9, 2001), the plaintiffs admitted the payments were "bonuses," making these cases entirely different from the claims Plaintiffs bring in this case. In *Hester v. Whatever It Takes*, 2022 WL 89176, at *7 (W.D. Ky. Jan. 6, 2022), the court found it was "unclear" whether the plan was a bonus plan, notwithstanding the plan's purpose. The plan in *Killian v. McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994), provided employees with "extra compensation based on the Company's profits," a structure that is totally different than Morgan Stanley's commission-based system.

forms of compensation. *Id*. at 36-37. Defendants, in fact, emphasize the "distinct purposes" of these different forms of compensation. Mem. at 22.

Morgan Stanley's contention the Court should have cited cases applying the Bonus Regulation fails, Mem. at 22, because Defendants ignore the ***ten cases*** the Court cited in the "Applicable Law" section of the Order that discuss the Bonus Regulation. Order at 31-32. The Court cited several additional cases when ordering the parties to submit letter briefs. ECF 82. Accordingly, the Court did not "overlook" any cases (much less "controlling authority") to warrant reconsideration. *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

**3.    The Court did not misapprehend Morgan Stanley's Plans.**

The Court should also reject Morgan Stanley's suggestion that the Court misunderstood the Plans and its argument that plaintiffs' deferred compensation is unearned. Mem. at 23-25. Morgan Stanley's compensation program "consists of two components: salary and incentive compensation." Order at 2 (citing ECF 83-2 at 2). The incentive compensation is determined by an advisor's Total Credits, the revenue an advisor generates multiplied by the applicable Credit Rate. ECF 83-2 at 2. Advisors defer a portion of their Total Credits through Deferred Credits; the remaining amount is paid to the advisor monthly as Cash Credits. 2018 Compensation Plan, ECF 83-2, at § 1.2. The formula is: Cash Credits = Total Credits – Deferred Credits. *Id*.

Defendants' suggestion that advisors do not "earn" their deferred compensation, i.e., Deferred Credits, for several years makes no sense. Morgan Stanley's compensation policy provides that advisors earn Total Credits every month.[10] 2015 Compensation Policy, ECF 67-1, at § 1.1.1; 2018 Compensation Plan, ECF 83-2, at § 1.2. Defendants also admit that advisors earn

---

[10] The Total Credits are subject to "Credit Adjustments," upward or downward changes when the advisor "did not receive proper Credits," including for "transactions that were cancelled [or] that were reversed." *Id*.

Cash Credits, i.e., cash compensation, and the amount remaining after Deferred Credits are subtracted from Total Credits, "***immediately***." Mem. at 22 (emphasis added). The Total Credits that are "earned" do not become "unearned" simply because receipt is deferred. Plaintiffs should have been vested in their deferred compensation under ERISA. The Second Circuit held in *Browe v. CTC Corporation* that:

> Once benefits vest, they are nonforfeitable, even if their receipt must await the occurrence of future events . . . . That is so even if the employee has "consent[ed] to plan provisions that would otherwise require forfeiture."

15 F.4th 175, 203 (2d Cir. 2021) (citing *Heinz v. Central Laborers' Pension Fund*, 303 F.3d 802, 804 (7th Cir. 2002)).

Black's Law Dictionary defines "deferred compensation" as: (1) "[p]ayment for work performed, to be paid in the future or when some future event occurs," or (2) "an employee's earnings that are taxed when received or distributed ***rather than when earned*** . . . ." Deferred compensation, Black's Law Dictionary (10th ed. 2014) (emphasis added). Here, Plaintiffs earned their commissions by generating revenue for Morgan Stanley in the form of Total Credits. The "work" was performed when the revenue was generated. While Morgan Stanley's compensation program defers receipt of payment for this work, this deferral cannot result in a forfeiture of deferred compensation that should have been vested under ERISA. *Browe*, 15 F.4th at 203.

### 4.     The Order will not result in manifest injustice.

Morgan Stanley's "manifest injustice" arguments boil down to this: Defendants do not trust the arbitral forums (FINRA, JAMS, etc.) they fought so hard to have hear Plaintiffs' claims. Yet, Morgan Stanley selected these forums when drafting the arbitration agreements, and presumably had confidence in these forums when Defendants filed their Motion to Compel. Either Morgan Stanley truly lacks faith in arbitration—in which case it should consent to allowing Plaintiffs'

claims to proceed in federal court—or the Court should reject Morgan Stanley's disingenuous "manifest injustice" arguments.

In particular, Defendants argue that the Court's ruling may be susceptible of unduly influencing an arbitrator which could cause "manifest injustice." Mem. at 9, 13. But Defendants are more than capable of explaining to an arbitrator the issues they think the arbitrator should decide, and Defendants are free to urge the arbitrators to ignore this Court's reasoning. If the arbitrators are capable of deciding whether Defendants engaged in illegal forfeitures, they are certainly capable of deciding other issues Defendants present, including whether an arbitrator should decide an issue in the first instance. Accordingly, the argument that "implication[s]" or "misunderstandings will distract the arbitrators' primary decision" is not credible. Mem. at 9, 14. No "manifest injustice would result from the ***implication*** that the Court has denied Morgan Stanley its contractual right to submit to the arbitrators the dispute over whether the plan is an ERISA plan in the first instance." Mem. at 9 (emphasis added). Nor is there any other implication or suggestion in the Order that could be "***susceptible*** to misinterpretation" by the arbitrators. Mem. at 1, 9 (emphasis added). An implication or suggestion that might be susceptible to misinterpretation is speculative at best—and hardly manifest injustice.

Defendants misplace their reliance upon Waste Management, Inc. v. Residuos Industries Mutliquim, S.A. de C.V., 372 F.3d 339 (5th Cir. 2004). That case involved an arbitration against a parent company and a lawsuit against the subsidiary over the same transaction. The court was concerned that a binding judgment against the subsidiary could lead to inconsistent results in the arbitration. Id. at 345. But the Court's Order here is not a binding judgment. Moreover, unlike in Waste Management, here the ERISA issue overlapped with the issue of arbitrability. Finally, if Morgan Stanley disagrees with any arbitration judgment, they can move to vacate it. Having

achieved exactly what they sought—an order compelling arbitration—Defendants cannot credibly argue "manifest injustice."

## IV.    CONCLUSION

For these reasons, the motion for reconsideration or clarification should be denied.

Dated:   January 9, 2024

Respectfully submitted,

By: */s/ Mathew P. Jasinski*

Robert A. Izard (*pro hac vice*)
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com


John S. "Jack" Edwards, Jr. (*pro hac vice*)
Dona Szak (*pro hac vice*)
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
jedwards@ajamie.com
dszak@ajamie.com

William H. Narwold
Mathew P. Jasinski
Douglas P. Needham
MOTLEY RICE LLC
27 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com
dneedham@motleyrice.com

*New York Office*:
777 Third Avenue, 27th Floor
New York, New York 10017

Thomas R. Ajamie
AJAMIE LLP
460 Park Avenue, 21st Floor
New York, NY 10022
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2024, a copy of the foregoing, was filed electronically. Notice of the foregoing filing and this Certification of Service will be sent by email to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.  Parties may access the foregoing filings and this Certification of Service through the Court's system.

<u>/s/ Mathew P. Jasinski</u>
Mathew P. Jasinski