UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW T. SHAFER, SHERI HAUGABOOK, PETER HEIDT, JEFFREY SHOVER, MACE TAMSE, GEORGE LIVANOS, MARK LOFTUS, JEFFREY SAMSEN, JEFFREY SHERESKY, STEVE SHERESKY, STEVE NADLER, and SANDY JUKEL, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>            -against-<br><br>MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John/Jane Does 1-20,<br><br>            Defendants. | Civil Action No. 1:20-cv-11047-PGG |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR RECONSIDERATION OR CLARIFICATION**

Meaghan VerGow
Brian D. Boyle (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
mvergow@omm.com
bboyle@omm.com

Pamela A. Miller
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
pmiller@omm.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley Smith Barney LLC, and
Morgan Stanley Compensation*

*Management Development and*
*Succession Committee*

January 30, 2024

## TABLE OF CONTENTS

                                                                                                                      **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

      I.      IN DECIDING A MOTION TO COMPEL ARBITRATION, IT IS
              IMPROPER FOR A COURT TO ADDRESS MERITS QUESTIONS
              UNNECESSARY TO RESOLVING ARBITRABILITY .................................... 2

              A.      The Court Lacked Authority To Decide ERISA's Reach Where, As
                      Plaintiffs Concede, The Question Was Unnecessary To
                      Determining Arbitrability ........................................................................... 2

              B.      The Parties Did Not Seek A Ruling On Whether ERISA's Pension
                      Rules Apply, And Morgan Stanley Did Not Waive Its Rights To
                      An Arbitral Resolution On That Core Merits Question ............................. 4

      II.     THE APPLICABILITY OF ERISA'S PENSION RULES SHOULD BE
              DECIDED ON A FULL RECORD, NOT ON THE SCANT
              SUBMISSIONS THE COURT DIRECTED HERE ........................................... 5

      III.    THE COURT'S VIEWS ON THE MERITS OF PLAINTIFFS' ERISA
              ARGUMENTS ARE CLEARLY ERRONEOUS ................................................. 7

              A.      The Court Clearly Erred In Finding The Bonus Regulation
                      Inapplicable ................................................................................................ 7

              B.      The Court Clearly Erred In Its Misunderstanding Of The Awards ........... 9

      IV.    RECONSIDERATION WOULD AVOID MANIFEST INJUSTICE ................ 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                     Page(s)

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*,
   2011 WL 13137724 (N.D. Tex. May 26, 2011) .......................................................... 3

*Adams v. Intralinks, Inc.*,
   2004 WL 1627313 (S.D.N.Y. July 20, 2004) ............................................................. 7

*Alexander v. Brigham Women's Phys. Org., Inc.*,
   467 F. Supp. 2d 136 (D. Mass. 2006) ........................................................................ 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................................... 2

*Commc'n Workers of Am. v. Avaya Inc.*,
   693 F.3d 1295 (10th Cir. 2012) ................................................................................. 3

*Commc'ns Workers of Am., AFL-CIO v. Tyco Power Sys., Inc.*,
   99 F. App'x 499 (5th Cir. 2004) ................................................................................ 3

*Daft v. Advest, Inc.*,
   658 F.3d 583 (6th Cir. 2011) ..................................................................................... 9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................... 2

*Demery v. Extebank Deferred Comp. Plan (B)*,
   216 F.3d 283 (2d Cir. 2000) ...................................................................................... 9

*Ferguson v. Lion Holding, Inc.*,
   2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007) .............................................................. 1

*Foster v. Bell Atl. Tricon Leasing Corp.*,
   1994 WL 150830 (S.D.N.Y. Apr. 20, 1994) .............................................................. 7

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ................................................................................................... 3

*Huff v. Watson Servs., Inc.*,
   2009 WL 382729 (S.D.N.Y. Feb. 13, 2009) .............................................................. 6

*IBEW, AFL-CIO, Local 1 v. GKN Aerospace N. AM., Inc.*,
   431 F.3d 624 (8th Cir. 2005) ..................................................................................... 3

*IBEW, Local 176 v. Balmoral Racing Club, Inc.*,
   293 F.3d 402 (7th Cir. 2002) ..................................................................................... 3

*Litton Fin. Printing Div. v. NLRB*,
   501 U.S. 190 (1991) ................................................................................................... 3

*McCutcheon v. Colgate-Palmolive Co.*,
   62 F.4th 674 (2d Cir. 2023) ....................................................................................... 6

*Merrick v. UnitedHealth Group Inc.*,
   127 F. Supp. 3d 138 (S.D.N.Y. 2015) ....................................................................... 3

# TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Olagues v. Perceptive Advisers LLC*,
   2017 WL 3605511 (S.D.N.Y. July 26, 2017) ............................................................................ 5

*Pasternack v. Schrader*,
   863 F.3d 162 (2d Cir. 2017) ................................................................................................. 7, 8

*Rite Aid of Pa., Inc. v. UFCW, Loc. 1776*,
   595 F.3d 128 (3d Cir. 2010) ..................................................................................................... 3

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ....................................................................................................... 5

*Telectronics Pacing Sys., Inc. v. Guidant Corp.*,
   143 F.3d 428 (8th Cir. 1998) .................................................................................................... 3

*Tolbert v. RBC Cap. Mkts. Corp.*,
   758 F.3d 619 (5th Cir. 2014) .................................................................................................... 8

*United States v. Sineneng-Smith*,
   140 S. Ct. 1575 (2020) .............................................................................................................. 4

**Statutes and Regulations**

29 U.S.C. § 1002 .............................................................................................................................. 7, 8

29 C.F.R. § 2510.3-2 ............................................................................................................................ 8

**Other Authorities**

Andrew Welsch, *Surprising Turn in Morgan Stanley Court Battle Over Millions in Deferred Compensation*, Barron's (Jan. 8, 2024) ....................................................................................... 10

Dan Shaw, *They Left Morgan Stanley. Now These Advisors Want Their Deferred Comp*, Fin. Planning (Jan. 10, 2024) ............................................................................................................ 10

**INTRODUCTION**

The ultimate issue the arbitrators must decide in this case is whether the deferred compensation awards issued to Morgan Stanley financial advisors are really an ERISA pension plan. Morgan Stanley has sought reconsideration or clarification from the Court because its order passing upon that ultimate issue may be misunderstood or misused in the arbitrations to come. Indeed, plaintiffs' opposition only confirms that plaintiffs intend to present the Court's order as a conclusive finding on the very matter the parties agreed to arbitrate. Opp. at 9 n.5.

Plaintiffs have never asserted that the Court *needed* to reach the ultimate ERISA issue in order to resolve Morgan Stanley's motion to compel arbitration, and they do not argue otherwise now. Plaintiffs' claim for benefits is arbitrable whether the awards are an ERISA plan or not. Instead, plaintiffs contend that the Court had the authority to pass upon the merits (without the benefit of a developed evidentiary record, complete briefing, or a hearing), and that Morgan Stanley waived any objection to the Court's doing so. Both contentions are incorrect. Plaintiffs' own authorities reinforce that a court should not resolve the merits when deciding a motion to compel arbitration. In complying with the Court's direction to address plaintiffs' allegations, Morgan Stanley *repeated* its consistent position that the ERISA question must be arbitrated.

No adjudicator could decide this issue in a plaintiff's favor on an unanswered pleading, in litigation or arbitration. Manifest injustice would result if a judicial finding on an incomplete record were to displace the arbitration proceeding to which the parties agreed. If the Court intended to render a finding on the core merits dispute, it should reconsider that decision; and if it did not, a clarifying order would help effectuate the Court's order compelling arbitration.[1]

---

[1] Motions for clarification and reconsideration are both committed to the Court's discretion. *Ferguson v. Lion Holding, Inc.*, 2007 WL 2265579, at *3 (S.D.N.Y. Aug. 6, 2007). Morgan Stanley satisfies the more stringent standards for reconsideration (*cf.* Opp. at 2-4), but reconsideration would be necessary only if the Court actually intended to reach the merits.

# ARGUMENT

I. **IN DECIDING A MOTION TO COMPEL ARBITRATION, IT IS IMPROPER FOR A COURT TO ADDRESS MERITS QUESTIONS UNNECESSARY TO RESOLVING ARBITRABILITY**

    A. **The Court Lacked Authority To Decide ERISA's Reach Where, As Plaintiffs Concede, The Question Was Unnecessary To Determining Arbitrability**

Plaintiffs do not quarrel with the general rule that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see* ECF No. 88 ("Mot.") at 12-13; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Nevertheless, plaintiffs argue that language in the parties' arbitration agreements reserving to the Court "any issue" concerning the validity of the agreements' representative action waivers *authorized* the Court to resolve the merits. Opp. at 7. Plaintiffs overread the Court's remit, as their own authorities confirm.

The Court found that "the arbitration provisions at issue unambiguously delegate disputes as to arbitrability to the arbitrator, except as to challenges to the provisions' class action waivers." Op. at 16. The Court accordingly addressed the validity of the representative action waivers—*but it did not need to decide the ERISA question to do so*, and plaintiffs do not argue otherwise. Rather, the Court could—and did—find that arbitration is warranted *even if ERISA governed these awards*. Plaintiffs contend that the Court needed to "[d]etermin[e] the statute giving rise" to the rights asserted by plaintiffs. Opp. at 10. But the face of the complaint supplies that. Even now, plaintiffs offer no reason why it would be necessary to render a *finding* on the merits in order to conclude that plaintiffs' claims for ERISA benefits may be arbitrated.

2

Because a finding that ERISA applies was not necessary to the Court's decision of the motion to compel, the Court's order should not have reached that merits issue—however preliminarily—as every authority cited by plaintiffs confirms.[2]  When a merits "question … cannot be decided without reaching the heart of the parties' dispute" and "is not necessary to decide … in order to grant [a] motion to compel arbitration," a court must refrain from reaching the question.  *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998); *see Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 2011 WL 13137724, at *1-2 (N.D. Tex. May 26, 2011) (granting reconsideration of order "sending the dispute to arbitration" to issue new order omitting discussion of issues court found "unnecessary for it to determine").  Only "where the merits and arbitrability questions are *inextricably intertwined*" may "a court's arbitrability decision … , of necessity, touch incidentally on the merits."  Opp. at 8 (emphasis added) (quoting *Rite Aid of Pa., Inc. v. UFCW, Loc. 1776*, 595 F.3d 128, 136 (3d Cir. 2010)); *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991) ("We must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it *requires* us to interpret a provision of a bargaining agreement." (emphasis added)).  The issues are not

---

[2] *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303-05 (2010) (case "*require[d]* judicial resolution of two questions central to Local's arbitration demand"); *Commc'n Workers of Am. v. Avaya Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) (addressing a "question the court was … *required* to answer."); *Merrick v. UnitedHealth Group Inc.*, 127 F. Supp. 3d 138, 147 (S.D.N.Y. 2015) (arbitrability turned on whether the plaintiff's claims "ar[o]se under and [we]re governed by the healthcare plans and ERISA" or "Provider Agreements" that included arbitration provisions); *IBEW, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 628 (8th Cir. 2005) ("If the court *must*, to decide the arbitrability issue, rule on the merits, so be it." (quotation omitted)); *IBEW, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 403 (7th Cir. 2002) ("Our responsibility, however, is limited to the arbitrability issue, even if there are some *inevitable* overlaps between that and the merits."); *Commc'ns Workers of Am., AFL-CIO v. Tyco Power Sys., Inc.*, 99 F. App'x 499, 501 n.4 (5th Cir. 2004) ("Since it was the district court's duty to determine whether the dispute is subject to arbitration, and since the Agreement excludes from arbitration those matters that are within the company's discretion, the district court was *required* to decide whether LCTOP is discretionary.").  All preceding emphasis is added.

"inextricably intertwined" here because—as the Court's order demonstrates—the Court could decide that plaintiffs' claims are arbitrable even if one assumes ERISA applies.

> B. **The Parties Did Not Seek A Ruling On Whether ERISA's Pension Rules Apply, And Morgan Stanley Did Not Waive Its Rights To An Arbitral Resolution On That Core Merits Question**

Plaintiffs also argue that, even if it was improper for the Court to tread on the merits question whether ERISA's pension rules apply to the awards, Morgan Stanley invited the Court to do so and cannot be heard to object now. Opp. at 10-11. Hardly.

Plaintiffs do not dispute that both parties fully briefed Morgan Stanley's motion to compel arbitration without so much as suggesting that a decision of ERISA's actual applicability would be necessary to the Court's decision. Courts "normally decide only questions presented by the parties," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotations omitted); *see* Mot. at 14-15, and it almost goes without saying that the parties' moving and opposition papers represent the best source of those "questions presented." *Cf. Sineneng-Smith*, 140 S. Ct. at 1578 (issues the Ninth Circuit "invited [amici] to brief and argue" were not the questions the parties presented and thus an improper basis for decision). Neither party asked the Court to decide this issue.[3]

When the Court *sua sponte* ordered the parties to submit letters addressing plaintiffs' ERISA allegations, specifically directing that "the parties *will address*" specific authorities enumerated by the Court, ECF No. 82, at 2 (emphasis added), Morgan Stanley complied. But *in its letter response*—at the beginning, and again at the end—Morgan Stanley repeated its position that plaintiffs' claims were subject to arbitration. ECF No. 85, at 1-2, 5. To argue that Morgan

---

[3] In particular, Morgan Stanley did not defend its motion on the ground that the plan is not subject to ERISA, which would have improperly invited a decision of the merits question. *See, e.g.*, ECF No. 69, at 6 ("Arbitration of plaintiffs' claims accordingly does not frustrate *anyone*'s ability to obtain any ERISA remedy that they may be due.").

4

Stanley waived its right to arbitral resolution of the merits by responding to the Court's order, plaintiffs must simply blink away the fact that Morgan Stanley explained its position at the request of the Court while reiterating in the letter that "plaintiffs agreed to arbitrate these claims" and that "the arbitrator could provide a complete remedy on plaintiffs' request for benefits, if the claims had merit." *Id.* at 1-2.  Indeed, Morgan Stanley emphasized in that letter that plaintiffs' claims "are capable of being remedied in full in arbitration," *id.* at 5, *precisely because* the parties disputed whether arbitration would preclude remedies afforded by ERISA, if ERISA applied.  *Id.* at 1-2; *see, e.g.*, ECF No. 69, at 6.  That is, in the letter Morgan Stanley reiterated why, as it had "separately explained" in its motion to compel briefing, ECF No. 85, at 1, "plaintiffs may—and must—obtain any relief on their claims in arbitration." *Id.* at 5 (capitalization omitted).  Morgan Stanley's compliance with the Court's order cannot be construed as waiving the right to an arbitrator's determination of the merits of this dispute.

In presenting its motion to compel arbitration, Morgan Stanley has never once—either expressly or impliedly—sought a judicial determination on the merits question of the applicability of ERISA's pension rules.  It has, instead, "always argued" that the Court should compel arbitration on grounds that apply equally regardless whether ERISA's pension rules govern, *Olagues v. Perceptive Advisers LLC*, 2017 WL 3605511, at *5 (S.D.N.Y. July 26, 2017); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (affirming "district court's decision to reconsider its earlier ruling" in light of party's "introduction of additional relevant case law").  Those are the precise grounds on which the Court has compelled arbitration.

II.     **THE APPLICABILITY OF ERISA'S PENSION RULES SHOULD BE DECIDED ON A FULL RECORD, NOT ON THE SCANT SUBMISSIONS THE COURT DIRECTED HERE**

Reconsideration or clarification is also plainly in order not only because neither party sought the Court's determination on the applicability of ERISA's pension rules, but also because

the specific question the Court addressed *sua sponte* "is a question of fact which must be answered in light of all the surrounding circumstances." Mot. at 16 (quotation omitted). Indeed, Morgan Stanley has been unable to find a single "case in which a court has relied on … summary submissions" comparable to those filed here "to decide that something not described as an ERISA plan is, in fact, an ERISA pension plan," *id.* at 18; plaintiffs confirm the void by citing nothing themselves.

In an attempt to defend this summary process, plaintiffs cite cases noting that "when the language of an ERISA plan is unambiguous, then the parties' intent is determined within the four corners of the plan itself," Opp. at 11 n.6, and argue that it would therefore be acceptable to rule on the merits based solely on an examination of the materials plaintiffs incorporated into their complaint and submitted at the Court's request. But the Court did not even have before it the foundation it would need to determine what "plan" controls plaintiffs' claims—is it the award certificates, the summary term sheets, the MSCIP/EICP, the compensation guide plaintiffs cite as evidence the compensation is "earned" without conditions, or some or all of the above? The documents that govern this compensation program, the purpose of the program, the way it is explained to employees, and the conditions precedent to payment under the program, along with multiple other factors, are just a few of the many issues the arbitrators will have to examine on a fully developed factual record. Predictably, none of plaintiffs' cited cases involved a threshold dispute over the applicability of ERISA's pension rules.[4] In any case, plaintiffs elsewhere make clear that their own theories depend on a broader view of the evidence: no doubt because the documents here declare a purpose having nothing to do with retirement, Mot. at 21, plaintiffs

---

[4] *See McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 678 (2d Cir. 2023) (addressing plaintiffs' entitlement to benefits under provisions of self-described "Retirement Income Plan"); *Huff v. Watson Servs., Inc.*, 2009 WL 382729, at *8-9 (S.D.N.Y. Feb. 13, 2009) (interpreting provision in amendment to plan of self-described "Pension and Welfare Fund").

themselves rely on the prong of the statutory test (29 U.S.C. § 1002(2)(A)(ii)) that employs an "effects-based inquiry" considering all the "surrounding circumstances." Opp. at 14 (quoting *Pasternack v. Schrader*, 863 F.3d 162, 170 n.5 (2d Cir. 2017)).[5]

Plaintiffs try to fault Morgan Stanley for the abbreviated record here, noting that it "could have filed additional documents" and "requested additional briefing." Opp. at 12-13. But, as explained earlier, Morgan Stanley has never sought the Court's ruling on the merits in the first place, precisely because the issue is for the arbitrators. It would have made no sense for Morgan Stanley, in response to the Court's letter briefing order, to urge the Court to order the parties to create a proper discovery record on an issue it properly believes is reserved for arbitration.

### III. THE COURT'S VIEWS ON THE MERITS OF PLAINTIFFS' ERISA ARGUMENTS ARE CLEARLY ERRONEOUS

As Morgan Stanley explained in the instant motion, the truncated proceedings before the Court led to certain analytical and factual errors in the order on the motion to compel arbitration. Because these issues are all ultimately reserved for decision by the arbitrators, the Court should excise this discussion from the order; or, at minimum, clarify that it did not intend to invade the arbitrators' jurisdiction to decide this matter based on the record they will oversee and develop, and that these issues will ultimately be decided by the arbitrators after a plenary proceeding.

#### A. The Court Clearly Erred In Finding The Bonus Regulation Inapplicable

Plaintiffs are unable to defend the order's mistaken analysis of the bonus regulation. For starters, they get the test wrong: plaintiffs object that "a plan's purpose is *not* relevant under … 29 U.S.C. § 1002(2)(A)(ii), the statutory section that governs whether ERISA applies," Opp. at

---

[5] An adjudicator could conclude that a complaint does not plausibly allege the existence of a pension plan under ERISA, *see, e.g.*, *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004); *Foster v. Bell Atl. Tricon Leasing Corp.*, 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994), but it should go without saying that an adjudicator could never resolve that question against a defendant without considering the relevant evidence.

7

14, but that conflates the pension plan test under the *statute* with the bonus plan test under the *regulation*. *Tolbert*—the foundation for the Court's analysis and plaintiffs' defense thereof—clearly holds that the two tests entail independent inquiries. *See Tolbert v. RBC Cap. Mkts. Corp.*, 758 F.3d 619, 626 (5th Cir. 2014) ("[T]he WAP fits comfortably within the meaning of § 1002(2)(A)(ii), and nothing in [29 C.F.R.] § 2510.3-2(c) takes it out."). Plaintiffs thus fail to address Morgan Stanley's argument that *even if* the statute applied to the awards here, the regulation would take them out. *See* Mot. at 20-23.

It is beyond dispute that a plan's purpose is relevant to determining whether the bonus regulation exempts it from ERISA's requirements. *See, e.g.*, *Tolbert*, 758 F.3d at 626 (analyzing the "WAP's statement of purpose" to deem it "not a bonus plan"). Morgan Stanley's seven cited cases (Mot. at 20-21) hold that plans that award deferred compensation in order to promote retention qualify as bonus plans. In simple terms, the deferred compensation is a bonus for staying. Plaintiffs say (Opp. at 15) that these authorities "do not apply under *Pasternack*," 863 F.3d 162, but this is nonsensical as *Pasternack* does not discuss the bonus regulation at all—and the same is true of the three solitary cases the Court cited in applying the bonus regulation. Mot. at 22-23.[6] Plaintiffs do not pretend that those three cases bear on the bonus regulation; plaintiffs do not address Morgan Stanley's argument (*id.* at 23) that the dictionary definitions cited in the order reinforce that the payments here are bonuses; and they offer only misrepresentations[7] and

---

[6] The Court also concluded that the deferred compensation is a "commission" and therefore cannot be a bonus. Op. at 36. Plaintiffs have no answer to the plain language in the awards making clear the awards are *contingent* compensation earned only upon vesting, as a reward for staying with the firm. *See* Mot. at 23-25; *infra* at 9.

[7] Contrary to plaintiffs' argument (Opp. at 13), Morgan Stanley does not contend that any "plan that promotes employee retention is automatically exempt from ERISA." But if an employer makes payments as a bonus for staying through a vesting date (and the other conditions here, like engaging in good guardianship), and the payments are not "systematically deferred" to provide retirement income, 29 C.F.R. § 2510.3-2, then the regulation applies by its terms.

8

distractions[8] to counter Morgan Stanley's submission that awarding additional compensation to encourage retention without *systematically* deferring it to the termination of employment is the essence of a bonus plan, *id.* at 20.

### B.     The Court Clearly Erred In Its Misunderstanding Of The Awards

The awards at issue explicitly state that they are not "earned" by employees until the vesting conditions are satisfied. Mot. at 24 ("[Y]ou will earn your 2017 award only if you (1) remain in continuous Employment through the Scheduled Vesting Date …" (quoting ECF No. 83-5, at 2)). Plaintiffs resist this plain language because financial advisors "earn" credits that are used to compute the deferred compensation awards. Opp. at 17. But credits are not compensation; the very same document plaintiffs invoke instructs that the "awards are *contingent* upon" advisors' satisfying the conditions for payment—i.e., "remaining employed through the grant and vesting dates of the award[s]." ECF No. 83-2, at 5 (emphasis added). That means that advisors do not defer the receipt of income to which they have a present right, and accordingly these awards do not constitute a pension plan under the most stringent possible test. Mot. at 25. At bare minimum, this debate over what findings the evidence supports only reinforces that that the ultimate determination must be made by the arbitrators, after careful examination of a properly developed record.

---

[8] It is of no moment that "ERISA plans" also "can promote employee retention," Opp. at 14. The point is that any plan that qualifies as a bonus plan within the meaning of the regulation—as this one does—is not a pension plan. *See supra* at 8. Plaintiffs do not overcome that indisputable point by citing cases addressing top-hat plan status, none of which even mentions the bonus regulation. *See Alexander v. Brigham Women's Phys. Org., Inc.*, 467 F. Supp. 2d 136, 140 (D. Mass. 2006) (plans "were intended to be ERISA top hat plans"); *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011) (defendants forfeited argument that plan was "not an ERISA plan," and court analyzed whether it was "a top-hat, deferred-compensation plan"); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 284 (2d Cir. 2000) ("The sole question in this case is whether a certain deferred compensation plan is a so-called 'top hat' plan … .").

9

## IV.     RECONSIDERATION WOULD AVOID MANIFEST INJUSTICE

Plaintiffs' opposition leave no doubt that, absent reconsideration, plaintiffs will continue to present the Court's order compelling arbitration as a ruling on the merits in their favor[9]; their enumeration of the "issues [that] remain to be decided in arbitration" (Opp. at 9 n.5) confirms that they will press the Court's ruling as conclusive not just in their own cases, but in those of countless other plaintiffs yet to be recruited.[10] The question whether ERISA's pension rules apply is not just any merits issue but the primary one—affirmative defenses, damages, and all the other issues plaintiffs mention follow after the threshold merits determination that the awards here are an ERISA pension plan. *Id.* at 9 & n.5. The Court should make clear that its order does not supersede or cabin the findings that the arbitrators may render on a fully developed record, and permit the arbitrators to reach their own conclusions about such a record, as the parties agreed.

## CONCLUSION

For the reasons set forth in Morgan Stanley's opening memorandum of law and herein, Morgan Stanley respectfully asks the Court to clarify or reconsider its opinion.

---

[9] *See, e.g.*, Andrew Welsch, *Surprising Turn in Morgan Stanley Court Battle Over Millions in Deferred Compensation*, Barron's (Jan. 8, 2024), https://www.barrons.com/advisor/articles/morgan-stanley-advisor-deferred-compensation-lawsuit-e1e56621 ("'We think it's an important decision because it applies to protections that ERISA is designed to provide to the deferred compensation program at Morgan Stanley,' [plaintiffs' counsel] says. … [T]he advisors' attorney[] says they will file arbitration cases … .").

[10] *See* Dan Shaw, *They Left Morgan Stanley. Now These Advisors Want Their Deferred Comp*, Fin. Planning (Jan. 10, 2024), https://www.financial-planning.com/news/class-action-presses-morgan-stanley-for-deferred-compensation ("[Plaintiffs' counsel] said he's hopeful that the court's finding will bode well for the plaintiffs as they prepare to take their cases up individually for arbitration," and that "the stakes in the case are [also] big" for "roughly 40 other former Morgan Stanley advisors who have similar claims.").

| | |
|---|---|
| Dated: Washington, D.C.<br><br>January 30, 2024 | Respectfully submitted,<br><br>O'MELVENY & MYERS LLP<br><br>By: /s/ Meaghan VerGow<br>Meaghan VerGow<br>Brian D. Boyle (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone:  (202) 383-5300<br>Facsimile:  (202) 383-5414<br>mvergow@omm.com<br>bboyle@omm.com<br><br>Pamela A. Miller<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036<br>Telephone:  (212) 326-2000<br>Facsimile:  (212) 326-2061<br>pmiller@omm.com<br><br>*Attorneys for Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, and Morgan Stanley Compensation Management Development and Succession Committee* |