

O'Melveny & Myers LLP  
1625 Eye Street, NW  
Washington, DC 20006-4061

T: +1 202 383 5300  
F: +1 202 383 5414  
omm.com

April 2, 2023

**Meaghan VerGow**  
D: +1 202 383 5504  
mvergow@omm.com

<u>**VIA ECF**</u>

Hon. Paul G. Gardephe  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, NY 10007

Re:   *Shafer v. Morgan Stanley*, Case No. 20-cv-11047 (PGG)  
      Emergency Motion for Leave to Submit Declaration re: Motion for Reconsideration

Dear Judge Gardephe:

We represent defendants ("Morgan Stanley") in the above-referenced matter. Morgan Stanley respectfully seeks urgent relief from the Court to address an imminent threat of harm arising from the Court's November 21, 2023, Mem. Op. & Order, ECF No. 86. Morgan Stanley moved for reconsideration or clarification of that order, ECF No. 87, because of its potential impact on pending arbitrations. That impact is no longer potential: The order is being cited as "law" that precludes arbitration panels from making their own independent determinations in these proceedings. Morgan Stanley submits that there is good cause for the Court to consider the factual record in the attached materials, which detail the substantial prejudice Morgan Stanley faces in multiple arbitrations in April, May, and beyond. Because Morgan Stanley has no way to remedy that prejudice after the fact, Morgan Stanley respectfully seeks the Court's prompt disposition of Morgan Stanley's motion, which has been fully briefed since January 30, 2024, or withdrawal of the opinion pending that disposition.

### Legal Standard

Local Rule 6.3 gives this Court discretion to permit parties to file declarations in support of motions for reconsideration. *See Williams v. Citigroup, Inc.*, 659 F.3d 208, 214 n.3 (2d Cir. 2011) (district court could "exercise its discretion under Local Rule 6.3 to permit the filing of the declaration"). Courts in this District routinely grant such leave, even absent a motion seeking leave. *See, e.g.*, *Clarendon, Ltd. v. Chase Manhattan Bank, N.A.*, 1994 WL 176966, at *1 (S.D.N.Y. May 10, 1994) (granting leave to file supplemental affidavit in support of motion for reconsideration).[1] While a district court may deny leave where a party "could have introduced

---

[1] *See also, e.g.*, *We Shall Overcome Found. v. The Richmond Org., Inc.*, 2018 WL 5307095, at *3 (S.D.N.Y. Oct. 26, 2016) ("Although plaintiffs did not seek permission to submit the two declarations attached to its motion for reconsideration, as required by Rule 6.3, in its discretion, the Court will accept these declarations and grant plaintiffs leave to file them *nunc pro tunc*."); *TGG Ultimate Holdings, Inc. v. Hollett*, 2017 WL 1536056, at *1 (S.D.N.Y. Mar. 23, 2017) (explaining that court granted party leave to file letter with accompanying declaration

th[e] evidence in its initial motion but did not," a court may grant leave for the submission of previously unavailable evidence.  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010).  The previously unavailable evidence presented here derives from an arbitration hearing that began in late February 2024, after the motion for reconsideration was fully briefed.

### Discussion

Last November, the Court granted Morgan Stanley's motion to compel arbitration of claims that its financial advisor deferred compensation awards are an ERISA-governed retirement plan.  In that order, the Court offered its view that the awards are an ERISA plan—the ultimate issue in the case.  Morgan Stanley moved for reconsideration because that discussion was not necessary to the Court's ruling, inasmuch as the dispute is arbitrable even if the plan were governed by ERISA.  The Court's premature evaluation of the ultimate issue "risks substantial prejudice to Morgan Stanley in forthcoming arbitrations," ECF No. 88, at 1.  While the Court presumably did not intend to supersede the arbitrators' decision on the merits—lacking the necessary record to do so, and having decided the merits should be arbitrated—the Court's order is "susceptible of misinterpretation" and may improperly influence future arbitration panels.  *Id.*  Morgan Stanley feared that the Court's ruling will be used to suggest that the central issue has been adjudicated on the merits, when in fact the merits were not ripe for adjudication.

Those fears have, unfortunately, proved to be well-grounded.  Before the Court's ruling, two arbitration panels had the opportunity to consider the full record and concluded that the plan is not an ERISA retirement plan.  Declaration of Meaghan VerGow ("VerGow Decl.") ¶¶ 6-8.  But in the very first hearing after the Court's ruling, the claimants asserted that the Court's order resolved the merits of the claims, pretermitting Morgan Stanley's evidence and argument about how the law applies to a properly developed record.  The claimants argued that the Court's order is a binding ruling on the merits and that the panel *lacked the power* to depart from it.  The following are only a few examples of many similar statements during the hearing (emphases added):

- "[The question in this case] **has already been decided**.  There is a prestigious Federal District Court judge, Paul Gardephe, who sits in the Southern District of New York, and he has addressed this question, and to be very clear, Judge Gardephe wasn't making general pronouncements of the law. … He looked at this exact plan.  It was in the context of a major class action where the stakes were high, and he specifically addressed the question of whether this plan was governed by ERISA, and he found that it was .…  **[T]he importance of the opinion is it holds that ERISA governs Morgan Stanley's plan period full stop**."  VerGow Decl. Ex. B, Tr. 15:18-16:24 (claimants' opening argument).

- "Now, I'll conclude by saying that **the [*Shafer*] opinion by Judge Gardephe is the law**, Federal District Court opinion, and it **holds in no uncertain terms** that Morgan Stanley's plans are governed by the broad law ERISA … .  So what we're going to be asking of

---

and exhibits in support of previously filed motion for reconsideration); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 68 (S.D.N.Y. 2007) (considering various documents filed with leave of court in support of motion for reconsideration).

`

- you this week respectfully is **… to just apply the law and find in favor of Claimants**." VerGow Decl. Ex. B, Tr. 23:9-24:1 (claimants' opening argument).

- "[I]f ERISA applies to Morgan Stanley's deferred compensation plan, it's illegal.… **The law has been decided on that.** … The opinion issued by Judge Gardephe this last November is directly on point. It holds, and I quote from the opinion: 'Morgan Stanley's deferred compensation programs are ERISA plans.' **That's the law.**" VerGow Decl. Ex. E, Tr. 6:22-7:13 (claimants' closing argument).

- "[R]espectfully, the panel's duty is to apply the law, and *Shafer* **is the law**. And make no mistake that when you cut to the core, **Morgan Stanley is asking you to disregard the law** and, respectfully, a federal court decision, if it is to be challenged, the proper place to do that is in the federal courts, the federal appellate courts, and **it is not within the province of a panel in arbitration to overrule a federal court decision**." VerGow Decl. Ex. E, Tr. 44:9-15 (claimants' closing argument).

- "[Morgan Stanley] basically just made an appellate court argument to this panel and presented reasons why this panel should substitute its judgment on Morgan Stanley's plan for that of Judge Gardephe. And while we're all capable of forming our own opinions, **respectfully the role of the arbitration panel is to apply the law as it exists now, not to decide issues like an appellate court or to rule on the law as if you were the judge who had set the law**. Important people. I'm not trying to denigrate that, **but there is the law out there, and the law is made by the courts, and it is clear on the plans at issue in this case**." VerGow Decl. Ex. E, Tr. 94:6-2 (claimants' rebuttal argument).

The sum total of the claimants' argument at the hearing was that the Court had already decided the central question presented. They argued that the Court's pronouncement on the ERISA issue bound the arbitral panel, and that it would be *unlawful* for the panel to do anything other than treat that dicta as binding law. *See* VerGow Decl. Exs. B, E. In essence, claimants argued there was nothing for the arbitration panel to adjudicate.

Faced with the argument that the panel was legally bound to apply this Court's decision on the merits, the panel issued an award in the claimants' favor, VerGow Decl. Ex. F, breaking ranks with the two prior panels that had decided these claims against claimants on a complete record. Unlike in federal court, where a litigant may seek further review, Morgan Stanley has no recourse for an award issued based on the arbitrators' erroneous belief that the merits have been decided. *See* 9 U.S.C. §§ 9-11 (directing a district court to confirm an arbitral award unless specified narrow grounds for vacating, modifying, or correcting are present); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (noting the limited avenues for review).

Morgan Stanley is facing an imminent threat of recurring irreparable harm like the award that just issued. Over twenty of these arbitrations have been filed. The next hearing begins on *April 29*, with two more in May, and still more scheduled for hearing after that, VerGow Decl. ¶¶ 16-19—and more claims sure to be filed, as plaintiffs' counsel continue to solicit clients based on the "ruling from a federal court in NY concluding that the [plan] is governed by [ERISA]." *See id.* ¶¶ 20-21 & Ex. G; *see also* Mot., ECF No. 88, at 1 & nn.1-2; Reply, ECF No. 92, at 10 &

nn.9-10.  Morgan Stanley's pending motion seeks reconsideration or clarification of the order insofar as it could not—and necessarily did not—conclusively decide the ultimate issue in this case.  In referring the matter to arbitration, the Court presumably did not intend to supersede the arbitrators' own application of the law to a properly developed factual record, which the Court did not have.  Indeed, the uncontradicted record developed in the arbitration hearings demonstrates that the awards cannot be retrospectively cast as "retirement plans":

- the vast majority of compensation is paid to current employees;

- the structure of the awards is expected by Morgan Stanley's financial regulators in order to promote good guardianship of assets and stability in client service;

- advisors understand that they must act as good guardians and remain at Morgan Stanley in order to receive payment on the awards;

- the deferred compensation is awarded separate from advisors' base compensation; is distinct from incentive compensation paid to them in cash on an ongoing basis; and, unlike these other components of compensation, is not earned unless and until additional requirements are met;

- the limited humanitarian exceptions to cancellation in the awards benefit advisors who can no longer work;

- financial advisors benefit from having this compensation paid during employment, and not having to wait until retirement to receive it; and

- deferred compensation programs with indistinguishable structures are broadly used throughout the industry.

*See, e.g.*, VerGow Decl. Ex. B, Tr. 225:14-17, 226:5-12; *id.* Ex. C, Tr. 19:2-13, 64:17-22, 88:12-22, 128:9-24, 130:12-133:22, 133:23-134:11, 202:20-205:1, 218:4-8, 219:3-6, 222:16-223:10, 224:4-15, 283:1-284:24, 297:6-10, 308:12-309:1, 309:7-15, 326:11-22; *id.* Ex. D, Tr. 21:16-23:21, 24:6-30:25, 33:17-34:1, 60:7-61:4, 129:15-130:9.  Given the Court's stature, however, the order's discussion of the merits is open to misinterpretation and misuse.  *See, e.g.*, Mot., ECF No. 88, at 13; Reply, ECF No. 92, at 1.  The risk that the arbitrators would be told the central issue in the case has been adjudicated, and the manifest injustice that would result "if a judicial finding on an incomplete record were to displace the arbitration proceeding to which the parties agreed," Reply, ECF No. 92, at 1, came to fruition in the very first hearing.  It is clear that the Court's "foray into the merits [has] seriously impair[ed] 'the integrity of the arbitration and the preservation of [Morgan Stanley's] rights to that contractual agreement'" to arbitrate.  Mot., ECF No. 88, at 13 (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004)).  With this claim now being asserted in dozens of arbitrations, that harm will only multiply.

Morgan Stanley seeks leave to submit this additional information to the Court to demonstrate the urgency of the need for decision of that motion.  To prevent prejudice in the

coming arbitration, Morgan Stanley respectfully requests that before the April 9 deadline for briefing in that arbitration the Court either decide the motion or take the interim measure of withdrawing its opinion, in part, pending its decision on the motion.  A district court has inherent discretion to modify or withdraw its opinions.  *See* Fed. R. Civ. P. 60(a).  Courts have exercised this inherent authority to withdraw all or part of their opinions pending their decisions on motions for reconsideration.  *See, e.g.*, *Alphonso v. Pitney Bowes, Inc.*, 2004 WL 1627274 (D.N.J. July 21, 2004) (opinion withdrawn pending reconsideration), *amended and superseded on reconsideration*, 356 F. Supp. 2d 442 (D.N.J. 2005); *Greer v. Fed. Express*, 1999 WL 635701 (W.D. Ky. Aug. 19, 1999) (same), *superseded on reconsideration*, 66 F. Supp. 2d 870 (W.D. Ky. 1999).  Withdrawing the Court's opinion in full or in part pending a decision would forestall the irreparable harm Morgan Stanley would otherwise suffer as arbitrations continue to go to hearing while the Court deliberates.  So long as the Court's commentary on the ERISA question is outstanding, it will continue to be used, to Morgan Stanley's prejudice, in those arbitrations.

## Conclusion

The Court's order is standing in the way of the arbitration panels' plenary consideration of the facts and law that should drive the resolution of these actions.  In deciding the motion to compel arbitration, the Court did not have the record or briefing it would need to decide the ultimate issue in this case, and yet the Court's order is being cited as a controlling ruling that panels have no power to depart from.  Of course, the Court should not and could not decide the merits of the ultimate question subject to arbitration having properly concluded that the parties agreed to have it arbitrated.  The exceptional respect and influence that the Court commands are having a real-time impact on arbitration proceedings whose outcomes are not subject to review or appeal should arbitrators conclude the issue before them has already been decided.

This is an extraordinarily important issue to Morgan Stanley.  Morgan Stanley's financial advisors count on receiving this income *during* employment, without having to wait until they reach retirement age.  Given the nature of the proceedings before the Court, the Court was not aware that the vast majority of the compensation at issue is paid to current employees, and has been structured to meet the expectations of Morgan Stanley's financial regulators.  These arbitrations should be decided based on complete factual records and the law, not the outsized influence of an order by a distinguished and well-respected federal judge—especially because federal law precludes judicial review of the merits of a dispute reserved for arbitration.  To ensure that Morgan Stanley's right to independent arbitration is not frustrated again in the rapidly approaching hearings, Morgan Stanley respectfully requests that the Court consider the materials submitted herewith and promptly grant its motion for reconsideration, or alternatively withdraw in whole or in part its opinion pending decision on the motion.

Respectfully submitted,

*/s/ Meaghan VerGow*

Meaghan VerGow

cc (via ECF): all counsel