# Exhibit B

Page 1

1                        ARBITRATION
                           BETWEEN
2

     ALFREDO SERRANO, BRIAN PATRICK  )
3    THOMAS, DANIEL G. RAUPP,        )
     DEANNE HEIL, et al.,            )
4                                    )
              Claimants,             )
5                                    )
         vs.                         )  No. 22-02150
6                                    )  c/w 22-02147
     MORGAN STANLEY,                 )
7                                    )
              Respondent.            )
8
9
10           REPORT OF PROCEEDINGS had at the arbitration
11   in the above-entitled cause commencing on the 26th day of
12   February 2024 at 55 West Monroe, Suite 2600, Chicago,
13   Illinois, at the approximate hour of 9 o'clock a.m.
14
15   BEFORE:
16   MARK W. SOLOCK, Arbitrator
17   ALLEN GREENBERG, Arbitrator
18   CAROLINE N. HARNEY, Arbitrator
19
20
21
22
23
24

```
 1  APPEARANCES:
 2
          On behalf of the Claimant:
 3
 4            SALMANSON GOLDSHAW, PC, by
              MR. SCOTT GOLDSHAW
 5            MS. CHRISTEN CASALE
              Two Penn Center
 6            Suite 1230
              Philadelphia, Pennsylvania  19102
 7            (215) 640-0593
 8
              ROSCA SCARLATO, by
 9            MR. ALAN ROSCA
              2000 Auburn Drive
10            Suite 200
              Beachwood, Ohio  44122
11            (888) 998-0530
12
          On behalf of the Respondent:
13
14            O'MELVENY & MYERS, LLP, by
              MS. MEAGHAN VERGOW
15            MR. ALEXANDER REED
              MR. CHRISTOPHER HUNT
16            MS. YOUJIN KWON
              MR. TIMUR AKMAN-DUFFY
17            1625 Eye Street, NW
              Washington, DC  20006
18            (202) 383-5368
              areed@omm.com
19
              MR. MARK GREENFIELD, In-house counsel
20            Morgan Stanley
21                    - - - - - - -
22
    ALSO PRESENT:
23
    MS. KIMBERLY GROTENRATH (Paralegal O'Melveny)
24
```

1  long hearing.
2              Okay.  Anything else?
3              MR. GOLDSHAW:  The parties agreed to opening
4  statements.
5              ARBITRATOR SOLOCK:  Yes.
6              MR. GOLDSHAW:  I honor the time commitment
7  that we had talked about.  I'm not going to use all the
8  time, but I'm going to let opposing counsel know if you
9  have the full half hour, that's fine.
10             MS. VERGOW:  Half hour is fine too.
11             ARBITRATOR SOLOCK:  Okay.  Let's start.
12             Is the Claimant ready to make an opening
13 statement?
14             MR. GOLDSHAW:  Yes.
15             ARBITRATOR SOLOCK:  You may proceed.
16             MR. GOLDSHAW:  Thank you.
17             We're here to prove that Morgan Stanley
18 set up an illegal deferred compensation program that
19 violated federal law and to prove that Morgan Stanley
20 broke the law when it took a portion of Claimants'
21 commissions, put it into the illegal deferred
22 compensation plan and then kept the money for themselves
23 without paying it out to the financial advisors who
24 earned them.

1        Now I expect that there's going to be
2   offered during this hearing a lot of completely
3   irrelevant testimony and evidence, and so I want to be
4   very clear on what it is that we're claiming here.  Our
5   contention and the focus of this hearing should be on
6   whether Morgan Stanley unlawfully canceled $1.5 million
7   in earned commissions pursuant to their unlawful deferred
8   compensation plan.  The answer to that question depends
9   on the legality of the plan.
10              It's not about what Morgan Stanley hoped
11  to accomplish by setting up the plan.  It's not about how
12  they intended the plan to work or what the Claimants
13  thought about the plan or whether they understood it.
14  It's about whether the plan that Morgan Stanley set up
15  complied with the law, and we're prepared to show it did
16  not.
17              So the basic factual background is pretty
18  straightforward.  In 2015, Morgan Stanley started
19  requiring its financial advisors to put a portion of
20  their earned commissions into these deferred compensation
21  plans that it set up.  They're called the MSCIP and the
22  EICP, and the way they worked is that a portion of the
23  deferred compensation would be paid out as stocks after a
24  four-year vesting period.  Four years they had to wait.

1  And the other portion would be paid out as cash after
2  either a six- or an eight-year vesting period.  Now,
3  these were rolling vestings, so every time there was an
4  award there was a new vesting period, and it means that
5  any time a financial advisor ended their employment that
6  there would always be a look-back of several years of
7  awards that hadn't vested yet.
8         The deferred compensation plans did allow
9  for payment of deferred compensation during the
10 Claimants' employment.  They also allowed for several
11 different paths for the deferred compensation to be paid
12 at or after the conclusion of employment, and those
13 included if a financial advisor retired from the industry
14 or if employment ended due to death or to disability or
15 to take a certain government type of job or if there was
16 an involuntary layoff.  All of those paths led to
17 deferment -- deferred compensation being paid at or after
18 the time of separation of employment.
19         Now, when the Claimants resigned their
20 employments, Morgan Stanley canceled deferred
21 compensation awards that it had previously awarded to
22 them taking the position that the long vesting periods
23 had not yet expired and Claimants shouldn't get these
24 awards because they left to go to a competitor.  That

1   violated ERISA.
2               ERISA is the federal law providing broad
3   protections to employees with respect to various kinds of
4   employer benefit plans including deferred compensation
5   plans, and one of the protections that ERISA provides is
6   it makes it unfair to employees and against the law for
7   the vesting periods to be too long.  So in passing ERISA,
8   Congress decided that it is unfair and against the law
9   for employees to have to wait more than three years to
10  get their -- to get vesting of their deferred
11  compensation.
12              Now, there's an alternative that if
13  there's incremental vesting along the way, the three-year
14  period can be longer, but in this case, there was no
15  incremental vesting, so the plans at issue here were what
16  they call cliff vesting.  It all vested all at once, and
17  it was beyond the three-year maximum under ERISA, and
18  that's pretty clear.
19              So what this really comes down to and what
20  I expect most of the hearing will focus on is whether
21  these deferred compensation plans that Morgan Stanley set
22  up were governed by ERISA or not.  It's well established
23  that ERISA's comprehensive regulatory scheme governs most
24  employee benefit plans, and the deferred compensation

Page 14

1   plans at issue here are within the scope of ERISA because
2   they meet ERISA's very broad definition of pension plan.
3   ERISA deliberately defined the term pension plan to be
4   very wide reaching because the intent of the law is to
5   provide broad protections to employees.
6              So let's take a look at the statute.  This
7   is one of two demonstratives I'm going to be showing you,
8   and I hope that you can see it.  If it's easier, we can
9   pass out a paper version but -- is that readable for the
10  Panel?
11             ARBITRATOR SOLOCK:  Um-hum.
12             MR. GOLDSHAW:  So this is the section that
13  defines whether a plan is governed by ERISA or not, so
14  this is really the key.  You will notice that we put the
15  word or in bold and underlined, and the reason we did
16  that is that there are two alternatives.  It covers two
17  types of plans.  We are arguing for subsection 2.  That's
18  what's highlighted.  That's what this case is about.
19             The first option which we're not arguing
20  under, that's the one that has to deal with the intent of
21  the plan, whether it provides retirement income.  We're
22  not focused on that.  That's not our argument.
23             Our argument is that these deferred
24  compensation plans are governed by the law because of the

1   second subsection which focuses on the plan and how it
2   functions not about intent.  So under this statute the
3   terms employee pension benefit plan and pension plan mean
4   any plan, fund or program which was heretofore or
5   hereafter established or maintained by an employer like
6   Morgan Stanley, to the extent that by its expressed terms
7   or as a result of surrounding circumstances such plan,
8   fund or program, and here's the key language, results in
9   a deferral of income by employees for periods extending
10  to the termination of covered employment or beyond.
11              So what we're looking at here is if the
12  deferred compensation plan results in, not what it was
13  intended or anything like that, if it results in the
14  deferral of income to the termination of employment or
15  beyond, it's a covered plan.  And if it's a covered plan,
16  we know that the vesting periods did not comply with the
17  law.
18              So the real focus for the Panel is to
19  decide if this deferred compensation plan results in the
20  deferral of income to the separation of employment or
21  beyond and is an ERISA plan.  Well, I do have some good
22  news for you, that that question has already been
23  decided.  There is a prestigious Federal District Court
24  judge, Paul Gardephe, who sits in the Southern District

Page 16

1  of New York, and he has addressed this very question, and
2  to be very clear, Judge Gardephe wasn't making general
3  pronouncements of the law.  He was specifically looking
4  at the deferred compensation plan at issue in this case,
5  the exact same one used by Morgan Stanley that Morgan
6  Stanley used to cancel the previously awarded commissions
7  to the financial advisors.  He looked at this exact plan.
8  It was in the context of a major class action where the
9  stakes were high, and he specifically addressed the
10 question of whether this plan was governed by ERISA, and
11 he found that it was, and it's a written opinion.  It's
12 not just a short opinion.  It goes on for nine pages,
13 nine pages worth of analysis in his opinion.
14            The opinion is before you.  It will be in
15 Claimants' exhibit binder right as the first exhibit, so
16 you could look at it.  Find it easily.  We wanted you to
17 find it easily.  And he wasn't just making a general
18 pronouncement of law.  This exact plan that you're being
19 asked to decide if covered by ERISA, he's already found
20 it in his opinion.
21            Now, I wanted to just show you my next
22 demonstrative because I don't know -- I mean I think that
23 the importance of the opinion is it holds that ERISA
24 governs Morgan Stanley's plan period full stop.  But the

1  core of the opinion is in the Schaffer opinion.  Judge
2  Gardephe reviewed the key documents of the plan which
3  includes the compensation plan, the deferred compensation
4  plan, the MSCIP and the EIPC I had mentioned, the award
5  certificates that actually awarded the deferred
6  compensation and lots of other documents that are in the
7  opinion.
8              And Judge Gardephe engaged in a thorough
9  review of the statute, of the regulations, of the case
10 law, and Judge Gardephe held:  "Morgan Stanley's deferred
11 compensation programs result in the deferral of income to
12 the post employment period within the meaning of ERISA
13 Section 3282," which is the subsection we're going under.
14 And in the opinion he explains that by talking about that
15 deferred compensation is paid out for involuntary
16 layoffs, when someone dies or has a disability or goes to
17 a government job or has -- retires from the industry.
18 Those are all the possibilities, and that's more than
19 enough to make it covered by ERISA.
20             Judge Gardephe held:  "The deferred
21 compensation programs at issue here are not bonus
22 programs."  Judge Gardephe concluded:  "Morgan Stanley's
23 deferred compensation programs are ERISA plans."
24             So what does Morgan Stanley do when they

1  have to show up to an arbitration and try to argue that
2  they know more about ERISA than Judge Gardephe and that
3  Judge Gardephe somehow got it wrong in his thorough
4  review?  Well, we expect that they are going to try to
5  distract and confuse, and we want to point out a couple
6  of things.
7           The first thing they have to do is try to
8  somehow undercut Judge Gardephe's well-reasoned opinion
9  which is the law, right, and we think that they're going
10 to argue that Judge Gardephe didn't have the necessary
11 evidentiary record.  However, Judge Gardephe had all of
12 the plan documents and reviewed them, and they're in the
13 opinion, and under ERISA what matters is the plan
14 documents not the intent behind them or what they meant
15 to do or what people understood or agreed to.
16          We think that Morgan Stanley is going to
17 try to argue that they didn't have a fair opportunity to
18 argue the issue before Judge Gardephe ruled, but before
19 Judge Gardephe ruled he asked the parties to provide
20 legal briefing in a letter that specifically addresses
21 the question of whether the plan was governed by ERISA,
22 and the parties including Morgan Stanley made their legal
23 arguments to Judge Gardephe about whether it's governed
24 by ERISA and they lost.

1                  We think that they're going to try to
2     argue that Judge Gardephe didn't need to reach the
3     decision under ERISA and that was unnecessary, but of
4     course he did, and he explained in the decision why he
5     reached the ERISA question.
6                  And finally, we think that they're going
7     to try to point out that there is a motion for
8     reconsideration before Judge Gardephe of his opinion, and
9     while -- to say this as politely as I can, we all know
10    how often, how rarely motions for reconsideration are
11    actually granted, especially when it's not a motion for
12    reconsideration of some short, not well-reasoned opinion,
13    and here we have this nine-page analysis by a prestigious
14    federal judge.
15                 Another way that I expect they are going
16    to try to distract from the issue is by pointing to the
17    fact that before Judge Gardephe ruled that Morgan
18    Stanley's plans are governed by ERISA there were two
19    other FINRA arbitrations and Morgan Stanley won those.
20    That was before Gardephe established the law on them, and
21    those opinions don't, like as typical in FINRA cases,
22    they don't have any written analysis.  There's no
23    discussion of ERISA.  They don't even say that ERISA
24    governs in those opinions.  But the important point is

Page 20

1  that the arbitration panel's job, of course, is to apply
2  the law not to make the law, and the law had not yet been
3  settled at the time of those opinions.
4              Another somewhat interesting distraction
5  that we think that Morgan Stanley is going to make is to
6  try to say that well, after the awards for deferred
7  compensation were canceled, the Claimants negotiated
8  really good paying jobs with the next employer.  First of
9  all, it's factually unsubstantiated, but more
10 importantly, ERISA doesn't provide that if you cheat
11 somebody out of money you can get away with it if they
12 manage to fend for themselves and negotiate a new package
13 with a new employer.  That doesn't make any sense.  It's
14 almost like they're trying to create a duty of
15 mitigation, and there's no such concept under ERISA.
16              We think that Morgan Stanley is going to
17 try to argue that their deferred compensation plan should
18 really be thought of like a bonus plan and is a bonus
19 plan and, therefore, is not covered by ERISA.  Judge
20 Gardephe specifically heard those arguments, analyzed it
21 and concluded these are not bonus plans, end of story.
22 It's easy to see why.  The deferred compensation was
23 calculated using a grid where the dollars and total
24 revenue was applied to a percentage.  These are

1   commissions.  These aren't bonuses.  They're not based on
2   extra good performance or any discretionary payment as a
3   reward or anything like that.
4                    In fact, Morgan Stanley's own documents
5   make it clear because they have the compensation which
6   we'll show you during the hearing where there is a
7   section on incentive compensation for commissions.
8   That's where the deferred compensation came out of, and
9   there's a separate section for bonuses, and that's not
10  where it came out of, so there's really nothing to this
11  argument of trying to say that this is really a bonus.
12                   And finally and in some ways most
13  importantly, we think that Morgan Stanley is going to try
14  to make this case about what they intended the plan to do
15  and how they -- what their goal is, what their purpose
16  behind the plan was and why they wanted to do it and why
17  they canceled the awards and whether the Claimants
18  understood the terms of the awards, and all of that is a
19  distraction because the law is the law, and ERISA is a
20  serious federal statute.  It was designed specifically to
21  protect against unfair plans to employees, and Congress
22  decided that the vesting periods are too long.  That's
23  what matters.
24                   Leaving these distractions to the side,

1  there's no getting around the fact that Morgan Stanley
2  had a deferred compensation plan.  It took money out of
3  commissions to put into the plan, and it doesn't meet
4  vesting requirements required by ERISA, and to simplify
5  it further, as Judge Gardephe found, he's already
6  reviewed exactly what the parties are going to ask you to
7  review here and he found that this is covered by ERISA.
8              So I will mention that as an alternative
9  to the ERISA claim that we've asserted we do have state
10 law claims, and those claims are, you know, if you for
11 whatever reason don't resolve the case in the ERISA
12 argument, state law claims provide that an employer
13 cannot cancel earned wages.  That's against the law.  And
14 when commissions have been earned, state law makes it
15 unlawful to cancel them after the fact, and what we have
16 here is Morgan Stanley's trying to say well, look at the
17 way we wrote the plan, and the verbiage we used shows
18 that it's not really earned until the vesting period had
19 passed.  That's not the way the plan actually worked.
20 What happened is they got a deferred compensation award,
21 and then later when they left under circumstances that
22 Morgan Stanley didn't like, they canceled what was
23 previously awarded.
24              So at the end of this hearing, we're going

1  to ask you to find that Morgan Stanley violated the law
2  by canceling $1.5 million in deferred compensation taken
3  out of the Claimants' commissions that was previously
4  granted to them, and we're going to ask you for the
5  relief that's available under ERISA and state law which
6  includes the amount of the unlawfully canceled awards
7  plus interest and attorneys' fees and costs of
8  litigation.
9             Now, I'll conclude by saying that the
10 Schaffer opinion by Judge Gardephe is the law, Federal
11 District Court opinion, and it holds in no uncertain
12 terms that Morgan Stanley's plans are governed by the
13 broad law ERISA, and it's quite clear that the vesting
14 periods are too long under ERISA, meaning that it was
15 unlawful for Morgan Stanley to use those unfairly long
16 vesting periods to prevent the Claimants from getting the
17 commissions that they had earned.
18            So what we're going to be asking of you
19 this week respectfully is as the Panel of arbitrators to
20 apply the law and not get distracted by what Morgan
21 Stanley thinks the law should be or ought to be, not get
22 distracted by what they intended and to just apply the
23 law and find in favor of Claimants.
24            I really appreciate your attention.  I

1  look forward to getting under way with the hearing.
2              ARBITRATOR SOLOCK:  Thank you very much.
3              Does the Respondent wish to make an
4  opening statement?
5              MS. VERGOW:  Yes, please.
6              ARBITRATOR SOLOCK:  You may proceed.
7              MS. VERGOW:  Good morning, Arbitrator Solock
8  and members of the Panel.  I'm Meaghan VerGow as I said
9  before.
10             Thank you for being here today and for
11 listening to me and the Claimants and hearing all the
12 evidence in this case.
13             We think this is a simple case but it's an
14 important case for Morgan Stanley because Claimants are
15 attacking a long-standing program that serves very
16 important purposes, and yes, it absolutely does serve
17 very important purposes for Morgan Stanley.
18             We're grateful to have you deciding this
19 case and for your careful review of the evidence you'll
20 be seeing and hearing this week.
21             For over 20 years Morgan Stanley has
22 awarded financial advisors deferred compensation as a
23 bonus for staying with the Firm and for continuing to
24 engage in good conduct.  As Morgan Stanley's regulators

Page 225

```
 1   right?
 2        A.    Yes.
 3        Q.    And you received an award every year
 4   thereafter until you left?
 5        A.    Correct.
 6        Q.    You received -- actually, let me ask a better
 7   question.
 8              You received two awards every year thereafter
 9   until you left, one cash, one stock?
10        A.    Correct.
11        Q.    Okay.  And when you left Morgan Stanley, that
12   deferred compensation was canceled?
13        A.    Yes.
14        Q.    And you weren't surprised that it was
15   canceled because you knew it was subject to vesting
16   cancellation?
17        A.    No.
18        Q.    I asked a bad question.
19              ARBITRATOR SOLOCK:  I don't understand the
20   answer to that question.  Were you surprised?
21              THE WITNESS:  For?  Repeat the question.
22              ARBITRATOR SOLOCK:  Could you repeat the
23   question?
24              MS. VERGOW:  I asked a bad question.
```

Page 226

1  BY MS. VERGOW:
2       Q.    Were you surprised when the award was
3  canceled?
4       A.    No.
5       Q.    And is it correct that you weren't surprised
6  because you understood that the awards were subject to
7  vesting terms with a cancellation provision?
8       A.    Repeat, please.
9       Q.    Did you understand that the awards had
10 vesting terms in them and that if you didn't meet the
11 vesting terms they would be canceled?
12      A.    Yes.
13      Q.    Okay.  All right.  I'm going to move very
14 quickly through some communications with you about
15 deferred compensation.
16            Let's turn to Tab 7 of your binder.  You
17 recognize this as an e-mail you received in connection
18 with your receipt of a deferred compensation award in
19 2016 for the 2015 comp year?
20      A.    Yes.
21      Q.    And you recall receiving e-mails like this
22 every time you received an award?
23      A.    Yes.
24      Q.    And you reviewed those e-mails when they came